# 24-11000

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**JOHN ANTHONY CASTRO,**
Defendant-Appellant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:24-CR-1-Y-1

**APPELLEE'S BRIEF**

Nancy E. Larson
Acting United States Attorney

Lauren C. Murphree
Assistant United States Attorney
Texas State Bar No. 24085059
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401-4002
Telephone: (806) 472-7322
lauren.murphree@usdoj.gov

Attorneys for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Castro, an inmate proceeding pro se, does not request oral argument. (Brief at ii.)  The government agrees that oral argument is unnecessary to resolve the five issues Castro raises on appeal.  Though the record is long, this Court does not have jurisdiction to review most of Castro's issues, and his remaining issues (challenges to two guideline enhancements) are easily resolved under this Court's precedent.  Accordingly, oral argument will not materially assist the Court in resolving this appeal.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF AUTHORITIES ......................................................... iv

STATEMENT OF JURISDICTION............................................... 1

STATEMENT OF THE ISSUES ................................................. 1

STATEMENT OF THE CASE.................................................... 2

    1.    Castro falsely holds himself out as a tax attorney and files hundreds of fraudulent tax returns on behalf of unsuspecting taxpayers. ................................................................. 2

    2.    A federal grand jury indicts Castro on 33 counts of tax fraud, and he elects a bench trial where the district court convicts him of all 33 counts. ................................................................. 6

    3.    The district court sentences Castro to 188 months' imprisonment, and Castro, now pro se, files an onslaught of motions in the district court. ................................................................ 8

SUMMARY OF THE ARGUMENT ......................................... 10

ARGUMENT AND AUTHORITIES........................................... 13

    1.    This Court lacks jurisdiction over Castro's appeal of the district court's denial of motions filed after his notice of appeal. (Responsive to Castro's Issues One, Two, and Five). ................. 13

        A.    Castro's filing of a notice of appeal deprived the district court of jurisdiction to rule on Castro's post-notice motions, so there is no effective district-court ruling for this Court to review. ......................................................... 13

            Castro's motions for new trial were untimely and thus did not delay the date his notice of appeal deprived the district court of jurisdiction. ....................................................... 16

**Page**

B.    This Court lacks jurisdiction to review the district court's denial of Castro's post-notice motions because Castro failed to notice those denials in his notices of appeal. .................. 19

2.    In any event, the district court properly denied each of Castro's post-conviction motions on the merits.  (Responsive to Castro's Issues One, Two, and Five) ..................................................... 21

A.    Castro waived his right to object to the admission of the agreed evidentiary stipulations.  (Responsive to Castro's Issue One) ..................................................................... 22

B.    The district court did not abuse its discretion when it denied Castro's motions for new trial.  (Responsive to Castro's Issue Two) .................................................................... 31

C.    The district court properly denied Castro's baseless and premature motions to correct the trial transcript. (Responsive to Castro's Issue Five) ................................... 34

3.    The district court did not err, clearly or otherwise, in applying the leader-organizer enhancement.  (Responsive to Castro's Issue Three) .................................................................................... 37

4.    The district court did not err, clearly or otherwise, in applying the obstruction-of-justice enhancement.  (Responsive to Castro's Issue Four) ...................................................................................... 43

CONCLUSION ...................................................................... 53

CERTIFICATE OF SERVICE ................................................ 53

CERTIFICATE OF COMPLIANCE ......................................... 54

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                     **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 13

*Castro v. Warner*, 2023 WL 7171462 (S.D.W. Va. Oct. 31, 2023) ................... 50

*Eberhart v. United States*, 546 U.S. 12 (2005) .................................................. 17

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982) ........................13, 14

*Howery v. Allstate Ins. Co.*, 243 F.3d 912 (5th Cir. 2001) ................................. 16

*Johnson v. Collins*, 964 F.2d 1527 (5th Cir. 1992) ........................................... 45

*Kyles v. Whitley*, 514 U.S. 419 (1995) .............................................................. 32

*Markham v. Holt*, 369 F.2d 940 (5th Cir. 1966) ............................................... 20

*Martin v. Halliburton*, 618 F.3d 476 (5th Cir. 2010) ....................................... 15

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ............................................... 14

*Smith v. Barry*, 502 U.S. 244 (1992) ................................................................ 19

*Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988) ...................................... 20

*United States v. Adams*, 439 F. App'x 340 (5th Cir. 2011) ............................... 28

*United States v. Ajayi*, 64 F.4th 243 (5th Cir. 2023).....................................47, 48

*United States v. Alvarado-Valdez*, 521 F.3d 337 (5th Cir. 2008)......................... 29

*United States v. Barbontin*, 907 F.2d 1494 (5th Cir. 1990)................................ 38

*United States v. Bazan*, 604 F. App'x 343 (5th Cir. 2015) ................................ 41

*United States v. Bouldin*, 466 F. App'x 327 (5th Cir. 2012) ............................. 20

*United States v. Ceballos*, 789 F.3d 607 (5th Cir. 2015) ................................... 23

*United States v. Delgado*, 672 F.3d 320 (5th Cir. 2012) ................................... 37

*United States v. Delgado*, 984 F.3d 435 (5th Cir. 2021) ................................... 40

**Federal Cases, continued**                                                **Page(s)**

*United States v. Demopoulos*, 506 F.2d 1171 (7th Cir. 1974)............................ 18

*United States v. Dominguez-Alvarado*, 695 F.3d 324 (5th Cir. 2012) ................. 43

*United States v. Dunnigan*, 507 U.S. 87 (1993) ................................................. 45

*United States v. Erwin*, 277 F.3d 727 (5th Cir. 2001) ....................................... 31

*United States v. Fields*, 483 F.3d 313 (5th Cir. 2007) ....................................... 29

*United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997) ................................... 32

*United States v. Haines*, 803 F.3d 713 (5th Cir. 2015) ...................................... 37

*United States v. Johnson*, 954 F.3d 1015 (5th Cir. 1992) .................................. 23

*United States v. Juarez-Duarte*, 513 F.3d 204 (5th Cir. 2008) ........................... 45

*United States v. Lopez*, 174 F.3d 198, 1999 WL 152990 (5th Cir. 1999) ........... 52

*United States v. Lopez-Perez*, 623 F. App'x 223 (5th Cir. 2015)......................... 38

*United States v. Lucero*, 755 F. App'x 384 (5th Cir. 2018)................................. 14

*United States v. Mack*, 2023 WL 5665758 (5th Cir. Sept. 1, 2023) ................... 32

*United States v. Martinez*, 131 F.4th 294 (5th Cir. 2025).................................. 38

*United States v. Mondragon-Santiago*, 564 F.3d 357 (5th Cir. 2009) ................ 44

*United States v. Mulderig*, 120 F.3d 534 (5th Cir. 1997) .................................. 19

*United States v. Musquiz*, 45 F.3d 927 (5th Cir. 1995)...............................22, 27

*United States v. Neal*, 578 F.3d 270 (5th Cir. 2009) ......................................... 44

*United States v. Njoku*, 737 F.3d 55 (5th Cir. 2013)......................................... 37

*United States v. O'Keefe*, 128 F.3d 885 (5th Cir. 1997).................................... 31

*United States v. Olano*, 507 U.S. 725 (1993).................................................... 22

*United States v. Plato*, 593 F. App'x 364 (5th Cir. 2015)................................. 43

v

**Federal Cases, continued** **Page(s)**

*United States v. Powers*, 168 F.3d 741 (5th Cir. 1999) ....................................... 45

*United States v. Ramseur*, 850 F. App'x 325 (5th Cir. 2021) ............................ 46

*United States v. Reveles*, 190 F.3d 678 (5th Cir.1999) ................................ 27, 28

*United States v. Runyan*, 290 F.3d 223 (5th Cir. 2002) ............................... 31, 32

*United States v. Sanchez-Villareal*, 857 F.3d 714 (5th Cir. 2017) ....................... 15

*United States v. Sejuelas*, 113 F. App'x 595 (5th Cir. 2004) ............................. 41

*United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977) ....................................... 36

*United States v. Serrano*, 193 F.3d 517 (5th Cir. 1999) ............................... 46, 47

*United States v. Severns*, 559 F.3d 274 (5th Cir. 2009) ..................................... 32

*United States v. Shah*, 95 F.4th 328 (5th Cir. 2024) ......................................... 36

*United States v. Smith*, 804 F.3d 724 (5th Cir. 2015) ................................. 45, 51

*United States v. Stephens*, 609 F.2d 230 (5th Cir. 1980) .................................... 23

*United States v. Tapia*, 946 F.3d 729 (5th Cir. 2020) ....................................... 44

*United States v. Tuma*, 738 F.3d 681 (5th Cir. 2013) ....................................... 42

*United States v. Turner*, 674 F.3d 420 (5th Cir. 2012) ..................................... 32

*United States v. Ugalde*, 861 F.2d 802 (5th Cir. 1988) ..................................... 18

*United States v. Wall*, 389 F.3d 457 (5th Cir. 2004) ......................................... 34

*United States v. Williams*, 343 F.3d 423 (5th Cir. 2003) ................................... 43

*United States v. Willis*, 76 F.4th 467 (5th Cir. 2023) .................................. 14, 16

*Wagner v. United States*, 545 F.3d 298 (5th Cir. 2008) ..................................... 13

*Warfield v. Fidelity and Deposit Co.*, 904 F.2d 322 (5th Cir. 1990) ................... 20

**Federal Statutes and Rules**                                            **Page(s)**

28 U.S.C. §§ 1292-21 ............................................................... 14

Fed. R. App. P. 4(b)(1)(A)(i) ...................................................... 1

Fed. R. App. P. 4(b)(3) ............................................................ 17

Fed. R. Crim. P. 33(b)(1) ......................................................... 17

Fed. R. Crim. P. 35(a) ............................................................. 15

Fed. R. Crim. P. 36 ................................................................ 15

**Federal Sentencing Guidelines**

USSG § 3B1.1 ................................................................... 2, 38

USSG § 3B1.1, comment. (n.1) ................................................... 38

USSG § 3B1.1, comment. (n.3) ................................................... 38

USSG § 3B1.1, comment. (n.4) ................................................... 38

USSG § 3B1.1(a) .................................................................. 38

USSG § 3B1.1(a), comment. (n.4) ................................................ 41

USSG § 3C1.1 ..................................................................... 45

USSG § 3C1.1, comment. (n.4(A)) ............................................... 46

USSG § 3C1.1, comment. (n.4(B)) ............................................... 45

## STATEMENT OF JURISDICTION

This is a direct appeal from a sentence in a criminal case.  As discussed further below, the district court did not have jurisdiction over the motions Castro filed after he filed his notice of appeal, and this Court accordingly should dismiss his appeal regarding those motions for lack of jurisdiction.  As for the other issues Castro raises, the district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 18 U.S.C. § 3742(a).  The district court entered its judgment on October 30, 2024, (ROA.806), and Castro timely filed his notice of appeal on November 12, 2024, (ROA.821). *See* Fed. R. App. P. 4(b)(1)(A)(i).

## STATEMENT OF THE ISSUES

1.     Does this Court have jurisdiction over Castro's appeal of the district court's denial of his untimely motions for new trial, his post-judgment motions to strike agreed evidentiary stipulations from the record, and his motions to correct the trial transcript?  (Responsive to Castro's Issues One, Two, and Five)

2.     In any event, even assuming this Court has jurisdiction over those issues, is Castro's appeal of the district court's denial of his untimely motions for new trial, his post-judgment motions to strike agreed evidentiary stipulations from the record, and his motions to correct the trial transcript meritless?

1

3.    Did the district court clearly err in applying the organizer-leader enhancement under USSG § 3B1.1?  (Responsive to Castro's Issue Three)

4.    Did the district court clearly err in applying the obstruction-of-justice enhancement under USSG § 3C1.1?  (Responsive to Castro's Issue Four)

## STATEMENT OF THE CASE

**1.    Castro falsely holds himself out as a tax attorney and files hundreds of fraudulent tax returns on behalf of unsuspecting taxpayers.**

John Castro graduated from the University of New Mexico School of Law in 2012.  (ROA.2036-37.)  One year later, he graduated from Georgetown University Law School with a Master of Laws degree in Tax Law and a certificate in International Taxation.  (ROA.2037-38.)  An Ohio law firm hired Castro on the contingency that he take and pass the Ohio bar exam.  (ROA.1501-02.)  While working for the Ohio law firm, Castro never applied to take the Ohio bar exam, and he failed the Texas bar exam.  (ROA.2041, 2043.)  The law firm soon realized Castro's dishonesty and terminated his employment within six months of hiring him.  (ROA.1504-05.)

Castro moved to Florida, where he worked for another firm specializing in international tax law.  (ROA.2042, 2044.)  Castro then took the D.C. Bar exam, which he also failed.  (ROA.2043.)  After a falling out with a coworker, Castro left that firm, too, and decided to go out on his own.  (ROA.2047-48.)

In 2014, Castro started Castro & Co., which he advertised as an international tax law firm. (ROA.2049-52.) Using a combination of aggressive online marketing and a boasted array of unique and aggressive tax positions, Castro attracted an unexpected number of new clients. (ROA.2051-53.) As his practice grew, Castro recruited family members to help him run the firm. (ROA.2053-54.) Castro moved the firm to Texas following the birth of his daughter, and he continued to hire employees to keep up with the demands of tax season. (ROA.2055-62.) Castro operated Castro & Co. out of his home in Mansfield, Texas, but he maintained virtual offices throughout the United States. (ROA.2049-50.) Before his move to Texas, Castro received a cease-and-desist letter from the Florida State Bar warning Castro of his unlicensed practice of law regarding his tax preparation work. (ROA.2820.)

Undeterred, Castro recruited new clients by representing that he could obtain a significantly higher tax refund than other tax preparers, and he would offer to split the refund with clients if they chose to use his services. (*See* ROA.1520; GX 93.) To achieve the larger refunds, Castro would claim false expenses and deductions that were not rooted in fact. (ROA.2019; GX 58.) In most cases, Castro would falsify business expenses and deductions to offset earned income and decrease the amount of taxable income reported on clients' returns. (ROA.2019; GX 58.) For example, Castro repeatedly claimed a

business deduction for the depreciation of personal vehicles in amounts higher than what the clients paid for the vehicles.  (*See* ROA.2020-24.)

Clients would complete an initial interview with one of Castro's employees and then upload supporting documentation to an online portal. (ROA.1518-21.)  An employee would then input the client's data into a tax-software program for Castro's final review.  (ROA.1796-98; GX 109.)  Castro required his employees to adopt his unfounded positions and provided them a script for interviewing clients.  (GX 109.)  The script contained dozens of questions designed to come up with fraudulent deductions and included commentary from Castro.  For example:

I'm gonna be pissed if this is blank.  Cross examine the client! Don't give up.  Keep digging.  FIND A FREAKIN BUSINESS. Something; anything. We'll decide later if it fully qualifies.

You can type endless notes here.

(ROA.2026; GX 109.)

Before filing the returns, Castro would email clients and (1) let them know their return was complete; (2) identify the anticipated return if the client used Castro; (3) identify what the return would be if the client used another tax preparer; and (4) ask the client if they would like to proceed with Castro filing their taxes.  (*See* ROA.1524-25.)  Clients were not asked to sign their tax returns and were not given the chance to review them before filing. (ROA.1524, 2006-07.)  Despite taking complex and unique tax positions on

behalf of his clients, Castro would not discuss those positions with his clients. (ROA.1737-38.)  Castro would typically take 50 percent of the refund he calculated for each client as his fee, and he routinely did not provide copies of the proposed tax returns to clients.   (ROA.1729-30.)

In some cases, Castro filed returns on behalf of clients even when they asked him not to or did not otherwise expressly authorize him to file on their behalf.  (ROA.1652, 1841-42.)  Castro generally refused to meet with clients in person.  And if clients asked too many questions, Castro would delay providing answers or information and, in some cases, "terminated" clients he deemed problematic.  (ROA.2820.)  As a result, several clients reported Castro to the IRS.  IRS conducted audits on over 200 returns that Castro filed, and Castro did not pass a single one.  (ROA.2025.)

In 2018, an undercover IRS agent, Angela Johnson, contacted Castro for tax assistance.  (ROA.1513.)  As he did with all of his clients, Castro projected the refund amount he believed he could obtain for Johnson, ($6,007), and then estimated the amount she could expect from another tax preparer, ($373). (ROA.1523, 1535.)  Castro offered to split the $6,007 with Johnson and deduct the $373 she would have received from another preparer, for a net refund of $3,008.  (ROA.1523.)  Castro's tax proposal to Johnson contained $29,339 in fraudulent deductions.  (ROA.1527.)

Sometime in 2020, Castro learned of the IRS's investigation into his practices. Castro sued the IRS twice, special agent Ma individually, and President Trump, alleging the investigation against him was harassing and retaliatory. (ROA.2009-10, 2823.) Each of the lawsuits was dismissed. (ROA.2823.) Castro continued to file taxes until January 3, 2024, when he was indicted by a federal grand jury for tax fraud. (ROA.2823.)

**2.    A federal grand jury indicts Castro on 33 counts of tax fraud, and he elects a bench trial where the district court convicts him of all 33 counts.**

A federal grand jury indicted Castro on 33 counts of aiding and assisting in the preparation and presentation of a false and fraudulent return, in violation of 26 U.S.C. § 7206(2). (ROA.27-37.) The indictment covered the tax years 2017 to 2019 and included the return filed on behalf of the undercover agent (Count One) and multiple other individual taxpayer victims (Counts Two through Thirty-Three). (ROA.27-37.) Castro waived his right to a jury and elected to proceed to trial in front of the district court. (ROA.90.)

The government presented evidence from IRS special agents, Castro's former employees, and six of Castro's victims. Castro countered with the testimony of one former employee, and he testified in his own defense. Prior to trial, the government filed stipulations of evidence that Castro had agreed to before trial. (ROA.535.) The stipulations referenced specific testimony from

the victims that the government did not intend to call at trial, as well as exhibits that corresponded with each victim, the admission of which the parties agreed they had "no objection to." (ROA.535-38.) Castro also filed factual stipulations that were agreed to by the government. (ROA.539-51.) These stipulations contained various undisputed facts pertaining to each victim's testimony. (ROA.539-51.)

Based on the agreed evidentiary stipulations, the government presented a shortened version of Linda Rivera's testimony. After Rivera's testimony, Castro apparently changed his mind and no longer agreed to proceeding with a truncated version of the evidence based on the stipulations. (ROA.1722.) As a result, the government examined its remaining witnesses as if there were no stipulations. (ROA.1722.) But Castro never withdrew his stipulation to the admission of the government's exhibits, and even after the close of evidence, he persisted in his agreement with the stipulations to all evidence and elements regarding the uncalled witnesses, except for the element of willfulness. (ROA.2575-76.) The district court relied on the agreed stipulations of evidence, the admitted exhibits, and the trial testimony to find Castro guilty of all 33 counts of the indictment. (ROA.2563, 2575-76.)

3.    **The district court sentences Castro to 188 months' imprisonment, and Castro, now pro se, files an onslaught of motions in the district court.**

The presentence report (PSR) detailed Castro's conduct in executing his fraudulent scheme.  (ROA.2820-25.)  It also detailed Castro's history of retaliation and suing those who questioned or exposed his fraud.  (ROA.2825-26, 2828.)  Based on an estimated total loss amount of $15,168,913.00, the PSR started with a base offense level of 26.  (ROA.2826.)  It then: (1) added two levels because Castro was in the business of preparing or assisting in the preparation of tax returns; (2) added two levels because Castro used "sophisticated means" to commit the offense; (3) added four levels for the organizer-leader enhancement; and (4) added two levels for obstruction of justice, for a total offense level of 36.  (ROA.2826-28.)  With a criminal-history category of I, Castro's guideline imprisonment range was 188-235 months' imprisonment.  (ROA.2839.)

Castro objected to the obstruction-of-justice enhancement and to the organizer-leader enhancement, and he argued that he should receive an acceptance-of-responsibility reduction because he claimed to have testified truthfully at trial, despite putting the government to its burden of proof.

(ROA.2856-67.)  Castro further objected on numerous grounds not relevant to this appeal.[1]

At sentencing, the district court overruled Castro's objections, and adopted the PSR as adjusted in the addenda.  (ROA.2684-85.)  The court denied Castro's request for a downward variance and ultimately imposed an aggregate sentence of 188 months—comprised of a 36-month sentence on each count for Counts One through Seven, to run consecutively to each other; and a 36-month sentence on each count for Counts Seven through Thirty-Three, to run concurrently with Counts One through Six.  (ROA.2692-93.)

In the days before and after sentencing, Castro began filing letters and motions with the district court on his own behalf.  (*See, e.g.*, ROA.794, 811.) And soon after the district court imposed its sentence, Castro filed a notice of his intent to proceed pro se.  (ROA.810.)  Relevant to this appeal, Castro also filed a motion for new trial and several objections to the filing of the trial transcripts, (ROA.934, 946, 949, 979, 1038, 1043), all of which the district court denied.  Castro then filed a second motion for new trial and for an evidentiary hearing, (ROA.1136), and a motion to strike the stipulations from the evidentiary record, (ROA.1162).  The district court ultimately denied each

---

[1] In short, Castro also objected to the grouping of counts, the PSR's calculation of the total loss amount, the sophisticated-means enhancement, and the calculation of his criminal-history category.  He does not raise any of those arguments on appeal.

of Castro's motions, (ROA.907, 994, 1162, 1287, 1303, 1305, 1309, 10078, 10132), and eventually denied Castro's later-filed motions for lack of jurisdiction because he timely filed a notice of appeal, (ROA.10108-10).

This appeal follows.

## SUMMARY OF THE ARGUMENT

1.    In his first, second, and fifth issues on appeal, Castro complains of the district court's denial of his five motions for new trial, his many motions to strike agreed evidentiary stipulations, and his motions to correct the trial transcript.  But Castro cannot overcome the mountain of procedural hurdles he created by first filing his notice of appeal before filing the complained-of motions, failing to file a timely motion for new trial, and failing to designate any of the issues he seeks to appeal in his notice of appeal.  Accordingly, the district court was without jurisdiction to review Castro's motions, and the rulings the district court did make are non-final and non-appealable.  Thus, this Court lacks jurisdiction to review them as well.

But even if this Court were to reach the merits of the district court's denial of those motions, Castro cannot show error.  First, he waived his confrontation-clause claim regarding the evidentiary stipulations, and that claim is entirely unreviewable on appeal.  Next, the record completely refutes Castro's claim that the government suppressed evidence regarding Linda Rivera, and he cannot show error even on de novo review.  Finally, the district

10

court did not err in denying Castro's spurious motions to correct the trial transcript (most of which were filed before the transcript was even complete).

2.    Castro likewise cannot show that the district court clearly erred in applying the organizer-leader enhancement.  Under USSG § 3B1.1(a), a four-level enhancement is warranted "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  The record soundly supports the district court's findings under either theory of the enhancement, and Castro wholly failed to rebut those findings in the district court or on appeal.  This Court can easily affirm the district court's application of the enhancement.

3.    For the first time on appeal, Castro claims that the district court "made no factual findings" to support the obstruction-of-justice enhancement. But under this Court's precedent, he cannot show that the district court erred, let alone clearly or obviously erred, by making implicit predicate factual findings of perjury.  Nor can he show a reasonable probability that—had the district court been required to make explicit, rather than implicit, findings—it would not have applied the obstruction-of-justice enhancement.  Accordingly, Castro's claim that the district court erred by purportedly making "no factual findings" to support the obstruction-of-justice enhancement fails on all four prongs of plain-error review.

11

To the extent Castro disputes the substance of the district court's implicit finding that he obstructed justice, Castro fails to show that the district court clearly erred in its finding. Here, the district court judge who presided over the trial and observed Castro's testimony and the testimony of the IRS agent (SA Ma) that Castro twice sued personally in retaliation for the investigation. The district court also heard the testimony of six individuals who stated that Castro claimed deductions on their tax returns that were not rooted in fact and that they did not provide him. Because either of these grounds would be sufficient to support the obstruction-of-justice enhancement, and because Castro fails to show that the district court's implicit findings on each of the grounds were implausible, this Court should affirm the district court's application of the enhancement.

## ARGUMENT AND AUTHORITIES

**1.     This Court lacks jurisdiction over Castro's appeal of the district court's denial of motions filed after his notice of appeal.  (Responsive to Castro's Issues One, Two, and Five)**

### Standard of Review

Questions of subject-matter jurisdiction are reviewed de novo.  *Wagner v. United States*, 545 F.3d 298, 300 (5th Cir. 2008).  "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."  *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009).

### Discussion

This Court lacks jurisdiction over Castro's attempt to appeal the district court's denial of the motions he filed (and the district court ruled on) after he filed the notice of appeal because (1) the filing of the notice of appeal deprived the district court of jurisdiction to rule on those motions and thus there is no effective district court order for this Court to review; and (2) Castro failed to notice the district court's denial of those non-final motions in his notices of appeal.

**A.     Castro's filing of a notice of appeal deprived the district court of jurisdiction to rule on Castro's post-notice motions, so there is no effective district-court ruling for this Court to review.**

It is well-established that the filing of a notice of appeal is "an event of jurisdictional significance."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56,

58 (1982). Filing a notice of appeal confers jurisdiction on this Court and "divests the district court of its control over those aspects of the case involved in the appeal." *Id.*; *see also Ross v. Marshall*, 426 F.3d 745, 751 (5th Cir. 2005) ("[T]he filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act on the matters involved in the appeal."). Indeed, "[t]he general rule is that a case can exist only in one court at a time, and a notice of appeal permanently transfers the case to [the Court of Appeals] until [that Court] send[s] it back [to the district court]." *United States v. Lucero*, 755 F. App'x 384, 386-87 (5th Cir. 2018); *see also United States v. Willis*, 76 F.4th 467, 471 (5th Cir. 2023) (applying the "one-court-at-a-time-rule" to hold that the district court lacked the power to re-sentence a defendant after he filed his notice of appeal).

Here, in his Issues One, Two, and Five, Castro seeks to appeal the district court's denial of his second motion for new trial, motions for reconsideration, motions to strike the evidentiary stipulations admitted at trial, and motions to correct the trial transcript. (*See* Brief at 21-76.) But because each of these motions were filed (and ruled on) *after* Castro filed a notice of appeal, the district court did not have jurisdiction to rule on them. [2] (ROA.821.)

---

[2] Moreover, this Court has jurisdiction over *final* orders and certain interlocutory orders as defined by statute. *See* 28 U.S.C. §§ 1292-21. "For purposes of § 1291, a final judgment is

Notably, although there are exceptions to the one-court-at-a-time rule, none of them apply here. *See Lucero*, 755 F. App'x at 386; *see, e.g.*, Fed. R. Crim. P. 35(a), 36. Federal Rule of Criminal Procedure 35 is inapplicable because none of the motions that Castro filed after he filed his notice of appeal pertain to a technical error or an arithmetic error, and he certainly has not directed this Court to any clear error warranting correction under Rule 35. *See* Fed. R. Crim. P. 35(a); *United States v. Sanchez-Villareal*, 857 F.3d 714, 717-18 (noting that the authority to correct a sentence under Rule 35(a) "extends solely to cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action.") (quotation omitted). Federal Rule of Criminal Procedure 36 likewise does not apply because the substantive objections Castro raised cannot in any way be characterized as "clerical." *See* Fed. R. Crim. P. 36. And the compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A), cannot apply here because neither Castro nor the Bureau of Prisons asked the district court to lower Castro's sentence. Finally, while the

---

normally deemed not to have occurred until there has been a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010) (internal quotation marks and citation omitted). Here, the district court's October 30, 2024, judgment ended the litigation on the merits. (ROA.806.) Accordingly, this Court lacks jurisdiction to review the district court's rulings on Castro's numerous filings after the district court entered judgment, as those rulings constitute non-final orders.

district court entertained Castro's motions despite its lack of jurisdiction to do so, "it is a bedrock pillar of federal law that 'subject-matter jurisdiction cannot be created by waiver or consent.'" *Willis*, 76 F.4th at 473 (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001)). Consequently, the district court was without jurisdiction to entertain any of Castro's motions filed after he filed his notice of appeal on November 12, and none of those motions can form the basis of a valid issue on appeal now.[3] *Id.*

### Castro's motions for new trial were untimely and thus did not delay the date his notice of appeal deprived the district court of jurisdiction.

Castro appears to have been aware of this transfer of jurisdiction upon filing his notice of appeal, because on the notice he stated:

> It is the intent of Defendant that this Court retain jurisdiction until the following motions currently pending before the Court are resolved so that they too can be considered on appeal:
>
> 1. Motion to Modify the Restitution Order
> 2. Motion to Modify Sentencing
> 3. Motion for New Trial
>
> Respectfully submitted,
>
> John Anthony Castro
> Defendant, Pro Se

(ROA.821.) But the rules of appellate procedure provide a mechanism for courts to retain jurisdiction when a *timely* filed motion for new trial is pending.

---

[3] Eventually, the district court dismissed Castro's May 13, 2025, motion to strike the agreed evidentiary stipulations for lack of jurisdiction. (ROA.10109-10.)

*See* Fed. R. App. P. 4(b)(3) (providing that a previously filed notice of appeal becomes effective when the district court rules on a *timely filed* motion for new trial). Because, as discussed below, Castro's motion for new trial was not based on newly discovered evidence, it was not timely filed, and the district court did not retain jurisdiction under Federal Appellate Rule 4(b)(3) to consider that motion (or any other motion filed after the notice of appeal).

Under Federal Rule of Criminal Procedure 33(b)(2), a criminal defendant has three years from the verdict or finding of guilt within which to file a motion for new trial based on newly discovered evidence. Fed. R. Crim. P. 33(b)(1). Any other ground for a motion for new trial must be filed within 14 days of the verdict or finding of guilt. Fed. R. Crim. P. 33(b)(2). Rule 33's time limits are inflexible mandatory claims-processing rules, and trial courts rightly dismiss motions filed outside of those time limits. *See Eberhart v. United States*, 546 U.S. 12, 18 (2005).

Castro filed five motions either asking for a new trial under Rule 33, objecting to the court's denial of those motions, or asking the court to reconsider its rulings. (*See* ROA.3053-58, 926-29, 975-78, 1136-48, 1293-1302.) Castro filed his first motion for new trial on November 12, 2024—172 days after the district court's finding of guilt—and each subsequent motion fell further away from Rule 33's 14-day deadline. (*See* ROA.926 (Objection to

17

Order Denying Motion for New Trial, filed December 31, 2024); ROA.975

(Motion for Reconsideration of Order Denying Motion for New Trial, filed

January 7, 2025); ROA.1136 (Second Motion for New Trial, filed February 20,

2025); ROA.1293 (Motion for Reconsideration of Denial of Defendant's

Second Motion for New Trial, filed March 26, 2025).).  Moreover, none of

these motions seeking a new trial were based on newly discovered evidence.[4]

Consequently, because Castro's motion for a new trial and subsequent related

motions were all filed well-after the Rule 33's deadline, they were untimely

and did not stay the effective date of Castro's notice of appeal, which deprived

the district court of jurisdiction on November 12.

Additionally, although the district court addressed many of Castro's

motions on the merits before finally dismissing them for lack of jurisdiction,[5]

that does not mean the district court had jurisdiction over those motions.

---

[4] As discussed further below, despite Castro's attempt to label them as such, none of his motions seeking a new trial were based on newly discovered evidence. *See United States v. Ugalde*, 861 F.2d 802, 806-10 (5th Cir. 1988) (affirming the district court's dismissal of the defendant's new trial motion as untimely where the defendant claimed new evidence that was known to him at the time of trial); *see also United States v. Demopoulos*, 506 F.2d 1171, 1180-81 (7th Cir. 1974), *cert. denied*, 420 U.S. 991 (1975) ("Where, as here, the facts alleged in support of a motion for a new trial were within the defendant's knowledge at the time of trial, such a motion may not be treated as one in the nature of newly discovered evidence for purposes of Rule 33."). Here, the record soundly demonstrates that Castro was aware at trial of the evidence that he claims is new, thus, his motion should not be treated as one based on newly discovered evidence for purposes of Rule 33's time limits.

[5] (*See* ROA.907, 994, 1162, 1287, 1303, 1305, 1309, 10078, 10132 (denying Castro's on the merits); ROA.10108 (dismissing Castro's motions for lack of jurisdiction or, in the alternative, denying them on the merits).)

18

Indeed, this Court's precedent makes clear that a ruling on the merits has no effect where, as here, the district court lacked the jurisdiction to make it. *See United States v. Mulderig*, 120 F.3d 534, 539-40 (5th Cir. 1997) (stating that once the defendant filed his notice of appeal, the district court lost jurisdiction and the court of appeals "cannot put the toothpaste back in the tube").

### B.  This Court lacks jurisdiction to review the district court's denial of Castro's post-notice motions because Castro failed to notice those denials in his notices of appeal.

Further, because Castro did not include the district court's denial of his second motion for new trial, motions for reconsideration, motions to strike the evidentiary stipulations admitted at trial, or motions to correct the trial transcript in either of his notices of appeal, this Court lacks jurisdiction to review those claims.

Federal Rule of Appellate Procedure 3(c)(1)(B) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed[.]"  The Supreme Court has held that these rules "are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992).  Courts are directed to "liberally construe" the Rule 3 requirements, but this principle does not "excuse noncompliance with the Rule." *See id.*  Failure to comply with Rule 3 is therefore "fatal to an appeal." *Id.*  Moreover, a "litigant's failure to clear a jurisdictional hurdle" like that in

19

Rule 3 "can never be 'harmless' or waived by a court." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 n.3 (1988).

Where an appellant "notices the appeal of a specified judgment only or a part thereof, . . . this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal." *Warfield v. Fidelity and Deposit Co.*, 904 F.2d 322, 325 (5th Cir. 1990) (internal citation and quotation omitted); *see also United States v. Bouldin*, 466 F. App'x 327, 328 (5th Cir. 2012) (holding that the Court lacked jurisdiction to review a subsequent denial of a motion for new trial that was not referenced in the notice of appeal). This is because a notice of appeal's purpose is to "advise the opposing party that an appeal is being taken from a specific judgment, and such notice should therefore contain sufficient information so as not to prejudice or mislead the appellee." *Markham v. Holt*, 369 F.2d 940, 942 (5th Cir. 1966) (quotation marks and citation omitted).

Here, Castro's first notice of appeal provided no notice whatsoever that he sought to appeal the district court's post-judgment rulings on his motions to strike the stipulations, motions to correct the trial transcript, and his motions for new trial. (ROA.821 (notice of appeal designating only Castro's intent to appeal "the verdict as well as the sentencing").) Nor could it have, as the

notice of appeal pre-dated those motions, as well as the court's ruling on those motions.

Likewise, Castro's second notice of appeal, filed February 2, 2025, referenced only the district court's denial of his first motion for new trial, (ROA.1180), and thus provided no notice that he sought to appeal the district court's rulings on his second motion for new trial, motions for reconsideration, motions to strike the evidentiary stipulations admitted at trial, or motions to correct the trial transcript in either of his notices of appeal.[6]  Accordingly, this Court lacks jurisdiction over those issues that were not included in Castro's first or second notice of appeal.

**2.    In any event, the district court properly denied each of Castro's post-conviction motions on the merits.  (Responsive to Castro's Issues One, Two, and Five)**

Even if this Court determined that it has jurisdiction to consider Castro's first, second, and fifth issues on appeal, this Court should affirm on the basis that the district court properly denied each of Castro's post-judgment motions.

---

[6] Notably, Castro could have filed his discovery motions and Rule 33 motions for new trial, obtained rulings on those motions, and then filed a notice of appeal of the verdict and the sentence that would have subsumed all the issues Castro attempts to raise on appeal.  But he did not do that.  Instead, he filed a notice of appeal that robbed the district court of jurisdiction over his later motions and rendered the district court's resulting orders on those motions non-final, and non-appealable.

## A.     Castro waived his right to object to the admission of the agreed evidentiary stipulations.  (Responsive to Castro's Issue One)

Castro argues that his right to confrontation was violated when the district court admitted agreed-upon evidentiary stipulations at his bench trial. (Brief at 21-36.)  However, because Castro affirmatively agreed to the admission of the evidentiary stipulations and even submitted some of the stipulations to which he now complains himself,[7] he effectively waived any argument against their admission, and his claim that their admission violated his confrontation rights is thus unreviewable under this Court's precedent.

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'"  *United States v. Olano*, 507 U.S. 725, 733 (1993).  A claim that is waived is entirely unreviewable, unlike forfeited errors, which are reviewable for plain error.  *See United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995). Notably, defense counsel may waive a client's Sixth Amendment right to confrontation by stipulating to the admission of evidence, "so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a

---

[7] On appeal, Castro lodges a global complaint against the stipulations at trial (some of which he also filed) and he does not identify which specific stipulations he objects to.  Indeed, the district court denied several of Castro's post-conviction motions to strike the evidentiary stipulations because there were so many stipulations entered at trial, and Castro did not identify what stipulations he believed were entered in error.  (*See, e.g.*, ROA.1305, 1309 ("At this juncture of these proceedings, the Court has no idea to what Defendant is referring.").) Without more specificity, the government assumes that Castro objects to all the stipulations admitted at trial.

prudent trial strategy." *United States v. Stephens*, 609 F.2d 230, 232-33 (5th Cir. 1980). The government has the burden of proving a valid waiver, and this Court will "indulge every reasonable presumption against waiver of fundamental constitutional rights." *United States v. Ceballos*, 789 F.3d 607, 614 (5th Cir. 2015) (quoting *United States v. Johnson*, 954 F.3d 1015, 1020 (5th Cir. 1992)).

Here, through his attorneys, Castro agreed to two sets of stipulations. The first set of stipulations, (ROA.535-51), covered proposed witness testimony, certain exhibits, and undisputed facts as set forth in an attachment to the stipulation. (ROA.535-51.) Specifically, the stipulations covered the testimony of the following witnesses that the government did not intend to call at trial: Paul and Alisa Clayton, James Boggs and Frances Fifi-Boggs, Linda Rivera, Christian and Ciara Karavangelos, Javier and Betsy Sola, Joseph and Kayla Zilinski, Crystal Wells, Brian and Kimberly Quigley, Fabio Ramos, and Federico and Justine Turatti. (ROA.535-36.)[8]

---

[8] From that list, the government only called Linda Rivera at trial. In addition to Rivera's testimony, the government put on the testimony of the following witnesses to support the remaining counts of the indictment not covered by the agreed stipulations: Ahmad Lampkin, Michael Putica, John Meyer, and Randolph Ragsdale.

The second set of stipulations, (ROA.736), referenced the admission of certain government exhibits, and counsel for the government and for Castro also electronically signed that document before its filing. (ROA.736-37.)[9]

Both counsel for the government and for Castro electronically signed the stipulations before they were filed. (ROA.537.) And in an email, Castro personally and explicitly agreed to the stipulations:

---

[9] Castro also alleges that the agreed evidentiary stipulations are invalid because the signatures did not comply with a local rule requiring parties to maintain paper copies of wet signatures. (Brief at 25-26 (citing Northern District of Texas Local Criminal Rule 49.6).) First, there is nothing to suggest that either counsel for the government or for Castro applied anything but an electronic signature to the agreed stipulations. Second, the local rules also provide that notwithstanding any local criminal rules, the presiding judge "may direct the parties to proceed in any manner that the judge deems just and expeditious." Local Criminal Rules of the United States District Court for the Northern District of Texas 57.1, (Sept. 3, 2024), https://www.txnd.uscourts.gov/sites/default/files/documents/CRIMRULES.pdf. By accepting the filings and relying on them throughout trial, the court and the parties implicitly, if not expressly, agreed that the signatures were sufficient.

**From:** "John Anthony Castro, J.D., LL.M." <j.castro@castroandco.com>
**Date:** May 13, 2024 at 2:07:58 PM CDT
**To:** Mick Mickelsen <mick@texascrimlaw.com>
**Subject: Re: Stipulations**

I agree to them.

> On May 13, 2024, at 12:16 PM, Mick Mickelsen
> <mick@texascrimlaw.com> wrote:
>
> John,
>
> As the defendant you must agree to the proposed stipulations. I strongly
> urge you to say yes and let's put this matter to rest.
>
> Mick

(ROA.1316.)

Before the government called Linda Rivera, one of the witnesses whose
testimony and supporting evidence was covered in the stipulations, Castro's
counsel confirmed that Castro had no objection to the stipulations of both the
testimony and the evidence regarding that witness. (ROA.1696-97.) As such,
the government presented a truncated version of Rivera's testimony.
(ROA.1722.) Although, after Rivera's testimony, Castro's counsel informed
the government that it no longer agreed to truncated versions of the other
witness's testimony contained in the first set of stipulations, (ROA.1722),
Castro never moved to strike the stipulations. And prior to closing arguments,
Castro's counsel again declined to object or move to strike them from the

record, explaining that the disputed issue was whether Castro acted willfully,

and that that issue is not shown by the stipulations themselves:

> THE COURT: I reviewed—I've been reviewing, as we've gone
> on, and reviewed again last night, the stipulations that you two
> have agreed to, and my impression is that the government believes
> that it has proven, on the counts that are stipulated to, has proven
> all of the elements of the crime through those stipulations.
>
> THE GOVERNMENT:  That is correct, Your Honor.
>
> THE COURT:  Including willfulness.
>
> THE GOVERNMENT:  That, combined with the admitted
> exhibits for those stipulations, yes, Your Honor.
>
> THE COURT:  Yes, yes, because the stipulations were there.  But,
> the defense, I'm inferring, admits to the elements, except for
> willfulness?
>
> THE DEFENSE:  I think that is accurate.  Our view is the
> stipulated facts, if there were—if there are positions that were
> objectively incorrect, or, you know, items on the returns that were
> not correct, that the stipulations themselves do not satisfy
> willfulness or that it was an intentional, but I think where the
> parties view this is if Your Honor comes to the conclusion that
> with respect to the six taxpayers put forward, you know, that we
> really addressed during court, that if you found willfulness, that
> would be sufficient to infer—
>
> THE COURT:  Willfulness on the other—
>
> THE DEFENSE:  with respect to the other items.

(ROA.2575-76.)  The court then encouraged Castro's counsel to let the court

know if it believed any other elements were not met with respect to the

stipulated witnesses, to which Castro's counsel responded, "[t]his case is all about willfulness, Your Honor." (ROA.2576.)

In sum, because Castro and his counsel electronically signed the stipulations before they were filed, Castro personally agreed to the stipulations in an email, and Castro and his counsel never sought to strike the stipulations from the record, Castro has waived the issue of whether those stipulations were properly admitted.

On appeal, Castro attempts to distance himself from the email where he agreed to the stipulations, arguing instead that "the district court did not even have the original email that [defense counsel] sent to Castro to determine if there were actually any attachments, the email made no reference to attachments, only asked whether Castro agreed to his own proposed stipulations covering basic non-substantive facts." (Brief at 35.) But Castro's late-made and self-serving claims are plainly belied by the record. His email makes clear that he personally agreed to the proposed stipulations, and that agreement amounted to an effective waiver of Castro's right to confrontation. *United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir.1995) (holding that counsel's unchallenged stipulation to the admission of defendant's testimony effectively waived her right to confrontation); *see also United States v. Reveles*, 190 F.3d 678, 683 (5th Cir.1999), *abrogated on other grounds by United States v. Vargas–Ocampo*,

747 F.3d 299 (5th Cir. 2014) (en banc). Further, at trial, his counsel twice confirmed agreement with the stipulations (except as to the element of willfulness). (ROA.2575-76.) Accordingly, Castro's claim is entirely unreviewable on appeal.

Castro also appears to take issue with the fact that the stipulations were not read into the record, seeming to argue that if they had been, he would have been aware of their content and could have personally agreed or objected to their admission, but this Court's precedent makes clear that is not required. *See Ceballos*, 789 F.3d at 607 (affirming despite the district court never confirming that the defendant assented to the stipulation); *Reveles*, 190 F.3d at 683 (finding a valid waiver of the right to confrontation without evidence that the defendant himself expressed agreement with the stipulation); *see also United States v. Adams*, 439 F. App'x 340, 342 (5th Cir. 2011) (per curiam) (finding a waiver of the defendant's right to confrontation when he "was made aware of the issues surrounding the witness's availability" and "participated in his attorney's decision to admit [the witness's] written statement in lieu of her in-court testimony"). And there is nothing to suggest that agreeing to the stipulations was not a legitimate trial strategy. Castro's trial team made clear from the start of the proceedings and throughout trial that the issue was willfulness. (ROA.476-534, 1422 (stating that "this case necessitates no fact-finding apart

from the ultimate issue of guilt or innocence.").)  Thus, it was Castro's apparent and reasonable strategy to agree to the undisputed evidentiary facts to focus the court on the disputed issue of whether Castro acted with the required mens rea of willfulness.

In any event, even if the Court were to review Castro's waived claim, any error was harmless.  Confrontation Clause errors are subject to harmless-error analysis, *United States v. Fields*, 483 F.3d 313, 378 (5th Cir. 2007), and the government has the burden of proving harmlessness beyond a reasonable doubt.  *Id.*  Relevant considerations in evaluating harmlessness include, among other factors, (1) whether the testimony was cumulative; (2) the presence or absence of corroborating evidence; and (3) the overall strength of the prosecution's case.  *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008).

Here, any admission of the stipulations was harmless, as the stipulations were cumulative of and corroborated by other evidence, and even without the stipulations, the government presented overwhelming evidence of Castro's guilt.  Specifically, at trial, the government admitted without objection a spreadsheet that detailed "the various items that were identified that were false in different categories" as they related to each count of the indictment. (ROA.2018; GX 58.)  That summary exhibit—compiled from the indictment,

Castro's own tax software, and the records from other software companies—
succinctly summarized each count of the indictment and the evidence of fraud
to support it. (*See* GX 58.) The record also contains the tax-interview packets,
supporting documents, and tax returns for each of the witnesses covered by the
stipulations. (*See, e.g.*, GX 204-223 (all records pertaining to Javier and Betsy
Sola).) Thus, any live witness testimony simply expanded upon what was
already contained in Government's Exhibit 58 and was cumulative of that
exhibit and the supporting exhibits that were admitted without objection. The
evidence contained in the agreed stipulations was also corroborated by the
victims who did testify, Castro's employees, and the IRS agents that
investigated the scheme. Finally, the evidence against Castro was
overwhelming, as fully laid out in the government's proposed findings of fact
and conclusions of law. (ROA.285-469.) As a result, any error in admitting
the agreed stipulations was harmless.

In sum, Castro waived his right to confrontation by agreeing to the
stipulations, and he cannot now argue that this was error. And even if Castro
could overcome the hurdles to review that he created for himself, any error was
harmless beyond a reasonable doubt.

30

**B.    The district court did not abuse its discretion when it denied Castro's motions for new trial.  (Responsive to Castro's Issue Two)**

Castro argues that the district court abused its discretion in denying his motion for a new trial based on the government's purported suppression of *Brady* material.  But Castro fails to show that the district court abused its discretion, as the record demonstrates that his *Brady* claim is meritless.

This Court reviews a district court's denial of a motion for new trial for an abuse of discretion.  *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001).  "Generally, this [C]ourt has held that the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of the evidence preponderates against the verdict," and "[a] new trial is granted only upon demonstration of adverse effects on substantial rights by the defendant."  *Turner*, 674 F.3d at 466.  "[M]otions for new trial are not favored," and they "are granted only with great caution."  *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (internal quotation marks and citations omitted).  "The remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict."  *Id.* (internal quotation marks and citations omitted).

Where the motion for a new trial is based on an alleged *Brady* violation, this Court reviews any *Brady* determinations de novo. *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002); *United States v. Gonzales*, 121 F.3d 928, 946 (5th Cir. 1997); *United States v. Mack*, No. 23-30077, 2023 WL 5665758, at *1 (5th Cir. Sept. 1, 2023) (unpublished). To establish a *Brady* violation, the defendant must show that "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment." *Runyan*, 290 F.3d at 245. Evidence is material under *Brady* when there is a "reasonable probability" that the outcome of the proceeding would have been different if the evidence had been disclosed to the defendant. *Runyan*, 290 F.3d at 245. "[A] reasonable probability is one sufficient to undermine confidence in the outcome." *Miller v. Dretke*, 431 F.3d at 251 (citing *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). In reviewing the district court's determination whether there was a *Brady* violation, this Court accords due "deference to the factual findings underlying the district court's decision." *United States v. Turner*, 674 F.3d 420, 428 (5th Cir. 2012) (quoting *United States v. Severns*, 559 F.3d 274, 278 (5th Cir. 2009)).

Castro argues that the government committed a *Brady* violation when it allegedly suppressed evidence that Linda Rivera, a victim and government

32

witness at trial, was married but claimed to be single on her tax filings.[10]  (Brief

at 36-42.)  But Castro cannot show a *Brady* violation here, as he cannot show

that the evidence was suppressed.

Indeed, the record shows that Castro was aware of this information.

First, in the initial intake form provided by Castro, Rivera checked the box to

indicate that she lived with her spouse in the last six months of 2018, thereby

indicating to Castro that she was married.  (ROA.3139.)  Second, in a report

that was disclosed to Castro before trial, (ROA.3133), Agent Ma noted that

Rivera "filed as head of household because her husband works irregularly and

she had a disabled brother."  (ROA.3142.)  Finally, during defense counsel's

cross-examination of Rivera, Rivera testified about being married but filing her

taxes as if she was single at trial, so Castro clearly was aware of that

information at the time of trial.  (ROA.1717 (Rivera stating on cross-

examination that she has "always filed single" even though she was married).)

In short, the record firmly demonstrates that Castro knew Rivera was

married and that the government did not suppress that information.  As such,

---

[10] Castro also argues the district court erred when it ruled on his motion for new trial without holding an evidentiary hearing.  This Court has long recognized that "a district court may rule on a motion for new trial without conducting an evidentiary hearing." *Runyan*, at 248.  The decision rests within the sound discretion of the trial court. *Id.*  As established here, Castro's evidence was not "newly discovered," and the record conclusively established that it was not suppressed.  Thus, the trial court did not abuse its discretion in ruling on Castro's motion without a hearing.

Castro cannot show that the district court abused its discretion in denying his motion for a new trial based on a purported *Brady* violation that he failed to prove. Indeed, this is especially true considering that the allegedly suppressed information (i.e., the fact that Rivera is married but claimed to single on her tax filings) is impeaching at best, and "[i]mpeachment testimony normally is not a basis for granting a motion for new trial." *United States v. Wall*, 389 F.3d 457, 470 (5th Cir. 2004). The allegedly suppressed information does nothing to disturb the government's proof of Castro's guilt at trial, which was supported by ample evidence corroborating Castro's fraudulent scheme. The district court, as the factfinder, was in the best position to determine whether the evidence was suppressed, and it soundly determined that it was not. (ROA.907.) Castro's recycled arguments on appeal should not disturb that conclusion.

### C. The district court properly denied Castro's baseless and premature motions to correct the trial transcript. (Responsive to Castro's Issue Five)

Castro argues that the district court abused its discretion when it denied his motions to correct the trial transcript. In addition to being procedurally barred, Castro's claims are wildly speculative, unsupported, and he began lodging his unfounded complaints before the court reporter had even completed the trial transcript. On these facts, Castro is not entitled to reversal.

After the district court entered judgment, but before the transcript had been prepared, Castro filed two motions preemptively claiming that the transcript would contain inaccuracies.  (ROA.934, 946-47.)  The district court denied those motions as premature.  (ROA.1212-13.)  In doing so, the district court noted that Castro's preemptive claims about errors in the transcript were "wholly unsupported and unfounded" and stated that the court reporter "has performed yeoman's work for this Court for approximately two decades.  The Court is weary of Defendant's unfounded accusations in this regard and his multiple motions attributing errors to a transcript that has yet to be filed." (ROA.1213.)  It further admonished Castro that absent good cause, it would not entertain any further motions regarding the transcripts.  (ROA.1213.)

But Castro did not stop.[11]  He petitioned this Court for a writ of mandamus to the district court.  While Castro's mandamus petition was pending, the court reporter filed the trial transcript, rendering Castro's complaints to this Court moot.  *See In re John Anthony Castro*, No. 25-10396 (5th Cir. May 19, 2025) (unpublished order); (ROA.10104-05).  Notably, the

---

[11] Castro also filed motions in this Court alleging the same preemptive inaccuracies, and this Court summarily rejected all the same arguments and denied his request to stay the appeal or remand the case to the district court.  *See United States v. Castro*, No. 24-11000 (5th Cir. May 30, 2025) (denying Castro's (1) motions to stay the appeal for the purpose of remanding to the district court for an evidentiary hearing and/or correct the record on appeal; (2) motion to remand the case to the district court; (3) motion to strike document 36 from the record on appeal; (4) motion to compel the court reporter to provide access to her original notes and records)).

court reporter filed the trial transcript with her certification that it was a true and correct transcript.  (ROA.1416.)  Even still, the very next day, Castro moved the district court to compel compliance with the Court Reporter Act (CRA) and grant him access to the court reporter's original notes and audio recordings of the proceedings.  (ROA.10111-12.)  The district court denied this motion, noting that Castro "has wholly failed to present any proof in support of his claim."  (ROA.10133.)  This was not error.

Even assuming that any of the five single-sentence statements that Castro claims are missing from the trial transcript were actually made—a claim that is dubious at best—it is not enough to show error.  (*See* Brief at 71-76 (alleging sidebar comments from the district court such as "so this case is about outlandish legal positions" were omitted from the transcript).)  A CRA violation occurs "'when a substantial and significant portion of the record' is missing such that 'even the most careful consideration of the available transcript will not permit [this Court] to discern whether reversible error occurred.'"  *United States v. Shah*, 95 F.4th 328, 365 (5th Cir. 2024) (quoting *United States v. Selva*, 559 F.2d 1303, 1306 (5th Cir. 1977), and finding no error where 46 bench conferences were missing from the record).  This Court has found CRA violations only in truly egregious circumstances where entire portions of trial or the entire transcript are missing.  *Id.*; *Selva*, 559 F.2d at

36

1305.  Castro does not claim major gaps in the record, and he does not point this Court to a single case where reversal was warranted in these circumstances.  Nor has he demonstrated that any of the alleged omissions from the transcript were "significant" or "substantial" as this Court requires.  *See United States v. Delgado*, 672 F.3d 320, 343 (5th Cir. 2012).  Should the Court reach the district court's rulings on these motions, it should affirm.

**3.     The district court did not err, clearly or otherwise, in applying the leader-organizer enhancement.  (Responsive to Castro's Issue Three)**

<u>Standard of Review</u>

Castro preserved error by objecting to the application of the leader-organizer enhancement below.  (ROA.2669-77, 2865-67.)  A district court's determination that a defendant is a leader or organizer under USSG § 3B1.1(a) is a factual determination reviewed for clear error.  *See United States v. Haines*, 803 F.3d 713, 714 (5th Cir. 2015).  A district court's factual findings are not clearly erroneous if they are "plausible in light of the record as a whole." *United States v. Njoku*, 737 F.3d 55, 77 (5th Cir. 2013) (citation and quotation marks omitted).  This Court reverses a district court's factual findings only when, "based on the entire evidence, [it is] left with the definite and firm conviction that a mistake has been committed."  *Haines*, 803 F.3d at 714 (citation omitted).

## Discussion

Castro contends that the district court clearly erred in applying the leader-organizer enhancement under USSG § 3B1.1(a).  That provision states that a four-level enhancement is warranted "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  USSG § 3B1.1(a).  A "'participant' is a person who is criminally responsible for the commission of the offense, but need not be convicted."  USSG § 3B1.1, comment. (n.1).  Castro himself may be counted as a participant, *see United States v. Barbontin*, 907 F.2d 1494, 1498 (5th Cir. 1990), as can individuals who were either recruited by Castro or who were otherwise associated with him, *United States v. Lopez-Perez*, 623 F. App'x 223, 224 (5th Cir. 2015).

"In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered," including unknowing participants.  USSG § 3B1.1, comment. (n.3); *United States v. Martinez*, 131 F.4th 294, 322 (5th Cir. 2025).  The application notes further provide:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the

illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4).

While Castro objected to the district court applying the leader-organizer enhancement, he did not contest the facts described in the PSR supporting the enhancement.  Specifically, the PSR confirms that Castro: (1) "employed multiple individuals, including family members"; (2) "typically employed young and/or inexperienced employees who were hesitant to challenge any positions taken by Castro with respect to client's taxes"; and (3) provided his employees a script to follow when interviewing clients.  (ROA.2820-21.)  The evidence at trial further supported the PSR's position.  Castro's former employees testified at trial that Castro decided all the positions that were taken by Castro & Co. and that employees were instructed to work within a certain set of parameters.  (ROA.1825.)  Castro personally reviewed every tax return, and he was the only one that could file tax returns at the firm.  (ROA.1799.)  When it came to making decisions for the firm, Castro was the one "running the show."  (ROA.1828.)  Thus, the district court plausibly found that Castro was an organizer or leader.

The district court also plausibly found that the criminal activity that Castro led "involved five or more participants."   As the founder and owner of Castro & Co., Castro supervised and directed the staff, of which there were *at*

*least* five members, including Castro, his three brothers-in-law Ismael Garza, Alfonso Garza, and David Garza, (ROA.2053-54, 2055, 2060), and the handful of other employees he recruited along the way including Kathryn Hernandez, (ROA.1915-16), Kasondra Humphreys, (ROA.1789-80), Joshua Milam, (ROA.2445-46), Abraham DeLuna (ROA.2054), Tiffany Hunt, (ROA.2059), (ROA.2060), Alexander Gomez, (ROA.2061), and Celeste Doidge, (ROA.2062).  While each of Castro's employees were not individually named in the PSR, Castro named each of them as employees on direct examination at his trial.  *See United States v. Delgado*, 984 F.3d 435, 453 (5th Cir. 2021) (noting that a sentencing judge, particularly one that has presided at trial, is "in a unique position to assess the evidence").  Castro has not presented any credible rebuttal evidence that he was not the leader of the firm or that he did not employ at least five people.

Alternatively, the district court also plausibly found that Castro's criminal activity was "otherwise extensive."[12]  Castro established a tax law firm under the guise that he was a tax attorney.  (ROA.1979.)  He employed staff and advertised virtual office fronts across the country.  (ROA.1979.)  Over

---

[12] Castro argues the government forfeited this argument by not raising it in the district court, (Brief at 58-60), but he is simply wrong in that assertion.  At sentencing, the district court specifically considered whether the activity was also "otherwise extensive" in response to the government's argument.  (ROA.2672-75 ("Now alternatively, your Honor, I think it is an otherwise extensive operation here.").)

a period of years, Castro filed fraudulent tax returns for hundreds of unsuspecting taxpayers with an estimated tax loss of over $15 million, and he kept an average of 50% of a client's return for himself. (ROA.2821, 2825.) Castro testified at trial that he recruited employees to keep up with the demands of his scheme. Thus, the employees contributed to the success of his scheme; that some were not criminally responsible is irrelevant.

Castro's decision-making authority, degree of control, recruitment of others, and greater financial gain fully align with the factors contemplated by the guidelines. *See* USSG § 3B1.1(a), comment. (n.4). And Castro's conduct is comparable to situations where this Court has upheld the application of the enhancement. *See, e.g.*, *Martinez*, 131 F.4th at 322 (affirming application of the enhancement where the defendant's scheme involved multiple people, "both witting and unwitting"); *United States v. Bazan*, 604 F. App'x 343, 344-45 (5th Cir. 2015) (affirming application of the enhancement where the defendant was "directing people what to do, negotiating, finding the buyers, [and] seem[ed] to be very much in charge"); *United States v. Sejuelas*, 113 F. App'x 595, 597 (5th Cir. 2004) (affirming application of the enhancement where the record "demonstrated that [the defendant] exercised decision-making power, participated extensively in the crime, recruited at least one person for the

conspiracy[,] and exercised control and authority over others who participated" in the conspiracy).

Nonetheless, Castro claims that he does not qualify as a leader or organizer because the district court did not identify the other participants in the scheme.  (Brief at 43-61.)  Castro's argument is directly contradicted by the record and this Court's precedent that confirms that "in evaluating whether criminal activity was 'otherwise extensive,' the court looks at 'all persons involved during the course of the entire offense,'" including unknowing participants.  *Martinez*, at 322 (quoting *United States v. Tuma*, 738 F.3d 681, 694 (5th Cir. 2013)).  Castro's argument is also belied by the record, which is replete with evidence of Castro "directing" his employees' actions and tax positions, recruiting new employees, and benefiting the most from the scheme. (ROA.2380 (noting Castro's income was $983,000 in 2018).)  There was no dispute at trial or at sentencing that Castro was the sole leader of the firm and that he had the final say on all tax returns.  As the senior district judge noted, "if this defendant is not an organizer or leader, then I've never seen one." (ROA.2677.)

In sum, the district court properly applied the leader-organizer enhancement.  Castro's scheme involved at least five participants and was undoubtedly extensive.  That Castro employed at least ten people, harmed

2222222

22

hundreds of unsuspecting taxpayers, and caused a loss of roughly $15.5 million

contradicts any suggestion that the scheme was not extensive.

**4. The district court did not err, clearly or otherwise, in applying the obstruction-of-justice enhancement. (Responsive to Castro's Issue Four)**

<u>Standard of Review</u>

While Castro objected below to the obstruction-of-justice enhancement,

he did so on the grounds that he did not commit perjury and that his

retaliatory lawsuits were not a proper basis for the enhancement. (ROA.2856-

60.) On appeal, however, Castro raises a different argument, contending that

the district court improperly applied the enhancement because the court never

made specific factual findings regarding the enhancement. (Brief at 62-71.)

This Court has made clear that plain-error review applies where a

defendant's objection below is made on a different basis than his challenge on

appeal. *See, e.g.*, *United States v. Williams*, 343 F.3d 423, 434 & n.9 (5th Cir.

2003) ("He did not, however, object on this basis in the district court, so we

review this argument under the even more deferential plain error standard.");

*United States v. Plato*, 593 F. App'x 364, 376 (5th Cir. 2015) (noting that plain-

error review applies where a defendant "asserts a different basis for objection

on appeal"). That is because, to preserve error, a defendant must raise his

objection "in a manner that could have placed the district court on notice of

the error[s] he now asserts[.]" *United States v. Dominguez-Alvarado*, 695 F.3d 324, 328 (5th Cir. 2012).  Otherwise, the court is not given the opportunity to correct the alleged error.  *See United States v. Tapia*, 946 F.3d 729, 733-34 (5th Cir. 2020); *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009).

Here, Castro's objection to the application of the obstruction-of-justice enhancement sufficed to alert the district court to his disagreement with the district court's conclusion that he obstructed justice, but not with the sufficiency of the court's explanation of that conclusion.  *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).  Castro could have asked the district court to explicitly state its predicate factual findings, but he did not—presumably because, in the context of the parties' arguments and the court's ruling, the court's predicate findings were understood.  Further, because the government's written objection encompassed the necessary predicate findings, (ROA.2888-90), and the district court adopted the government's response, (ROA.2668, 2684-85), the district court would not have known from Castro's general objection to the enhancement that Castro wanted the court to explicitly state the predicate findings that the court implicitly adopted when it overruled his objection.  Because Castro never told the district court that it could not impose the obstruction-of-justice

44

enhancement because it did not make the requisite factual findings, plain-error review applies.[13]

## Discussion

Under USSG § 3C1.1, a court should increase a defendant's offense level by two levels if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." USSG § 3C1.1. The guideline's commentary makes clear that the enhancement applies where a defendant commits perjury, USSG § 3C1.1, comment. (n.4(B)), which the Supreme Court has defined as "giv[ing] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory," *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *see also Smith*, 804 F.3d at

---

[13] To the extent that this Court determines that Castro preserved this objection, its review is for clear error—and is not de novo, as Castro claims, (Brief at 62)—because Castro disputes the district court's factual finding that he obstructed justice, not the court's interpretation of the guidelines. *See United States v. Smith*, 804 F.3d 724, 737 (5th Cir. 2015). A factual finding is not clearly erroneous if it is plausible, considering the record as a whole. *See United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). This Court has also noted that it gives particular deference to findings—like the district court's obstruction-of-justice findings here—that are based on credibility determinations. *United States v. Powers*, 168 F.3d 741, 753 (5th Cir. 1999) (citing *Johnson v. Collins*, 964 F.2d 1527, 1532 (5th Cir. 1992)).

737. The guideline's commentary further provides that "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so" is also covered by the enhancement.  USSG § 3C1.1, comment. (n.4(A)).

Castro argues that the district court failed to make "findings that encompassed all of the factual predicates for a finding of perjury" and failed to find that his civil actions constituted an obstruction of justice.  (Brief at 65.) But based on the record and this Court's caselaw, he is wrong.

The PSR recommended the obstruction-of-justice enhancement based on two grounds: (1) that Castro testified falsely at trial; and (2) Castro's threatening behavior toward investigators during the investigation. (ROA.2823, 2825.)  Castro objected, arguing that he did not commit perjury at trial, and that his pretrial litigation "does not equate to an effort to obstruct the administration of justice."  (ROA.2856-60.)  But at sentencing, the district court explicitly overruled Castro's objection to the obstruction-of-justice enhancement based on the PSR, its addenda, and the reasons stated in the government's response to Castro's objections.  (*See* ROA.2668, 2684-85.)

In other words, the district court adopted the findings and the reasoning contained in the PSR, the addenda, and the government's response.  *See United States v. Ramseur*, 850 F. App'x 325, 325-26 (5th Cir. 2021) (holding that a

46

district court's adoption of the PSR's findings can support an obstruction enhancement); *United States v. Serrano*, 193 F.3d 517, 1999 WL706218, at \*8-9 (5th Cir. 1999) (holding that "the district judge, by reference to the [government's] objection [i.e., stating that it was sustaining the objection]" implicitly adopted the government's argument).

And, under this Court's caselaw, because those adopted reasons sufficiently encompass all the factual predicates for a finding of perjury, as well as for a finding that Castro's civil actions obstructed justice, the district court made "sufficient findings to support the obstruction enhancement." *See Serrano*, at \*8-9 (holding that, where the district court referenced the government's objection and the government's objection addressed the elements of perjury, the district court's findings were sufficient); *see also United States v. Ajayi*, 64 F.4th 243, 251 (5th Cir. 2023) (holding that where the district court adopted the PSR, which contained adequate predicate perjury findings, "nothing more is required"); *Cabral-Castillo*, 35 F.3d at 186-87 (holding that, where the sentencing court implicitly adopted the trial court's perjury findings, the issue is whether those implicitly adopted findings sufficiently encompass all the factual predicates for a finding of perjury). Thus, the district court did not fail to make the necessary predicate fact-findings for perjury, and Castro cannot show any error, let alone clear or obvious error.

Further, Castro also fails to satisfy the third and fourth prongs of plain-error review. First, he fails to satisfy the third prong, as he cannot show a reasonable probability that, had the district court been required to expressly recite the predicate factual findings it adopted from the PSR, addenda, and the government's response, the court would not have applied the obstruction-of-justice enhancement. *See Mondragon-Santiago*, 564 F.3d at 365 (holding that the defendant failed to show an effect on his substantial rights where he failed to show how a further explanation of his sentence would have changed his sentence). Indeed, by all accounts, the district court would have simply made its implicit findings explicit.

Moreover, even assuming for the sake of argument that the district court failed to make any findings, implicit or explicit, Castro still cannot show that such a failure affected his substantial rights because, as discussed below, the record demonstrates that Castro's testimony was false, material, and willful. *See Martinez*, 547 F. App'x at 563 (holding that the defendant "cannot show that the district court's failure to make factual findings regarding [the perjury predicates] affected his substantial rights" where the record demonstrates that the defendant's testimony was false, material, and willful). And because the record shows that Castro's conduct was willful, Castro likewise cannot show

that the district court's alleged failure to make findings seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*

In short, because Castro fails to show that the district court erred, let alone clearly or obviously erred, by making implicit predicate findings of obstruction rather than explicit findings, and because Castro fails to show that the district court's failure to make explicit findings affected his substantial rights and necessitates this Court's invention under the fourth prong, the Court should reject his contention that the district court plainly erred by making "no factual findings" to support the enhancement.

To the extent Castro disputes the substance of the district court's finding that he committed perjury and otherwise attempted to obstruct justice, Castro fails to show that the district court's finding was clearly erroneous.

First, the PSR—which the district court expressly adopted—supports the district court's conclusion that Castro's retaliatory litigation was an attempt to obstruct justice.  After Castro learned of the IRS investigation, "[h]e subsequently sent various emails to investigators, including [IRS Special Agent (SA)] Ma, throughout the investigation attempting to explain his conduct, eventually threatening to file suit against them." (ROA.2823).  The PSR then detailed each of the lawsuits Castro filed in retaliation for the investigation:

- *Castro v. United States*, No. 4:22-CV-016-O (N.D. Tex. 2022) ("claiming the IRS and the investigating agents unlawfully

disclosed confidential information in the course of their investigation");

- *Castro v. IRS*, No. 4:22-CV-810-P (N.D. Tex. 2022) ("alleging harassment and retaliation by the IRS and criminal conduct by SA Ma related to the investigation);

- *Castro v. Trump*, 4:23-CV-556-P (N.D. Tex. 2023) ("alleging the investigation into the instant offense was politically motivated and claiming a conspiracy by the former president and the IRS to monitor, surveil, and harass him").

(ROA.2823). Beyond these findings, the government's response—which the district court implicitly adopted—also cataloged various court's responses to Castro's "legal bullying." (*See* ROA.2889 (noting that Judge Pittman found Castro to be a "vexatious litigant" and that he had been cautioned elsewhere for his inappropriate behavior) (citing *Castro v. Oliver*, No. 1:23-cv-00766-MLG-GJF, slip op., at 3 (D.N.M. Oct. 18, 2023) ("Having put this legal matter to rest, the Court concludes by noting that Castro's filing employs a tenor unfamiliar to this Judge and one that is out of step with practice in this district. The Court cautions Castro and requests that any future filings comport with decorum and the respect practitioners typically afford federal judges."); and *Castro v. Warner*, No. 2:23-cv-00598, 2023 WL 7171462 at *6, *7 (S.D.W. Va. Oct. 31, 2023) (observing that Castro's filings "contain numerous examples of clearly inappropriate attacks" and noting that "derisive commentary is of little value to the Court in resolving motions").)

The government's response also rebutted Castro's argument that his emails to agents were merely to "convey information" and were not sent in retaliation. (ROA.2890; *see also* ROA.2823 (citing an email from Castro to SA Ma wherein Castro states "[m]y offer to settle is this: tell me who ordered you to initiate the unlawful and retaliatory investigation against me and I'll drop the lawsuit. One and only chance to settle.")). SA Ma testified that the day after Castro learned of the investigation, Castro sent him "a barrage of emails." (ROA.2009.) SA Ma further testified that Castro's threatening conduct made it difficult to find witnesses that were willing to come forward and testify against him. (ROA.2010.)

Last, the government's response addressed Castro's trial testimony, noting that "Castro lied about fabricating figures placed on the tax forms, claiming that the victims had provided that information. The Court heard numerous examples from victims where they testified that they never had such expenses and never told Castro they did, and yet, those figures ended up on their tax filings that Castro prepared and filed." (ROA.2888-89). The same district court judge who applied the enhancement presided over the trial and personally witnessed Castro's testimony. Giving due deference to that court's credibility determinations, and in light of the record as a whole, Castro can show no clear error in the district court's finding that he perjured himself. *See*

*United States v. Smith*, 804 F.3d 724, 738 (5th Cir. 2015) (holding that the district court did not clearly err in finding that the defendant perjured himself where the defendant's testimony was "flatly contradicted by other witnesses, tape-recorded conversations, and the ultimate finding of the jury"); *United States v. Lopez*, 174 F.3d 198, 1999 WL 152990, at \*5 (5th Cir. 1999) (finding no clear error in the district court's perjury findings where "[t]he district court had the benefit of hearing [the defendant's] original testimony [at trial] and the contradictory testimony of other witnesses").

Thus, the record amply supports the district court's finding that the obstruction-of-justice enhancement applies.  Because Castro cannot show that the district court implausibly found that he attempted to obstruct justice on any one of these bases—any one of which is sufficient to support the enhancement—this Court should affirm the district court's application of the obstruction-of-justice enhancement.

## CONCLUSION

This Court should affirm the judgment.

Respectfully submitted,

Nancy E. Larson
Acting United States Attorney

s/ Lauren C. Murphree
Lauren C. Murphree
Assistant United States Attorney
Texas State Bar No. 24085059
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401-4002
Telephone: (806) 472-7322
lauren.murphree@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF SERVICE

I certify that on November 10, 2025, I filed this brief with the clerk of court for the Fifth Circuit Court of Appeals. I also certify that a copy of this brief was sent to John Anthony Castro, Register Number 93890-510, Oakdale I FCI, P.O. Box 5000, Oakdale, Louisianna 71463, by certified mail.

/s/ Lauren C. Murphree
Lauren C. Murphree
Assistant United States Attorney

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,811 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

_s/ Lauren C. Murphree_
Lauren C. Murphree
Date: November 10, 2025