# United States Court of Appeals
*for the*
# Fifth Circuit

Case No. 24-11000

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN ANTHONY CASTRO,

*Defendant-Appellant.*

APPEAL FORM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH NO.: 4:24-CR-1-1
HONORABLE TERRY R. MEANS, U.S. DISTRICT JUDGE

## REPLY BRIEF FOR APPELLANT

JOHN ANTHONY CASTRO
*Appellant, Pro Se*
FCI Oakdale I
Registered Number 93890510
P.O. Box 5000
Oakdale, LA 71463

COUNSEL PRESS (800) 4-APPEAL • (131751)

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ........ iii

ARGUMENT ........ 1

I. Reply to the Government's Misstatements of Case-Framing Facts ........ 1

II. Reply to the Government's Mischaracterization of the Issues ........ 4

1. By the Operative Mechanics of Rule 37, this Honorable Court Has Jurisdiction Over the District Court's Rulings on Castro's Post-Notice of Appeal Motions ........ 5

2. Castro's Post-Notice of Appeal Motions Warrant Vacating the Conviction ........ 7

A. Regarding the 331 Alleged Testimonial Stipulations at Docket 36, the Government Concedes that Castro's Opposition to Stipulations was Apparent Constituting Dissent Thereby Negating Waiver, Concedes the District Court Relied on Them to Find Guilt Thereby Negating Harmless Error, Completely Ignores the "Full Knowledge of the Implications" Requirement, and Relies on the Vagaries of the Rules in Arguing They Were Not Withdrawn ........ 7

B. Regarding the Brady-Based First Motion for New Trial, in Failing to Even Acknowledge the Suppression of the Child Support Lien Regarding and Undisclosed Criminal Immunity Given to Linda Rivera, the Government Has Forfeited the Issue Warranting Castro's Immediate Release ........ 17

C. Regarding the Amended Motion to Correct the Trial Transcripts, Because Castro Alleged Outcome-Effecting Alterations to the Transcripts, He is Entitled to an Evidentiary Hearing ........ 22

3. The Government's Response Entirely Ignores the Requirement to Make a Legal Determination that Four Other Individuals Committed All of the Elements of the Offense to be Considered Participants ................................23

4. With the Correct Standard of Review Being De Novo with No Factual Findings, the Obstruction-of-Justice Enhancement Cannot Apply ....................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Brady v. Maryland,
373 U.S. 83 (1963) .... 6, 19

Crawford v. Washington,
541 U.S. 36 (2004) .... 14

Hemphill v. New York,
595 U.S. 140 (2022) .... 10

Hoyt v. Lane Constr. Corp.,
927 F.3d 287 (5th Cir. 2019) .... 5

Rollins v. Home Depot USA,
8 F.4th 393 (5th Cir. 2021) .... 8, 13, 25

Smith v. Arizona,
602 U.S. 779 (2024) .... 14

Sperry v. Florida,
373 U.S. 379 (1963) .... 1, 2

U.S. v. Abrego,
997 F.3d 309 (5th Cir. 2021) .... 27

U.S. v. Adams,
439 Fed.Appx. 340 (5th Cir. 2011) .... 12

U.S. v. Alvarado-Valdez,
521 F.3d 337 (5th Cir. 2008) .... 15, 16

U.S. v. Armstrong,
132 F.4th 736 (4th Cir. 2025) .... 6

U.S. v. Balzan,
604 Fed.Appx. 343 (5th Cir. 2015) .... 24

U.S. v. Ceballos,
789 F.3d 607 (5th Cir. 2015) .... 7, 9, 10, 13

U.S. v. Dvorin
817 F.3d 438 (5th Cir. 2016) .... 17

U.S. v. Haines,
803 F.3d 713 (5th Cir.. 2015)....24

U.S. v. Hope,
545 F.3d 293 (5th Cir. 2008)....5

U.S. v. Lopez-Perez,
623 Fed.Appx. 223 (5th Cir. 2015)....24

U.S. v. Martinez/Lightner,
131 F.4th 294 (5th Cir. 2025)....24

U.S. v. McLauling,
753 F.3d 557 (5th Cir. 2014)....5

U.S. v. Miller,
607 F.3d 144 (5th Cir. 2010)....27

U.S. v. Musquiz,
45 F.3d 927 (5th Cir. 1995).... 14, 15

U.S. v. O'Keefe,
128 F.3d 885 (5th Cir. 1997).... 17, 18

U.S. v. Ortega,
93 F.4th 278 (5th Cir. 2024).... *passim*

U.S. v. Pineiro,
410 F.3d 282 (5th Cir. 2005)....16

U.S. v. Ramirez,
557 F.3d 200 (5th Cir. 2009)....5

U.S. v. Reveles,
190 F.3d 678 (5th Cir. 1999).... 9, 10

U.S. v. Runyan,
290 F.3d 223 (5th Cir. 2002).... 17, 18, 19

U.S. v. Sejuelas,
113 Fed.Appx. 595 (5th Cir. 2004)....24

U.S. v. Stephens,
609 F.2d 230 (5th Cir. 1980).... 9, 10

U.S. v. Swenson,
894 F.3d 677 (5th Cir. 2018)....17

U.S. v. Thomas,
724 F.3d 632 (5th Cir. 2013) .......... 10

U.S. v. Wall,
389 F.3d 457 (5th Cir. 2004) .......... 19

**Statutes & Other Authorities:**

Fed. R. Crim. P. 37 .......... 5, 6, 7, 22

Fed. R. Crim. P. 37(a) .......... 6

Fed. R. Crim. P. 37(a)(2) .......... 6

## ARGUMENT

### I. Reply to the Government's Misstatements of Case-Framing Facts

Castro's approach to this Final Reply is not the repeat his arguments already made in the Opening Brief but to pointedly rebut the Government's arguments, correct misstatements of fact, and to correct mischaracterizations of the law. As stated in Winning on Appeal, a reply brief "is at its worst when an appellant simply rewrites the opening brief and restates what was said before." Tessa Dysart, Winning on Appeal: Better Briefs and Oral Arguments (3d ed. 2017). As such, Castro preserves and reincorporates all arguments and points made in his Opening Brief.

Before discussing the briefed issues, it is critical to correct three mischaracterizations unrelated to the briefed issues but important to the overall framing of the case.

First, the Government claims "Castro falsely [held] himself out to be a tax attorney" and was engaged in the "unlicensed practice of law regarding his [federal] tax preparation work." Resp. Br. 2-3. This is a mischaracterization of the facts and law. In Sperry v. Florida, the U.S. Supreme Court held that "by virtue of the Supremacy Clause, [a state] may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority." 373 U.S. 379, 385 (1963). In that case, because Mr. Sperry had a law degree and was licensed as a Patent Agent with the U.S. Patent and Trademark

Office, he referred to himself as a Patent Attorney. Id. However, in a footnote, the Supreme Court explained that "Petitioner's right to refer to himself as a 'Patent Attorney' has been mooted by his voluntary discontinuance of the use of the term 'attorney.'" Id. at 404 n.1. Thus, the question of whether a federal practitioner (i.e., an individual licensed before a federal agency) with a law degree may refer to himself as an attorney was not settled. This was acknowledged by the district court when it found that Castro, being a Georgetown Law graduate, "referr[ed] to himself as a 'federal practitioner' and an 'international tax attorney' due to being registered with the IRS as an enrolled agent." ROA.2820. The testimony of the case agent even acknowledged that Castro explained to investigators that a "good-faith attempt to change existing law is protected conduct." ROA.2005:3-2006:12. Even the prosecutor acknowledged, "I understand you want to create precedent." ROA.2324:10. When Castro sought to further explain his state of mind, the trial judge sustained the line of questioning. ROA.2435:10-18. The prosecution conceded Castro's good-faith attempt to expand the Supreme Court's holding in Sperry v. Florida in hopes of laying the foundation for the creation of a Federal Tax Bar just like Mr. Sperry's persistence gave birth to the Federal Patent Bar.

Second, as Castro explained in his Opening Brief, the prosecution initially communicated a theory of guilt that Castro was promoting frivolous legal positions with no basis in law. See Open. Br. 4-5. After Castro elected a bench trial to resolve

this purely question of law and filed an extensive and thorough expert report eviscerating the prosecution's theory of guilt, the prosecution began to secretly lay the foundation for an alternative theory that Castro had fabricated deductions with no basis in fact. See Open. Br. 5; ROA.245-280, 283-284. This puts into context why defense counsel made statements like "this case necessitates no fact-finding" and "the most important law" in this case is "willfulness," which the Government misused out-of-context in its Response. Resp. Br. 28; ROA.1422. As Castro explained in his Opening Brief, in the trial judge's verdict, he expressly avoided any ruling on the prosecution's assertion that Castro's legal positions were frivolous with no basis in law. See Open. Br. 13-14. Instead, the trial judge concluded that his verdict was based on his conclusion that there were fabricated deductions with no basis in fact. See Open. Br. 14. The trial judge elaborated further that there were "fabrications of numbers... out of whole cloth." ROA.2617:25-2618:1. Therefore, the verdict was not based on "legal positions" as the prosecution asserted at sentencing and the Government continues to mischaracterize on appeal. This case is solely about numbers being allegedly fabricated out of thin air, which leads to the next mischaracterization.

The Government's Response claims "Castro's tax proposal to [Angela] Johnson contained $29,339 in [fabricated] deductions," which would be no basis in fact as the trial judge ruled. Resp. Br. 5. However, during the testimony of Angela

Johnson, she confirmed her "monthly cellphone bill" was "120." ROA.1529:13-15. Defense counsel explained that "120 a month times 12 is 1440." ROA.1543:12. Defense counsel also confirmed that her "monthly internet bill was $80" and "80 times 12 is 960," which totaled to "2400 that's in the blue box on Government's [Exhibit] 82." ROA.1543:20-22, 1544:2-3. Defense counsel also confirmed her "average [work] meal costs [were] $10 a week" and that "$10... 52 weeks, would be 2600." ROA.1545:9-16. Johnson also confirmed the "Audi Q5 expense election for $26,000." ROA.1532:3, 1533:25-1534:1. Every deduction for Johnson was accounted for with basis in fact. Not one single dollar figure was fabricated. During her tax interview, Johnson communicated that she only used her vehicle to drive to and from the airport for work trips since she worked from home, which makes it 100% business use, and because she indicated she worked exclusively from home, it could be logically inferred she used her cellphone and home internet predominantly to manage staff in her stated role as a "Sales Manager," which she agreed with on cross-examination. ROA.1546:9-25. Despite this, Castro was found guilty on this count for allegedly fabricating deductions. This is the Twilight Zone nightmare that Castro finds himself imprisoned in... until now.

## II. Reply to the Government's Mischaracterization of the Issues

Two preliminary matters. First, this Court has already held that it does "not require a litigant to anticipatorily rebut all potential arguments [an] adversary may

raise." Hoyt v. Lane Constr. Corp., 927 F.3d 287, 296 n.2 (5th Cir. 2019); see also U.S. v. Ramirez, 557 F.3d 200, 203 (5th Cir. 2009). Thus, Castro does not raise new claims but rather simply rebuts with defenses against claims raised by the Government for the first time on appeal. Therefore, Castro not having anticipatorily rebutted these arguments in his Opening Brief "is not forfeiture." Id.

Second, Castro identifies and highlights certain implied concessions and de jure forfeitures made by the Government in its Response. These were either not foreseeable or not yet perfected, and their impact must be addressed. However, regarding the concessions, Castro understands that "[e]ven where the Government concedes error, this court nonetheless conducts an independent review" to ensure the concession is not contrary to the facts or law. U.S. v. McLauling, 753 F.3d 557 (5th Cir. 2014) (citing U.S. v. Hope, 545 F.3d 293, 295 (5th Cir. 2008)).

**1. By the Operative Mechanics of Rule 37, this Honorable Court Has Jurisdiction Over the District Court's Rulings on Castro's Post-Notice of Appeal Motions**

Effective December 1, 2012, Federal Rule of Criminal Procedure 37 states, in pertinent part, "If a timely motion is made for relief that the court lacks [perceived jurisdictional] authority to grant because of an appeal that has been docketed and is pending, the [district] court may defer considering the motion, deny the motion, or state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed.

R. Crim. P. 37(a). The Committee Notes added that "[i]n the criminal context, the Committee anticipates that Criminal Rule 37 will be used primarily, if not exclusively, for newly discovered evidence motions under Criminal Rule 33(b)(1)." Under Rule 37(a)(2), denial is one of the expressly authorized options for the district court. Therefore, the district court acted squarely within its discretion in denying the post-Notice of Appeal motions and did not overstep its jurisdictional bounds. See U.S. v. Armstrong, 132 F.4th 736 (4th Cir. 2025) (holding that Rule 37 abrogated all prior case law calling jurisdiction into question regarding the post-Notice of Appeal motions).

Regarding the Brady-based first motion for new trial, the U.S. Supreme Court explained in Brady v. Maryland that the "Petitioner moved the trial court for a new trial based on the newly discovered evidence that had been suppressed by the prosecution." 373 U.S. 83, 84 (1963). Thus, a Brady-based motion for new trial is inherently a claim of newly discovered evidence subject to the 3-year timeframe. Castro's motion revealed the prosecution suppressed evidence of a child support tax account lien as well as an undisclosed civil and criminal immunity deal with Government Star Witness Linda Rivera, which the Government does not even acknowledge in its entire Response. As such, the Government's claim that the motion is not based on newly discovered evidence is wholly without merit.

Based on the foregoing, the Government's claim that this Court is without jurisdiction to review all of Castro's post-Notice of Appeal motions is wholly without merit and borderline frivolous. Case law analyzing issues prior to the effective date of Rule 37 have been abrogated by the adoption of the rule.

### 2. Castro's Post-Notice of Appeal Motions Warrant Vacating the Conviction

#### A. Regarding the 331 Alleged Testimonial Stipulations at Docket 36, the Government Concedes that Castro's Opposition to Stipulations was Apparent Constituting Dissent Thereby Negating Waiver, Concedes the District Court Relied on Them to Find Guilt Thereby Negating Harmless Error, Completely Ignores the "Full Knowledge of the Implications" Requirement, and Relies on the Vagaries of the Rules in Arguing They Were Not Withdrawn

As both parties agree, the "Government bears the burden of proving the defendant effected a valid waiver." U.S. v. Ceballos, 789 F.3d 607, 614 (5th Cir. 2015).

In the Government's failed attempt to meet its burden of proof, it first attempts to absurdly reframe Castro's argument as a "global complaint against [all of] the stipulations at trial," claims Castro did "not identify which specific stipulations he objects to," and quotes an earlier inapplicable ruling from the district court issued before Castro filed his more precise motion titled "Motion to Strike the Constitutionally Deficient Alleged Stipulations at ECF 36" that specifically references the 331 alleged testimonial stipulations and corresponding

exhibits that covered all of the Government's Proposed Findings of Fact, which was tantamount to a guilty plea on 24 of the 33 counts. Resp. Br. 22; ROA.1338-1372. Castro made this clear in his Opening Brief when he identified "the alleged stipulations falsely title 'Agreed Stipulations of Evidence' at docket 36" that "only three days before the Pre-Trial Hearing, [the prosecution] allegedly secured 331 stipulations they believed was tantamount to a guilty plea 'proving all of the elements of the crime' for 24 counts," and "the 'Agreed Stipulations of Evidence' that AUSA Meitl falsely claimed was already agreed upon that included stipulations to all of the Government's 331 Proposed Findings of Fact necessary to establish guilt on 24 of the 33 counts." Open. Br. 7, 28, 33-34. The Government's feigned confusion over which stipulations Castro is referring to in light of their precise and specific identification has no basis in fact and thus textbook frivolous. It is plain and obvious Castro is referring to the 331 testimonial stipulations identified as "Stipulation No. 1" at docket 36, which are the only stipulations that cover all of the Government's Proposed Findings of Fact.

Regardless, because the Government has the burden of proving waiver and failed to raise this alleged confusion due to alleged lack of specificity before the district court, it has "forfeit[ed] [this] argument by failing to raise it in the first instance in the district court." U.S. v. Ortega, 93 F.4th 278 (5th Cir. 2024) (quoting Rollins v. Home Depot USA, 8 F.4th 393, 397 (5th Cir. 2021)). Again, because the

Government bears the burden of proof here. Its failure to raise this issue in the first instance in the district court has resulted in forfeiture.

The Government next attempts to mischaracterize the Standard of Review in U.S. v. Stephens by only citing two of the three elements to establish waiver and conveniently omitting the third critical element that it must prove Castro had "full knowledge of the implications" of the alleged stipulations. Resp. Br. 22-23; U.S. v. Stephens, 609 F.2d 230, 232-34 (5th Cir. 1980). In Stephens, "full knowledge" was established because the "stipulations were read in open court" in the defendant's presence. Id. at 233-34. In U.S. v. Ceballos, full knowledge was established because a government witness "recited [a stipulated] written statement" into the record in the defendant's presence. 789 F.3d 607, 614 (5th Cir. 2015). In U.S. v. Reveles, full knowledge was established because defense counsel described the actual content of a stipulated document as being "not that damaging." 190 F.3d 678, 683 (5th Cir. 1999). These three published cases provided non-exhaustive examples of how "full knowledge of the implications" can be proven. The Government makes no argument that Castro had full knowledge of the content of the stipulations much less the implications of their effect of establishing guilt.

The Government's Response states that when the district court "encouraged Castro's counsel to let the court know if it believed any other elements were not met," Castro's counsel "declined to object." Resp. Br. 25-27. This is blatantly false.

Castro's counsel clarified to the trial judge that "we [the defense] don't concede necessarily that any of the stipulations satisfy that there was a fraudulent item on the return, but I just want that to be clear." Open. Br. 13; ROA.2598:25-2599:3. It apparently was not clear to the trial judge. This statement by Castro's counsel expressly and unambiguously stated one of the "elements were not met" as the trial judge requested and also directly contradicted the 331 alleged stipulations to the Government's Proposed Findings of Fact. Open. Br. 13. This was an express and unambiguous statement that the critical "false or fraudulent" element of the charged crime was "not met" as the trial judge requested. Resp. Br. 25-27. It was at this moment that the trial judge did not "ensure [that] the constitutional procedures for testing the reliability of evidence [were] followed" by holding the prosecution to its "burden of proving the defendant effected a valid waiver," "indulging every reasonable presumption against waiver," and not "presum[ing] acquiescence in the loss of" Castro's Right of Confrontation. Open. Br. 27; Hemphill v. New York, 595 U.S. 140, 152-53 (2022); Ceballos, 789 F.3d at 614; U.S. v. Thomas, 724 F.3d 632, 643 (5th Cir. 2013); Stephens, 609 F.2d at 233-34; Reveles, 190 F.3d at 683. Castro's counsel expressed an opinion different from what the alleged stipulations stated and directly opposite of what the trial judge stated. Open. Br. 27. Webster's Dictionary defines "dissent" as an expression of a "difference of opinion," "contrariety of nature," and "opposite quality." Castro expressed his dissent

through his defense counsel that an element was not met. Open. Br. 13. With "dissent" in the record, waiver cannot be established. Moreover, this exchange also reveals Castro's counsel was wholly unaware of the 331 alleged stipulations because he never agreed to them as thoroughly explained in the Opening Brief. See Open. Br. 7-8. This episode highlights the Government's failure to establish the prongs of "full knowledge of the implications" and lack of "dissent" in the record.

In its failed attempt to salvage the case, the Government then quotes Castro's counsel out-of-context when he stated, regarding the Frivolous Legal Positions theory of guilt that the trial judge expressly rejected in his verdict, that "this case necessitates no fact-finding." Resp. Br. 28-29. In full context, Castro's counsel was explaining that "if there are [legal] positions [advocated by Castro] that [the trial court were to conclude] were objectively incorrect [on the law]... that the stipulations [that Castro drafted, which were the only ones defense counsel was aware of,] do not satisfy willfulness or that [the incorrect legal positions, if any] was an intentional" violation. ROA.2575:20-24. This exchange actually reveals the method by which Castro was fraudulently induced by the prosecution into waiving his right to trial by jury. See Open. Br. 4-5. The prosecution only communicated its theory of guilt that Castro was advocating frivolous legal positions. Id. Since this was purely a question of law, Castro elected a bench trial by a jurist rather than a jury trial by laymen. Id. This puts into context those statements by Castro's

counsel. Under scrutiny, the Government's attempt to take Castro's statements out-of-context fails.

This Court need not trouble itself any further because the Government has already conceded it was "apparent[]" that Castro did not agree to the stipulations. Resp. Br. 7 (citing ROA.1722). Unlike concessions not supported by the record, this is a government concession supported by the record that should be binding. This is yet another concession that the record reflects "dissent." The Government's own relied upon authority of U.S. v. Adams found no waiver because nothing suggested the defendant "did not agree" with the stipulations. 439 Fed.Appx. 340, 342 (5th Cir. 2011). In the instant case, the Government's concession that it was "apparent[]" Castro did not agree to the stipulations is fatal. Webster's Dictionary defines "apparently" as "plainly," "obviously," "openly," "evidently," and "readily understood." This coincides with the other fatal fact that the prosecution before the district court also conceded that Castro "did not stipulate to the underlying facts." Open. Br. 17 (quoting ROA.2892). Neither Castro nor his counsel ever saw or agreed to the Government's 331 alleged testimonial stipulations covering all of the Government's Proposed Findings of Fact much less signed it. See Open. Br. 7-8.

In response to Castro's claim that docket number 36 was not signed in accordance with either NDTX L. Cr. R. 49.5(d) or 49.6, the Government claims, impermissibly for the first time on appeal and contrary to the trial judge's own

Indicative Ruling, that the alleged electronic signatures complied with NDTX L. Cr. R. 57.1. Resp. Br. 24. However, the Government "forfeits an argument by failing to raise it in the first instance in the district court," so the Government's late NDTX L. Cr. R. 57.1 defense was forfeited and cannot be considered now on appeal. Ortega, 93 F.4th at 278 (quoting Rollins, 8 F.4th at 397). To be clear, this is not a situation involving an attempt to exploit a technical rule to invalidate an actual signature; rather, this is a substantive claim that neither defense counsel nor Castro even saw much less physically or electronically signed the document at all. See Open. Br. 7-8. Aside from the fact that the Government is barred from raising the NDTX L. Cr. R. 57.1 defense for the first time on appeal, the Government provides no evidence that the trial judge ever directed the parties to proceed in any particular manner as NDTX L. Cr. R. 57.1 expressly requires. Instead, the Government asserts that it was implied thereby asking this Court to make an assumption in favor of waiver despite the rule that this Court "should indulge every reasonable presumption against waiver." Ceballos, 789 F.3d 614. Therefore, the stipulations at docket 36 were unsigned under local rules, and courts may "not accept an unsigned stipulation." In re Complaint of River Constr., Inc., No. 4:22-cv-2413 (S.D. Tex. 2023).

Next, Castro will quickly refute four arguments made by the Government. First, the Government relies on the "vagaries of the rules" to assert that "Castro

never withdrew" the alleged stipulations that he was never even aware of, but the Government's argument is contrary to established Supreme Court precedent. See Crawford v. Washington, 541 U.S. 36, 61 (2004) ("Where testimonial stipulations are involved, we do not think the Framers meant to leave the Sixth Amendment's protections to the vagaries of the rules."); Smith v. Arizona, 602 U.S. 779, 794 (2024) ("concepts central to the application of the Confrontation Clause are ultimately matters of federal constitutional law that are not dictated by state or federal evidentiary [much less procedural] rules."); Resp. Br. 7. Second, the Government's Response cited to U.S. v. Musquiz for the wholly fabricated proposition that "counsel's unchallenged stipulation to the admission of defendant's testimony effectively waived her right to confrontation." Resp. Br. 27. In Musquiz, the defendant complained that the denial of access to the FBI's paid informant list allegedly frustrated his ability to effectively cross-examine a government witness. See U.S. v. Musquiz, 45 F.3d 927 (5th Cir. 1995). Due to the obvious sensitive nature of the FBI's paid informant list and concern for their safety, the trial judge rightfully review the list in camera and concluded its content was "irrelevant," duplicative," and that "uncontradicted testimony had already established" that payments were made to the witness. Id. None of this is even remotely relevant to the instant case and certainly did not come even close to creating a rule that "unchallenged stipulations... effectively waived [the] right to

confrontation" as the Government falsely claimed. Resp. Br. 27. Third, the Government continues to falsely assert that Castro's "email... amounted to an effective waiver" against a mountain of evidence and government concessions to the contrary. Resp. Br. 27. In support of this false assertion, the Government misrepresented the holding in Musquiz as explained before. In addition, because Castro already thoroughly discussed the background and full context of this email in his Opening Brief, there is nothing further to add. See Open. Br. 6-8, 34-36. The email does not even establish what was attached much less full knowledge of the implications. Id. Fourth, the Government's Response grossly misstates the holding in U.S. v. Alvarado-Valdez. Resp. Br. 29. In Alvarado-Valdez, this Court corrected the government's misplaced reliance "on U.S. v. Rodriguez-Martinez," which held that the court would apply a hypothetical "fully realized" impeachment of a government witness when and only when there is an allegation of a Confrontation Clause violation in the specific context of a cross-examination. U.S. v. Alvarado-Valdez, 521 F.3d 337, 341 (5th Cir. 2008). If a conviction was still possible even if the government witness had been hypothetically fully impeached, then there could be no Confrontation Clause violation associated with the allegedly frustrated cross-examination. Id. at 341-42. This Court, however, explained that when the context of the Confrontation Clause violation involves "the very introduction of inadmissible testimony... [then a different standard applies in that] the government

must demonstrate beyond a reasonable doubt that the tainted evidence did not contribute to the conviction." Id. at 342. The Government once again demonstrates that its brief lacks credibility.

The Government, of course, was compelled to misrepresent the holding in Alvarado-Valdez since the trial judge in the instant case stated on the record that he was wholly relying on the stipulations when he said, "I am inferring that we have proof of the crime as to all elements that were stipulated -- as to which there are stipulations." ROA.2576:12-14. For that reason, on appeal, the Government concedes that the "district court relied on the [challenged] stipulations... to find Castro guilty on all 33 counts." Resp. Br. 7. The Government's own cite to Alvarado-Valdez reveals the fatal nature of this concession because this Court has already held that "the government must demonstrate beyond a reasonable doubt that the tainted [stipulations] did not contribute to the conviction." Alvarado-Valdez, 51 F.3d at 342. This Court added that there must be "no reasonable possibility that the [stipulations] complained of might have contributed to the conviction." Id. at 341 (quoting U.S. v. Pineiro, 410 F.3d 282, 284-87 (5th Cir. 2005)). The constitutionally-violative stipulations in the instant case not only "contributed" but were wholly relied upon to wrongfully convict Castro. The Government had the burden of proof and has utterly failed to meet its burden.

### B. Regarding the Brady-Based First Motion for New Trial, in Failing to Even Acknowledge the Suppression of the Child Support Lien Regarding and Undisclosed Criminal Immunity Given to Linda Rivera, the Government Has Forfeited the Issue Warranting Castro's Immediate Release

In its failed attempt to rebut Castro's Brady grounds for a new trial, the Government first attempts to mischaracterize the Standard of Review by citing U.S. v. Runyan from 2002 that made no reference to impeachment evidence. Runyan simply held "the suppressed evidence [must be] favorable to the defense." U.S. v. Runyan, 290 F.3d 223, 245 (5th Cir. 2002). As explained in Castro's Opening Brief, this Court's 2016 published decision in U.S. Dvorin made clear that "favorable" evidence includes evidence that is "impeaching." 817 F.3d 438, 450 (5th Cir. 2016). This was reiterated two years later in the 2018 decision in U.S. v. Swenson, which expressly said that Brady "extends to impeachment evidence." 894 F.3d 677, 683 (5th Cir. 2018). Therefore, the Standard of Review outlined in Castro's Opening Brief is the correct and controlling standard. See. Open. Br. 37-38.

The Government next frivolously claims that Castro never made a claim of newly discovered evidence that would benefit from the 3-year timeframe. See Resp. Br. 17-18 n.4. In its failed attempt to do this, the Government tries to reframe the Brady issue as being Linda Rivera's marital status. Id. Relying on U.S. v. O'Keefe, the Government argues that because Linda Rivera's marital status was

revealed at trial, it was "sufficiently exposed" and, therefore, could not have constituted a Napue violation through the knowing use of false testimony. 128 F.3d 885 (5th Cir. 1997). Although this is applicable, Castro did not brief a Napue violation. Castro exposed a Brady violation.

In Castro's first motion for a new trial, he specifically asserted that the prosecution suppressed the existence of "unpaid child support resulting in an IRS lien" as well as the fact that "immunity from prosecution was... offered to Linda Rivera in exchange for her testimony." ROA.3053-3054. In a separate motion for an evidentiary hearing on the motion for new trial, Castro added that there was a "clear motive to avoid the lien on her husband's IRS tax account for unpaid child support," which put her fraudulent misrepresentation of her marital status into criminal context, and that the "prosecution [was] desperately grasping at straws to justify and sanctify Linda Rivera's obvious criminal conduct." ROA.3169. After the district court denied the motion for new trial, Castro filed a pro se written objection that should have been liberally construed as a motion for reconsideration informing the district court - in extensive detail - of the following: the "government [incorrectly] cited [and applied] the [incorrect five-part Berry] standard of review for general new evidence. A different standard applies when the new evidence is based on a Brady violation." ROA.927. As this Court explained in Runyan, "to obtain a new trial based on newly-discovered evidence, a defendant must" apply

the five-part Berry standard, but "when a motion for new trial based on newly-discovered evidence raises a Brady claim, this court instead applies the three-prong Brady test to determine whether a new trial is appropriate... not the five-prong... test utilized in typical newly discovered evidence claims." U.S. v. Runyan, 290 F.3d 223, 247 (5th Cir. 2002). In other words, a Brady claim is inherently a claim of newly discovered evidence; indeed, that was the precise finding in that case: "Petitioner moved the trial court for a new trial based on the newly discovered evidence that had been suppressed by the prosecution." Brady v. Maryland, 373 U.S. 83, 84 (1963). As such, the government's citation to and reliance on U.S. v. Wall is misplaced because that case involved general new evidence subject to the five-part Berry test; not the three-part Brady test. 389 F.3d 457 (5th Cir. 2004). Motions based on non-Brady issues are certainly "disfavored," but Brady-based motions are not. Id. at 467. In a pro se reply to the prosecution's response that should have been liberally construed as a motion for leave to reply with the reply incorporated therein rather than being sua sponte stricken from the docket, Castro further added that the "Government ignores... [the] child support lien" because it firmly establishes an indisputable and "obvious financial motive" for Linda Rivera's fraudulent misrepresentation of her marital status. ROA.1023. Castro further explained therein that the "government's complete silence on the issue of Linda Rivera's husband's unpaid child support and the Florida lien placed on any

tax refunds associated with him speaks volumes. The government suppressed this information and ignores it in their response because it firmly establishes Linda Rivera's financial motive for her deception... That is why there is not one single mention of it in the government's response. Deception through strategic omission followed by diversion." ROA.1023-1024. The Government continues to employ the same modus operandi of willful blindness to the actual suppressed evidence of the child support lien and criminal immunity deal regarding Linda Rivera hoping to hoodwink this Court.

In Castro's Opening Brief, he specifically stated that he "filed a Motion for New Trial on the prosecution's suppression of the child support lien regarding Linda Rivera," that "the prosecution responded with [and the court adopted] the incorrect [five-part Berry] standard," which is per se abuse of discretion as covered in the Opening Brief, and "completely ignores the child support lien" as well as the "undisclosed... civil and criminal immunity" given to Linda Rivera. Open. Br. 17-18, 39.

In its Response, the Government again completely ignores the child support lien and undisclosed civil and criminal immunity given to Linda Rivera, which was the newly discovered evidence actually asserted in Castro's first motion for new trial. Instead, the Government attempts to divert the issue by asserting that Castro "was aware" at trial of Linda Rivera's marital status, which is not the issue. Resp.

Br. 33. Of course, the Government has to try to make that the issue since the actual issues are indisputably newly discovered Brady evidence. In the instant case, the prosecution's refusal to even acknowledge much less address the child support lien and undisclosed criminal immunity regarding Linda Rivera, the trial judge's failure to address it, and now the Government's willful blindness to it cannot be interpreted as anything other than de jure forfeiture of any defense as stated in the Opening Brief. See Ortega, 93 F.4th 278 (the Government "forfeits an argument by failing to raise it in the first instance in the district court."). The suppressed child support lien establishes a clear and irrefutable financial motive for Linda Rivera's criminal misrepresentation of her marital status, and the undisclosed and unrebutted criminal immunity given to Linda Rivera is irrefutable evidence of Brady-violative prosecutorial misconduct. Put plainly, the prosecution blackmailed a witness, compelled her to provide false testimony, suppressed the compromising child support lien that they knew establishes the motive for her deception, and then gave Linda Rivera civil and criminal immunity as a reward for assisting them in wrongfully convicting Castro. All of this was exposed in the first motion for new trial, which the prosecution ignored, the trial judge ignored, and now appellate counsel ignores thereby perfecting their forfeiture of any defenses.

Because the district court's ruling implicitly held through knowing omission that the child support lien and undisclosed criminal immunity was not Brady

evidence and issued a Rule 37 Indicative Ruling - regardless of whether the district court was aware that its ruling fell under Rule 37 or not - that it would deny the first motion for new trial on the merits, remand for an evidentiary hearing would be futile. On the merits, the child support lien and undisclosed criminal immunity deal are indisputably Brady material that was unlawfully suppressed as Castro explained in his Opening Brief. Open. Br. 36-43.

Based on the foregoing, Castro's conviction should be vacated. Moreover, because Castro intends to argue that a Brady violation triggers Double Jeopardy protections, Castro asks this Court to rule upon this issue before the Sixth Amendment violation.

### C. Regarding the Amended Motion to Correct the Trial Transcripts, Because Castro Alleged Outcome-Effecting Alterations to the Transcripts, He is Entitled to an Evidentiary Hearing

The Government's Response ignores the Standard of Review entirely because addressing it would reveal Castro's entitlement to an evidentiary hearing. The Response provides only two extreme examples of Court Reporter Act violations. The only question for this Court is whether the facts alleged, if proven, would entitle Castor to relief. If the answer is yes, an evidentiary hearing is required.

Castro's Amended Motion to Correct the Trial Transcripts at Docket 240 exposed extrajudicial communications between the prosecutor and court reporter

wherein they enter into an agreement for the specific purpose of knowingly making false and fraudulent outcome-determinative alterations to the trial transcripts. ROA.10115-10120. Castro also exposed the existence of audio recordings that would substantiate his claims, which neither the prosecution not the trial judge refuted. To the contrary, the trial judge's order denying the motion conceded that the audio recordings existed but insisted they were the court reporter's personal property. Castro's motion also explains the outcome-effecting prejudicial impact of each fraudulent alteration. ROA.10115-10120. These were not speculative claims; they were factual assertions that resulted in a concession to the existence of audio recordings. Immunity does not extend to court reporters.

For all these reasons, the Government's Response fails. Castro's Opening Brief provides the correct Standard of Review, a detailed factual overview, and the correct legal analysis of this issue. See Open. Br. 71-76.

### 3. The Government's Response Entirely Ignores the Requirement to Make a Legal Determination that Four Other Individuals Committed All of the Elements of the Offense to be Considered Participants

Because this issue is not whether Castro was the leader of his firm but whether four other individuals committed all of the elements of the offense with the requisite mens rea, which is indisputably a legal determination, the Standard of Review is de novo for the reasons already stated in Castro's Opening Brief. See Open. Br. 43-61. The Government's Response misrepresents the law and relies

entirely on multi-party conspiracy cases in which the "five or more participants" requirement was already satisfied since there were more than 5 defendants in the conspiracy case. See U.S. v. Sejuelas, 113 Fed.Appx. 595 (5th Cir. 2004); U.S. v. Balzan, 604 Fed.Appx. 343 (5th Cir. 2015); U.S. v. Haines, 803 F.3d 713 (5th Cir.. 2015). One case involved unknown participants but still determined there were "five knowing participants" and identified their criminal roles. U.S. v. Lopez-Perez, 623 Fed.Appx. 223, 224 (5th Cir. 2015). In U.S. v. Martinez/Lightner, there was one insider who criminally assisted the corrupt Dr. Lightner - office manager Andres Martinez who was also convicted - and the use of many outsiders who served as "runners" to bring in bogus "patients" for the "pill mill" operation. 131 F.4th 294 (5th Cir. 2025).

In the instant case, the PSR's only stated basis was that Castro "employed more than five employees... who... acted as his direction" following a script based on legal positions, which was not the basis for conviction. ROA.2827. This does not establish criminal responsibility with the requisite mens rea. After the PSR was filed, the prosecution replied it had "no objections to the presentence report." ROA.2842. Castro specifically objected and notified the district court that applying the enhancement "without identifying the other 'criminally responsible' participants constitute[s] a reversible error of law." ROA.2866. Castro reiterated in

his objection, "no other person was identified at trial as being 'criminally responsible' for fabricating deductions." ROA.2866.

Moreover, Castro's objections added that the "PSR does not contain any... argument that the 'otherwise extensive' characterization exists here. It appears to rest entirely upon the 'five employees' rationale." ROA.2867. This was an express invitation to the prosecution to make a case for the "otherwise extensive" basis if it intended to do so. Instead, the prosecution's late response did not contain a single reference to or use of the terms "otherwise extensive." See ROA.2895-2896. It was at this moment, in both failing to mention it in its own objections and failing to raise it in its response to Castro's objections after an express invitation to do so, that the government "forfeit[ed] [this] argument by failing to [properly and timely] raise it in the first instance in the district court." Ortega, 93 F.4th at 278 (quoting Rollins, 8 F.4th at 397).

Instead, it was improperly and untimely raised for the first time at sentencing when the prosecutor said, "Now, your Honor, I think it is an otherwise extensive operation here." See Resp. Br. 40 n.12 (quoting ROA.2674:20-21). In response, defense counsel objected, "a fair reading of the PSR is that [the otherwise extensive basis] was not relied on at all... there was no case made for that in the PSR." ROA.2676:13-16.

Castro reiterates as he did in his Opening Brief that the Government forfeited the "otherwise extensive" argument by failing to properly and timely raise it before the district court. See Op B. 43-61. Nevertheless, for the reasons stated in the Opening Brief, the offense was not "otherwise extensive." Open. Br. 58-61.

#### 4. With the Correct Standard of Review Being De Novo with No Factual Findings, the Obstruction-of-Justice Enhancement Cannot Apply

In a desperate ploy to change the Standard of Review from de novo to plain-error review, the Government falsely claims that Castro raises a "different argument" on appeal being that "the [district] court never made specific factual findings regarding [the obstruction] enhancement." Resp. Br. 43.

This misrepresentation by the Government is easily refuted by the record. When Castro filed his objections to the PSR, he specifically stated, "The PSR does not allege [any specific] perjury... points to no [specific] misconduct at trial... There is no [specific] allegation that defendant improperly testified or provided materially false information" and unambiguously demanded that "the government must [specifically] identify and prove the falsity of any statement or conduct it alleges constituted obstruction." ROA.2856-2857.

Under scrutiny, the Government's false assertion fails. Castro expressly implored the district court to make the requisite factual findings in his objections.

The trial judge ignored Castro. Therefore, the Standard of Review is de novo as Castro's Opening Brief explains. See Open. Br. 62-73.

In conclusory fashion lacking factual specificity, the prosecution claimed that Castro provided "false testimony during trial and attack[ed]... agents and victims before the trial." ROA.2842, 2888 The bizarre claim of attacks on victims was entirely fabricated and never expanded upon. The prosecution's response went on to make false claims about testimony that never occurred by claiming that Castro lied about fabricating deductions, but no such testimony on direct or cross-examination ever occurred on that topic, which is why the Government makes no effort to discuss this in its Response.

By its own admission, the Government is arguing that the district court's implied "factual findings permit an obstruction-of-justice enhancement," which this Court already bindingly held "is a question of law reviewed de novo." Ortega, 93 F.4th at 278 (quoting U.S. v. Miller, 607 F.3d 144, 148 (5th Cir. 2010)). Published cases are binding on future panels.

"The burden is on the government." Id. (quoting U.S. v. Abrego, 997 F.3d 309, 312 (5th Cir. 2021)). The Government has failed to meet its burden by citing any specific testimony in the transcripts it believes constituted perjury, and its reliance on the civil actions is misplaced for the reasons already exhaustively stated and analyzed in Castro's Opening Brief. See Open. Br. 3-4, 62-71.

Respectfully submitted,

/S/JOHN ANTHONY CASTRO
*Appellant, Pro Se*
FCI Oakdale I
Registered Number 93890510
P.O. Box 5000
Oakdale, LA 71463

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, a true and correct copy of the foregoing Reply Brief for Appellant was served via electronic filing with the Clerk of Court and all registered ECF users.

date: December 1, 2025

Respectfully submitted,

/S/JOHN ANTHONY CASTRO
*Appellant, Pro Se*
FCI Oakdale I
Registered Number 93890510
P.O. Box 5000
Oakdale, LA 71463

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word. Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 6498 words.

Respectfully submitted,

/S/JOHN ANTHONY CASTRO
*Appellant, Pro Se*
FCI Oakdale I
Registered Number 93890510
P.O. Box 5000
Oakdale, LA 71463