U.S. COURT OF APPEALS
RECEIVED
Jul 17, 2026
FIFTH CIRCUIT

**No. 24-11000**
consolidated with No. 26-10428

In The
# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOHN ANTHONY CASTRO,
*Defendant-Appellant.*

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH
NO.: 4:24-CR-1-1
Honorable Terry R. Means, U.S. District Judge

## PETITION FOR PANEL REHEARING AND REQUEST FOR CLARIFICATION

John Anthony Castro
*Appellant, Pro Se*
FPC Pollock Camp
Registered Number 93890-510
P.O. Box 2099
Pollock, LA 71467

## CERTIFICATE OF INTERESTED PERSONS

The undersigned Appellant *pro se* hereby certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Castro, John Anthony. Defendant-Appellant, Pro Se.
2. Freeman, Jason B., and Mickelsen, Franklyn R. Former trial counsel for Defendant-Appellant.
3. Hayworth, Gail A.; Larson, Nancy E.; Murphree, Lauren C.; Meitl, Philip J.; Gilstrap, Stephen S.; and Weimer, Jay. Counsel or former counsel for Appellee.
4. Means, Hon. Terry R. United States District Judge.
5. Saenz, Debbie. Court reporter.
6. United States of America. Plaintiff-Appellee.
7. United States District Court for the Northern District of Texas, Fort Worth Division.

*/s/ John Anthony Castro*
John Anthony Castro
Appellant Pro Se

# PETITION FOR PANEL REHEARING AND REQUEST FOR CLARIFICATION

**TO THE HONORABLE PANEL:**

Defendant-Appellant John Anthony Castro respectfully petitions for panel rehearing and expressly requests clarification under Federal Rule of Appellate Procedure 40 and Fifth Circuit Rule 40.1. This filing seeks panel rehearing and clarification only; it does not seek rehearing en banc. It identifies six points of law or fact that the July 10, 2026 opinion overlooked or misapprehended: (1) the four-level leadership enhancement cannot be sustained without identifying at least one other criminally responsible participant whom Castro organized or led; (2) the Confrontation Clause ruling rests on a conflation of separate email transmissions and a disputed signature authorization; (3) the opinion did not address Appellant's separately presented right-to-plead-not-guilty claim under *Brookhart v. Janis*; (4) the Brady analysis treated distinct motive-and-bias evidence as merely cumulative and used the same classification to deny factual development; (5) the obstruction ruling applied clear-error review to the legal sufficiency of protected civil litigation and relied on conclusory testimony about unnamed witnesses; and (6) the opinion did not address this Court's independent

authority under Rule 10(e) to settle whether the appellate record accurately reflects what occurred.

## PRELIMINARY AND EXPRESS REQUEST FOR CLARIFICATION REGARDING ECF 36

The opinion expressly states that Appeals 26-10488 and 26-10510 "are not part of this appeal." Op. 5 n.1. Yet page 13 states as established fact that "Castro's counsel emailed the stipulations to him" and that "his counsel signed them" - the very transmission, provenance, and authorization questions placed at issue in those separate appeals. To preserve the jurisdictional boundary the opinion itself drew, and to prevent the quoted sentence from being invoked as law of the case or as a merits resolution of matters expressly excluded from this appeal, Appellant requests an express clarification that the opinion decides only the direct-appeal waiver issue on the record in No. 24-11000 and does not adjudicate ECF 36's authenticity, provenance, transmission, valid execution, signature authorization, or proper use in Appeals 26-10488 and 26-10510. This clarification should issue even if the panel otherwise leaves the disposition unchanged.

## I. The Section 3B1.1(a) Holding Cannot Be Reconciled with Gross and Hamilton, and the Alternative Theory Was Used Without Resolving Castro's Rule 32 Notice Objection.

Section 3B1.1(a) contains two distinct requirements. The defendant must first have organized or led at least one other "participant," meaning a person criminally responsible for the offense. U.S.S.G. § 3B1.1 cmt. nn.1-2. The criminal activity must then have involved five or more participants or have been otherwise extensive. Id. § 3B1.1(a), cmt. n.3. Unknowing outsiders may bear on extensiveness, but they cannot replace the indispensable second criminally responsible participant.

*United States v. Gross*, 26 F.3d 552 (5th Cir. 1994), applied that distinction to an extensive fraud conducted through two corporations and nine employees. Although innocent persons could add to the count when measuring extensiveness, the Court held that a "wholly innocent additional person can never supply the requisite second 'participant,'" and that another criminally responsible participant is essential even under the "otherwise extensive" prong. Id. at 554-56. *United States v. Hamilton*, 37 F.4th 246 (5th Cir. 2022), reaffirmed the same rule: unknowing employees and outsiders may help establish extensiveness, but the adjustment still requires that the defendant organized or led at

least one other criminally responsible participant. Id. at 263-64 & n.13. The enhancement there could not rest on ordinary employees because no evidence showed they were criminally responsible. Id. at 264 n.13. *United States v. Ho*, 311 F.3d 589, 612 (5th Cir. 2002), likewise treats the second-participant and extensiveness requirements as independent.

The opinion here expressly declined to decide whether Castro's activity involved other criminally responsible individuals. Op. 15. It instead relied on family members, attorneys, a CPA, and employees who performed intake, interviews, data entry, and return preparation, expressly counting those employees "whether knowing or unknowing." Op. 16. That analysis may establish scale, but it does not identify a single other person found criminally responsible, much less a person whom Castro organized or led in committing the offense. Application Note 3's example confirms the distinction: its extensive fraud already "involved only three participants" before unknowing outsiders were counted. The outsiders did not replace the participants.

The panel's reliance on *United States v. Tuma* confirms rather than displaces this threshold requirement. Tuma did not involve a sole criminal actor: the opinion states that "Tuma was indicted with Cody," and further records that Cody entered a guilty plea and testified against

his father. 738 F.3d 681, 684 (5th Cir. 2013). It also identified Cody, Wayne Mallet, and Todd Cage as employees who knowingly followed Tuma's instructions to make illegal discharges and evade regulators. Id. at 683-84. Thus, when Tuma later counted unknowing truck drivers and contractors toward whether the activity was "otherwise extensive," id. at 694, another criminally responsible participant had already been established. Tuma does not hold that unknowing outsiders may replace the second criminally responsible participant required by Gross and Hamilton.

The rule that an enhancement may be affirmed on any record-supported ground does not permit affirmance on a ground missing a required element. See *United States v. Salinas*, 918 F.3d 463, 465-66 (5th Cir. 2019). A sentencing suggestion that unnamed brothers-in-law "probably could have" been charged, ROA.2674:17-19, is not a finding by a preponderance that any identified person was criminally responsible. The PSR stated only that Castro employed and directed more than five employees, and Castro specifically objected that no other criminally responsible participant had been identified. ROA.2827, 2866-67.

The opinion also did not resolve Castro's preserved notice objection. The PSR, addendum, and written sentencing submissions

relied on the "five employees" rationale; the Government first stated at the sentencing hearing, "I think it is an otherwise extensive operation here." ROA.2674:20-21. Defense counsel immediately objected that this ground "was not relied on at all" in the PSR and that "there was no case made for that in the PSR." ROA.2676:12-16. The opinion acknowledged Castro's argument that the theory first appeared at sentencing and that the district court did not impose the enhancement on that ground, Op. 15, but affirmed on the alternative theory without deciding whether Castro received the reasonable opportunity to investigate and comment required by Federal Rule of Criminal Procedure 32(i)(1)(C). The alternative ground was fact intensive: it required identifying the persons and services counted, their relationship to the offense, and whether Castro organized or led a criminally responsible participant.

Rehearing is warranted. The Court should withdraw the Section 3B1.1(a) holding and vacate the sentence for resentencing under *Gross* and *Hamilton*. At minimum, it should remand for proper notice and findings identifying the other criminally responsible participant whom Castro organized or led.

## II. The Confrontation-Waiver Ruling Rests on a Material Misapprehension of the Email and Signature Record, Does Not Resolve Stephens's Full-Knowledge Requirement, and Requires Express Clarification as to the Separate ECF 36 Appeals.

### A) The Opinion Misapprehended the Email and Signature Record and Did Not Resolve Stephens's Full-Knowledge Requirement.

The opinion states: "Castro's counsel emailed the stipulations to him; Castro replied, 'I agree to them'; his counsel signed them; and the Government signed and filed them." Op. 13. That sentence combines distinct communications and resolves disputed provenance as fact.

The record distinguished the email sent to Castro from a later forwarding email sent to the prosecutor. After Castro had drafted his own proposed, non-substantive stipulations, Mickelsen emailed him: "As the defendant you must agree to the proposed stipulations. I strongly urge you to say yes and let's put this matter to rest." ROA.1316. Castro replied from his phone, "I agree to them." ROA.1318-20. Castro's opening brief specifically cited the record for the proposition that the email he received contained no attachments. Appellant's Br. 6; ROA.1364. The attachments appeared on a later email in which Mickelsen forwarded the short reply to the prosecutor and attached two different documents, including "Agreed Stipulations of Evidence" and

"Exhibit A Castro Proposed Stips." ROA.1314-22. Neither Castro nor Freeman was copied on that later transmission. The four-word response therefore did not establish that Castro received or authorized the separate ECF 36 document later used as substantive evidence.

The opinion's statement that counsel "signed" ECF 36 is also disputed. ECF 36 displayed Freeman's typed name, but the briefs argued that Freeman neither signed nor authorized that document. A typed name placed on a filing is not, without evidence of authorization, proof that the named lawyer executed it. The distinction is substantive because the district court treated ECF 36 as proof of elements on counts involving non-testifying witnesses. The opinion itself states that Appeals 26-10488 and 26-10510, which concern postjudgment authenticity and authorization rulings, were not before this panel. Op. 5 n.1. The direct-appeal opinion should not resolve those distinct issues through an unqualified statement that Freeman signed the document.

The factual error affected the waiver analysis. *United States v. Ceballos*, 789 F.3d 607, 614-16 (5th Cir. 2015), places the burden on the Government and requires every reasonable presumption against waiver. Although personal assent is not invariably required, *Ceballos* emphasized that *United States v. Stephens*, 609 F.2d 230, 233-34 (5th

Cir. 1980), found waiver after the trial court placed the identifiable stipulations before the defendants and the record showed that they consented "with full knowledge of the implications." Here, the content of ECF 36 was not read to Castro or meaningfully identified in open court, and the threshold question whether he ever received it was unresolved. *Stephens* also cautioned that counsel cannot, without the defendant's consent, stipulate to facts establishing guilt. Id. at 234 n.2.

The trial record did not eliminate the ambiguity. After Rivera testified, the defense declined to proceed by stipulation as to the remaining witnesses, and the Government called them. ROA.1722:14-25. When the district court later inferred that the defense admitted all elements except willfulness, Freeman clarified that "we don't concede necessarily that any of the stipulations satisfy that there was a fraudulent item on the return." ROA.2598:25-2599:3. Those events absolutely cannot be logically reconciled with an informed strategy to accept ECF 36 as conclusive proof of the underlying falsity elements.

If waiver fails, harmlessness must be addressed. The district court expressly treated the stipulations as proof of the crime on the stipulated counts. ROA.2575-76. The Government would therefore bear the burden to prove beyond a reasonable doubt that invalid admission did not

contribute to the convictions. See *United States v. Garcia*, 887 F.3d 205, 209 (5th Cir. 2018); *United States v. Alvarado-Valdez*, 521 F.3d 337, 341-43 (5th Cir. 2008).

**B) The Opinion Did Not Address Appellant's Separately Presented Right-to-Plead-Not-Guilty Claim Under Brookhart.**

The opening brief did not present only a Confrontation Clause theory. It separately invoked *Brookhart v. Janis*, 384 U.S. 1, 7-8 (1966), and *Burt v. Titlow*, 571 U.S. 12, 22 (2013), for the rule that counsel may not override a defendant's decision to plead not guilty by agreeing to a procedure tantamount to a guilty plea. Appellant identified ECF 36 as stipulating to the Government's proposed findings necessary to establish guilt on numerous counts, quoted the controlling law, applied that law to the alleged stipulations, and concluded that the district court was required to inquire personally before treating them as admissions of guilt. Appellant's Br. 26, 32-35.

The opinion addressed only whether counsel could waive confrontation under *Stephens* and *Ceballos*. Op. 12-14. It did not decide whether ECF 36, if tantamount to a guilty plea, invaded the defendant's personal authority to maintain a not-guilty plea. That issue was fully briefed in substance. Appellant identified the issue, quoted the

governing rule, applied it to the facts, and requested relief. The wording of a caption or heading does not supersede the argument actually presented. See *Balentine v. Thaler*, 626 F.3d 842, 849 (5th Cir. 2010) ("Errant headings in briefs . . . do not waive arguments."). And because Appellant proceeded pro se, his brief must be interpreted liberally to afford all reasonable inferences. *United States v. Capistrano*, 74 F.4th 756, 782 (5th Cir. 2023). Rehearing should address the *Brookhart* claim separately or clarify that the opinion did not adjudicate it.

### C) Express Clarification Is Independently Required to Preserve the Panel's Jurisdictional Boundary.

The opinion states that Appeals 26-10488 and 26-10510 "are not part of this appeal." Op. 5 n.1. Those later appeals concern postjudgment orders addressing whether ECF 36 was authentic, authorized, validly executed, and properly used, including the alleged unauthorized use of Freeman's typed name. Because those issues were expressly outside this appeal, the current opinion should not be read to decide them by stating categorically that Freeman signed ECF 36 or that ECF 36 was attached to the email sent to Castro.

Appellant respectfully requests that the panel replace the quoted sentence on page 13 with language substantially as follows:

> Before trial, Mickelsen emailed Castro asking him to agree to "the proposed stipulations." The cited email to Castro contained no attachments, and Castro replied, "I agree to them." Mickelsen later forwarded that reply to the Government in a separate email with two attachments. ECF 36 bore Freeman's typed name, but Castro disputed whether Freeman signed or authorized that document. The postjudgment orders concerning ECF 36's authenticity, provenance, execution, signature authorization, and proper use are involved in Appeals 26-10488 and 26-10510, which are not before this panel.

If the panel does not revisit the waiver disposition, it should at minimum delete or qualify the unsupported statement that counsel signed the stipulations and expressly clarify that the opinion decides only the direct-appeal waiver issue on the record in No. 24-11000. It should state that the opinion does not adjudicate the distinct authenticity, provenance, transmission, execution, signature-authorization, and proper-use issues pending in Appeals 26-10488 and 26-10510. An express statement is necessary so the Government cannot

invoke the direct-appeal opinion as having resolved issues that the panel expressly said were not before it.

The panel should also correct the factual statement, rehear the waiver issue, and remand for findings on what document was transmitted, what Castro knew and authorized, and whether Freeman authorized ECF 36.

## III. The Brady Ruling Collapsed Distinct Motive-and-Bias Evidence into General Impeachment and Used That Error to Deny a Hearing.

The opinion correctly stated that Brady determinations are reviewed de novo, while the decision whether to hold a hearing is reviewed for abuse of discretion. Op. 9. Its merits disposition nevertheless concluded that Castro failed to show an abuse of discretion in denial of a new trial. Op. 11. Rehearing should clarify and apply de novo review to favorability, suppression, and materiality.

More fundamentally, the opinion treated two different evidentiary propositions as equivalent. Proof that Rivera was married while reporting herself as single permitted a general attack on truthfulness. Evidence that her husband's IRS account was subject to a child-support lien allegedly supplied the reason for that representation: a refund associated with him could be intercepted. It also supported an

exculpatory source-of-falsity theory and, depending on Government knowledge and communications, a source of pressure, leverage, expected protection, or bias in Rivera's relationship with the prosecution.

Bias and general character impeachment are not interchangeable. See *Davis v. Alaska*, 415 U.S. 308, 316-18 (1974); *United States v. Abel*, 469 U.S. 45, 51-52 (1984). This Court likewise requires comparison of the degree and kind of disclosed and undisclosed impeachment. *United States v. Sipe*, 388 F.3d 471, 489-92 (5th Cir. 2004), recognizes that undisclosed evidence may be material when it changes the tenor of testimony, places cooperation in a new context, or exposes a distinct motive. *United States v. Brumfield*, 89 F.4th 506, 515-20 (5th Cir. 2023), likewise assessed materiality in light of the entire trial record, including the nature of the impeachment and the strength of corroborating evidence; it reached different materiality conclusions for codefendants despite the same withheld evidence. See also *United States v. Perry*, 35 F.4th 293, 345-46 (5th Cir. 2022). The opinion cited the general cumulative-evidence rule but did not undertake that comparison.

Materiality also must consider the suppressed evidence collectively. *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). This petition does not ask the panel to treat the separately alleged immunity understanding as established. It asks that the lien, Rivera's exposure, her cooperation, and any Government knowledge or assurance be assessed together rather than the lien being declared cumulative "by definition."

Those factual questions were never developed: whether the lien existed in the asserted form; what Rivera understood; when investigators or prosecutors learned of it; whether it was disclosed; and what, if anything, was communicated to Rivera. Trial familiarity could not resolve off-record communications or Government knowledge. *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977), identifies allegations of prosecutorial misconduct as a recurring context for evidentiary hearings, even though hearings are not automatic. Castro's filings identified the lien, the alleged financial mechanism, the witness, the claimed Government knowledge, and the asserted nonprosecution understanding. ROA.3053-58, 3166-69. No witness with personal knowledge was examined, and no findings were made.

The panel should rehear the Brady ruling, withdraw the categorical cumulative-impeachment analysis, and remand for a limited hearing concerning the lien, Rivera's knowledge, prosecution-team knowledge and disclosure, any communications or understandings, and resulting motive or bias.

## IV. The Obstruction Holding Used Clear-Error Review for a Legal Application and Relied on Conclusory Testimony That Did Not Establish Unlawful Witness Influence.

The opinion rejected plain-error review and stated that application of the Guidelines is reviewed de novo. Op. 16-17. It nevertheless affirmed because the district court did not clearly err in treating Castro's civil litigation as threatening, intimidating, or otherwise unlawfully influencing a witness. Op. 18. Whether established historical conduct legally satisfies Section 3C1.1 is an application question reviewed de novo. *United States v. Ortega*, 93 F.4th 278, 282 (5th Cir. 2024).

The record did contain Agent Ma's affirmative answers to leading questions asking whether lawsuits made it difficult to locate willing witnesses and whether multiple witnesses were hesitant. ROA.2009-10. But those bare answers supplied none of the necessary facts. No allegedly hesitant witness was identified. Ma quoted no witness,

described no communication to a witness, provided no date, and connected no particular lawsuit or email to any person's decision. No allegedly hesitant witness testified that Castro threatened, contacted, or influenced him or her. A generalized conclusion that unnamed persons were reluctant does not establish willful obstruction, an unlawful means, or a causal nexus.

Application Note 4(A) concerns "threatening, intimidating, or otherwise unlawfully influencing" a witness. *Ortega* requires unlisted conduct to be comparable to the commentary's examples of egregiously wrongful behavior. 93 F.4th at 282-86. *United States v. Parra*, 111 F.4th 651, 657-60 (5th Cir. 2024), likewise emphasizes conduct presenting an inherently high risk that justice will actually be obstructed. The opinion identified no request that a witness lie, conceal evidence, refuse cooperation, or alter testimony.

Nor may civil actions be treated as obstruction merely because they were dismissed. Filing reasonably based litigation is protected petitioning activity; unsuccessful litigation does not lose that protection without a showing of sham, fraud, abuse of process, an unlawful threat, or a corrupt objective. See *BE&K Construction Co. v. NLRB*, 536 U.S. 516, 525-37 (2002). Castro's quoted settlement proposal asked Agent Ma

to identify who allegedly ordered an unlawful investigation in exchange for dismissal. Whatever its tone, it did not request false testimony or noncooperation. The cited email expressly acknowledged that it was not valid service and notified Ma that a civil action had been filed.

The PSR and the district court made no finding identifying a threatened witness, a communication to that witness, an unlawful demand, a false statement sought, or the necessary willful nexus. The panel should grant rehearing and vacate the Section 3C1.1 enhancement, or remand for application of the correct de novo legal standard and specific findings.

## V. The Opinion Overlooked This Court's Independent Rule 10(e) Authority to Settle the Accuracy of the Appellate Record.

The opinion dismissed the transcript-correction challenge because the district court's order postdated the first notice of appeal and no separate notice identified that order. Op. 6-7. That analysis treated the issue solely as an appeal from an independent postjudgment order. Castro's motion and appellate briefing also invoked Federal Rule of Appellate Procedure 10(e) and asked this Court, in the pending direct appeal, to ensure that the record "truly discloses what occurred."

Rule 10(e)(1) requires a dispute over what occurred to be submitted to and settled by the district court, and Rule 10(e)(2)(C) independently authorizes correction by the court of appeals. Those provisions operate within an existing appeal. In *United States v. Page*, 661 F.2d 1080, 1081-82 (5th Cir. 1981), this Court approved proceedings after the appeal began to settle what actually occurred below, explaining that necessary proceedings may place the truth of those events in the record. Rule 10(e) cannot create events that did not happen, but it exists to conform the record to events that did.

Docket 240 identified specific passages, alleged that statements actually made in court were omitted or altered, and requested comparison with the reporter's original records and preserved audio. That request sought record settlement, not creation of new evidence. The Court did not need jurisdiction over Docket 243 as a freestanding appealable order to exercise its own Rule 10(e)(2)(C) authority in No. 24-11000.

The panel should grant rehearing and order a limited remand for targeted in camera comparison and findings sufficient to settle whether the appellate record accurately reflects what occurred.

## CONCLUSION

The panel should grant rehearing; vacate the Section 3B1.1(a) and Section 3C1.1 enhancements; remand for ECF 36 waiver findings and a limited Rivera Brady hearing; address the separately briefed *Brookhart* right-to-plead-not-guilty claim; and exercise Rule 10(e) authority to order limited record-settlement proceedings. Independently and regardless of whether the panel grants rehearing on the merits, it should amend or clarify the opinion to state expressly that it decides only the direct-appeal waiver issue in No. 24-11000 and does not adjudicate ECF 36's authenticity, provenance, transmission, valid execution, signature authorization, or proper use in Appeals 26-10488 and 26-10510.

Respectfully submitted,
*/s/ John Anthony Castro*
JOHN ANTHONY CASTRO
Appellant, Pro Se
FPC Pollock Camp
Registered Number 93890-510
P.O. Box 2099
Pollock, LA 71467

## CERTIFICATE OF COMPLIANCE

This petition complies with Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,630 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). It complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared in a proportionally spaced 14-point Century Schoolbook serif typeface.

*/s/ John Anthony Castro*
John Anthony Castro

## CERTIFICATE OF SERVICE

I certify that on July 17, 2026, I submitted this Petition for Panel Rehearing and Request for Clarification to the Clerk of the United States Court of Appeals for the Fifth Circuit by email through the Court's authorized Pro Se Mailbox at Pro_se@ca5.uscourts.gov, with No. 24-11000 in the subject line. I further certify that on the same date I served a true and correct copy by email on counsel for Appellee, Lauren C. Murphree, at lauren.murphree@usdoj.gov.

*/s/ John Anthony Castro*
John Anthony Castro

## ELECTRONIC FILING CERTIFICATIONS

I certify that the required privacy redactions have been made; that this electronic submission is an exact copy of the signed paper original retained by Appellant; and that the file has been scanned for viruses and is free of viruses.

*/s/ John Anthony Castro*
John Anthony Castro

# ATTACHMENT

# UNMARKED COPY OF THE PANEL OPINION

# FILED JULY 10, 2026

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2026

Lyle W. Cayce
Clerk

No. 24-11000
CONSOLIDATED WITH
No. 26-10428

United States of America,

*Plaintiff—Appellee*,

*versus*

John Anthony Castro,

*Defendant—Appellant*.

Appeals from the United States District Court
for the Northern District of Texas
USDC Nos. 4:24-CR-1-1, 4:24-CR-1-1

Before Duncan, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:*

Following a bench trial, John Anthony Castro was convicted of 33 counts of aiding and assisting in the preparation and presentation of a false and fraudulent tax return, in violation of 26 U.S.C. § 7206(2). After applying sentence enhancements, the district court sentenced Castro to 188 months' imprisonment, followed by one year of supervised release. He now appeals

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

both his conviction and the application of two sentencing enhancements. In a separate appeal also before us, he challenges the denial of his motion for bail pending appeal.

We dismiss the first appeal in part for lack of jurisdiction and affirm in all other respects. As for the second, we dismiss it as moot.

## I.

In 2014, Castro founded Castro and Company LLC (Castro & Co.), offering consulting, tax planning, and tax-preparation services. Castro & Co. marketed itself as an international-tax law firm, and Castro often referred to himself as a "federal practitioner" and an "international tax attorney" based on his registration with the Internal Revenue Service (IRS) as an enrolled agent. Though Castro was never licensed to practice law by any state bar, he was a law-school graduate and had earned an L.L.M. with a focus in taxation.

Castro employed several individuals, including family members, attorneys, and a certified public accountant (CPA) as part of his business. Though each employee had access to the firm's tax software, Castro was the only individual permitted to file tax returns. Between 2016 and 2024, Castro developed a scheme to defraud the United States by creating and submitting false tax returns on behalf of unsuspecting taxpayers. As part of his marketing strategy, he advertised that he could obtain significantly higher tax refunds than other companies and offered to split the refund as his fee for services.

Castro primarily utilized two strategies to increase taxpayers' returns. One involved falsifying Schedule C business expenses and deductions sufficient to generate net losses. The other required falsifying Schedule A expenses and deductions to decrease a client's taxable income.

When a prospective client contacted Castro & Co., an employee would instruct them to complete a short client questionnaire, which would then be submitted electronically to Castro. A Castro & Co. employee would arrange and conduct a phone interview with the client, following a script prepared by Castro, to elicit information that could lead to deductions. Clients were instructed to upload relevant supporting documents to a virtual portal managed by Castro and Co., and an employee would thereafter perform data input into Castro & Co.'s tax software. Once those steps were completed, Castro performed a final review.

Before filing a return, Castro would email a tax proposal to the client, identifying: the anticipated refund if the client were to file with Castro; the anticipated refund if the client were to file with a different tax professional; and the amount Castro would be paid out of the anticipated refund (usually about half). He discussed the refund amount and calculation generally but omitted details of the fraudulent returns. Finally, he would ask whether the client wanted him to file the return. If the client accepted his proposal, Castro would file without giving the client the opportunity to review the return. Once Castro received the refund check and deposited it into Castro & Co.'s operating account, he would send the client the promised portion.

Castro generally refused to meet with clients in person and often rebuffed clients' attempts to understand their filings. Due to his lack of responsiveness, many reported Castro to the IRS, resulting in over 200 audits of returns he filed.

In 2018, an undercover IRS agent began investigating Castro & Co. After learning of the investigation in 2020, Castro sent various emails to investigators attempting to explain his methods, eventually threatening to file suit. Over the next year and a half, Castro filed multiple civil actions against an individual IRS agent, the United States, and then-former President

Donald Trump, contending the investigation was politically motivated and retaliatory. All these suits were eventually dismissed.

On January 3, 2024, Castro was indicted on 33 counts of aiding and assisting in the preparation and presentation of a false and fraudulent return, in violation of 26 U.S.C. § 7206(2). Following a five-day bench trial, he was convicted on all counts. In preparation for sentencing, a probation officer compiled a presentence investigation report (PSR). The PSR grouped his 33 counts pursuant to U.S.S.G. § 3D1.2(b), which requires grouping counts that have a common victim and objective, and § 3D1.2(d), which requires grouping "[w]hen the offense level is determined largely on the basis of . . . aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

Castro's base offense level of 26 under §§ 2T1.4(a)(1) and 2T4.1(K) was enhanced by 10, as follows: two levels because he was in the business of preparing or assisting in the preparation of tax returns; two levels because the offense involved sophisticated means; four levels because he was an organizer or leader in criminal activity that involved five or more participants or was otherwise extensive; and two levels because he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice.

Castro objected that (1) the two-level enhancement for obstruction of justice was factually unsupported and inadequately alleged; (2) the four-level leadership enhancement did not apply because his employees were not "participants" within the meaning of the guidelines; (3) the two-level enhancement for sophisticated means was improper because his operation was not sufficiently sophisticated; (4) he should have received an acceptance-of-responsibility reduction; and (5) his counts were improperly grouped. The district court overruled his objections, adopted the PSR's statements of

Case: 24-11000 Document: 350 Page: 5 Date Filed: 07/10/2026



fact as its findings of fact, and sentenced him at the bottom of the guidelines range to 188 months' imprisonment.

On November 12, 2024, Castro filed a notice of intent to proceed *pro se*, a motion for a new trial, and a timely notice of appeal, generating appeal No. 24-11000. A month later, he moved in district court for an evidentiary hearing on his new-trial motion. Both motions were denied. He then filed various other motions in district court, all of which were either denied or dismissed for lack of jurisdiction.

On December 19, 2025, Castro filed an Emergency Application for Prompt Disposition and Release Pending Appeal in district court, one of a series of similar motions he filed in both district court and this court. On January 22, 2026, the district court denied his motion. Castro timely filed a notice of appeal of that order, which we construed as a motion for bail pending appeal, generating appeal No. 26-10428. On June 5, 2026, we consolidated the appeals, and on June 15, 2026, we denied his pending motion for bail.[1]

## II.

Castro lodges several arguments on appeal. He contends the district court erred by denying his motions for a new trial and to correct the trial transcripts; failing to ensure he effected a valid waiver of his Confrontation Clause rights; and applying sentencing enhancements under U.S.S.G. §§ 3B1.1(a) and 3C1.1.

[1] Because we denied Castro's requested relief in appeal No. 26-10428—bail pending appeal—we dismiss that appeal as moot. Accordingly, our analysis below is limited to the arguments raised in appeal No. 24-11000. Castro's other actions pending before our court, appeal Nos. 26-10488 and 26-10510, are not part of this appeal.

### A.

Before considering Castro's arguments, we begin with a threshold question raised by the Government: Do we have jurisdiction to consider the denial of Castro's motions to correct the trial transcripts and for new trial when both were filed and decided after he noticed this appeal?

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). If a district court acts in contravention of this "one-court-at-a-time" rule, its actions are "null and void." *United States v. Willis*, 76 F.4th 467, 473 (5th Cir. 2023) (citation omitted).

#### 1.

The Government contends that the one-court-at-a-time rule prevents us from considering Castro's trial-transcript challenge because, upon Castro's noticing his appeal, the district court lacked jurisdiction to rule on any subsequent motions put before it. The Government is correct that we cannot consider Castro's challenge—but not because of the one-court-at-a-time rule. That rule divests the district court of control only "over those aspects of the case *involved in the appeal*." *Griggs*, 459 U.S. at 58 (emphasis added). Castro's motion to correct the trial transcripts was not an issue noticed in his first appeal (No. 24-11000), so the district court retained jurisdiction to consider it. Nonetheless, we lack jurisdiction to review that ruling "[b]ecause the order . . . was a post-judgment order and not a prior order, [such that] it cannot be challenged without a separate notice of appeal." *See, e.g.*, *Armour v. Knowles*, 512 F.3d 147, 156 (5th Cir. 2007). Succinctly, the ruling postdates Castro's first notice of appeal, and "[o]ne cannot usually evince an intent to appeal an order that does not yet exist."

*Id.* at 156 n.20. And his subsequent notice of appeal in No. 26-10428 makes no mention of this issue, so that appeal does not save him.

**2.**

The Government also invokes the one-court-at-a-time rule to argue that the district court lacked jurisdiction to rule on Castro's post-notice motion for a new trial. As a result, it reasons, the district court's ruling is void and unreviewable. "[T]here are exceptions to the general one-court-at-a-time rule." *Willis*, 76 F.4th at 471 (citation omitted). One such exception is embodied in Federal Rule of Appellate Procedure 4(b)(3), which "list[s] several motions that, if timely made, toll the time to appeal till after entry of an order denying the motion." *United States v. Hoffman*, 70 F.4th 805, 810 (5th Cir. 2023) (alteration in original and citation omitted). Specifically, the Rule provides:

> If a defendant timely makes [an enumerated motion] under the Federal Rules of Criminal Procedure, the notice of appeal from a judgment of conviction must be filed within 14 days after the entry of the order disposing of the last such remaining motion, or within 14 days after the entry of the judgment of conviction, whichever period ends later.

FED. R. APP. P. 4(b)(3)(A). Thus, if a party files a notice of appeal, but then files a timely motion listed in Rule 4(b)(3), the notice is not effective—and therefore does not strip the district court of jurisdiction—until the resolution of the motion. *See id.*

Among those qualifying motions is one for a new trial under Federal Rule of Criminal Procedure 33—"but if based on newly discovered evidence, only if the motion is made no later than 14 days after the entry of the judgment[.]" *See* FED. R. APP. P. 4(b)(3)(A)(ii). And under Rule 33, a motion for new trial must be "filed within 3 years after the verdict or finding of guilty" if based on newly discovered evidence, or, for any other reason,

"within 14 days after the verdict or finding of guilty." FED. R. CRIM. P. 33(b)(1)–(2).

The Government contends Castro's motion does not fall within Rule 4(b)(3) because the rule applies only to a *timely* motion under Rule 33, and Castro's motion was untimely. It reasons that because the district court concluded his motion was not based on newly discovered evidence, it is subject to the fourteen-day limit rather than the three-year limit. And because Castro filed his motion for new trial 172 days after the district court's verdict, it was not timely.

The Government's argument fails. Rule 33's time limits are non-jurisdictional claim-processing rules that may be forfeited if not timely raised. *Eberhart v. United States*, 546 U.S. 12, 19 (2005). The Government did not raise the timeliness of Castro's motion in district court; it instead argued the merits, and the district court denied the motion on the merits. Were Rule 4(b)(3) jurisdictional, we would have an independent obligation to determine whether Castro's motion was timely. After all, "[j]urisdictional arguments" are an "obvious exception" to forfeiture rules. *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021). But it, too, is a non-jurisdictional claim-processing rule.[2] *See Bowles v. Russell*, 551 U.S. 205, 212 (2007) (holding rule-based time limits in criminal cases "may be waived because the procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion" (cleaned up)); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 25 (2017) ("If a time prescription governing the transfer of adjudicatory

---

[2] In contrast, the timely filing of a notice of appeal in a *civil* case is jurisdictional. *See Bowles v. Russell*, 551 U.S. 205, 213 (2007) ("Because Congress specifically limited the amount of time by which district courts can extend the notice-of-appeal period in [28 U.S.C.] § 2107(c), that limitation is more than a simple 'claim-processing rule.'").

Case: 24-11000 Document: 350-1 Page: 9 Date Filed: 07/10/2026



authority from one Article III court to another appears in a statute, the limitation is jurisdictional . . . ; otherwise, the time specification fits within the claim-processing category[.]").

Accordingly, the Government has forfeited any contention that Castro's motion for a new trial was untimely, and under Rule 4(b)(3), his notice of appeal in No. 24-11000 did not become effective until December 19, 2024—the date of the denial of his motion for a new trial.[3] For the same reason, the district court retained jurisdiction to rule on the new-trial motion.

**B.**

As we likewise have jurisdiction over Castro's new-trial challenge, we turn to the merits. He contends the district court erred in concluding the Government did not suppress *Brady*[4] material warranting a new trial and by denying his motion for a new trial without holding an evidentiary hearing.

Motions for a new trial based on alleged *Brady* violations are reviewed *de novo*, "while acknowledging that we must proceed with deference to the factual findings underlying the district court's decision." *United States v. Perry*, 35 F.4th 293, 345 (5th Cir. 2022) (citation omitted). The district court's decision not to hold an evidentiary hearing on a motion for new trial is reviewed for abuse of discretion. *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016).

---

[3] The cases the Government cites do not control. *See United States v. Ugalde*, 861 F.2d 802 (5th Cir. 1988); *United States v. Demopoulos*, 506 F.2d 1171, 1180–81 (7th Cir. 1974). In *Ugalde*, the district court concluded the motion for a new trial was not based on newly discovered evidence, was therefore untimely, and declined to reach the merits of the motion on that basis. 861 F.2d at 804. Here, in contrast, the district court reached the merits without considering the timeliness question. As for *Demopoulos*, that opinion does not contain the quotation the Government attributes to it.

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

**1.**

Castro maintains the Government suppressed three pieces of information, each constituting a *Brady* violation: former client (and trial witness) Linda Rivera's marital status; the existence of a lien on Rivera's husband's IRS tax account for unpaid child support; and a verbal immunity agreement between Rivera and the Government.

"In this context, the Court applies the three-prong *Brady* test to determine whether a new trial is appropriate." *Perry*, 35 F.4th at 345. "To establish a *Brady* violation, a defendant must make three showings: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The final prong concerns whether the concealed evidence is material, requiring us to ask whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (citation omitted).

Castro maintains he could have used the allegedly suppressed evidence to impeach Rivera. Specifically, he contends that the misrepresentation on Rivera's taxes that she was single shows she is dishonest. And the undisclosed tax lien on her husband's IRS account shows her motivation for lying—namely, that the IRS could have taken half her tax refund to pay her husband's unpaid child support. He also contends Rivera's verbal immunity agreement would have provided even stronger grounds for undermining her credibility.

"Impeachment evidence 'falls within the *Brady* [disclosure] rule' because '[s]uch evidence . . . may make the difference between conviction and acquittal.'" *Banks v. Thaler*, 583 F.3d 295, 311 (5th Cir. 2009)

(alterations in original and citation omitted). When the evidence "would have provided [defendant's] *only* avenue of impeachment, . . . we have been more likely to find that the withheld evidence constitutes *Brady* material." *Sipe*, 388 F.3d at 489 (emphasis in original). But "evidence which impeaches an already impeached witness is by definition cumulative" and therefore immaterial. *Id.*

Under this framework, Castro's arguments falter. First, even if suppressed and favorable to Castro, Rivera's husband's tax lien is cumulative and therefore immaterial impeachment evidence. At trial, defense counsel impeached Rivera with evidence that she had reported being single on her tax return despite being married. Thus, evidence of her husband's tax lien would have "merely furnishe[d] an additional basis on which to impeach a witness whose credibility ha[d] already been shown to be questionable[.]" *United States v. Brumfield*, 89 F.4th 506, 515 (5th Cir. 2023) (citation omitted). Counsel's line of questioning also shows that Rivera's marital status was not suppressed. Castro knew she was married at trial; indeed, Rivera's intake form—which she completed when she sought Castro's services—stated she was married. Finally, Castro's assertion that Rivera was offered immunity to testify is wholly conclusory. Accordingly, he fails to show the district court abused its discretion in denying his motion for a new trial.

**2.**

Castro's contention that his motion warranted an evidentiary hearing likewise fails. "The law of this circuit is well established that a motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977). "Where evidentiary hearings are ordered, it is because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third party confession." *Id.* Even so, those circumstances do not "compel such a hearing" because "the acumen gained by the trial judge

in presiding over the course of the trial makes Rule 33 motions directed to the same judge 'particularly suitable for ruling without a hearing.'" *United States v. MMR Corp.*, 954 F.2d 1040, 1046 (5th Cir. 1992) (citation omitted).

As stated, the *Brady* evidence Castro furnishes was either known to him at the time of trial, wholly conclusory, or duplicative impeachment evidence. The district court therefore did not abuse its discretion in denying his motion without holding an evidentiary hearing.

## C.

Castro argues the district court violated the Sixth Amendment when it admitted stipulations "tantamount to a guilty plea" into evidence without ensuring he knowingly waived his Confrontation Clause rights. "Alleged Confrontation Clause violations are reviewed *de novo* and [are] subject to harmless error analysis." *United States v. Garcia*, 887 F.3d 205, 209 (5th Cir. 2018).

The Confrontation Clause of the Sixth Amendment ensures the right of a criminal defendant to confront witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). Nonetheless, counsel may waive his client's confrontation rights by stipulating to the admission of evidence "so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir. 1980). Waiver of the right "is not contingent on evidence that the defendant affirmatively agreed to counsel's stipulation; [he] just must not dissent from that decision." *United States v. Ceballos*, 789 F.3d 607, 616 (5th Cir. 2015). The burden lies with the Government to prove a valid waiver, and we "should indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* at 614 (citation omitted).

Castro maintains the Government cannot carry its burden, but that position is belied by the record. Before trial, the Government proposed stipulations covering specific testimony from witnesses the Government did not intend to call at trial, as well as exhibits corresponding with each witness. Castro's counsel emailed the stipulations to him; Castro replied, "I agree to them"; his counsel signed them; and the Government signed and filed them.

At trial, before Linda Rivera testified, the Government made the court aware of the stipulations, some of which covered Rivera's testimony. The Government noted that, given the stipulations, it would put on a truncated version of her testimony. The court asked defense counsel if he agreed, and he responded: "Yes, Your Honor." After Rivera's testimony, the Government expressed that it could present compressed versions of the three remaining victims' testimony because of the stipulations, but defense counsel disagreed. Accordingly, the Government called the remaining witnesses and elicited testimony as if there were no stipulations for them. At no point did Castro's counsel move to strike or object to the stipulations as to the other, non-testifying witnesses.

Then, before closing arguments, the district court stated it had reviewed the stipulations, and its "impression [was] that the [G]overnment believe[d] that it ha[d] proven, on the counts that are stipulated to, . . . all of the elements of the crime through those stipulations . . . [i]ncluding willfulness." After the Government agreed, the court asked, "[b]ut the defense, I'm inferring, admits to the elements, except for willfulness?" Defense counsel responded, "I think that is accurate," and "the stipulations themselves do not satisfy willfulness or that it was . . . intentional." But counsel once again did not object to the facts included in the stipulations. Rather, he argued only that certain legal conclusions could not be drawn from those stipulated facts.

Moreover, the record reflects that the stipulations were part of the legitimate trial strategy of narrowing the issues to whether Castro's conduct was willful. As the Government notes, Castro's proposed findings of fact begin with: "[T]his case necessitates no fact finding apart from the ultimate issue of guilt or innocence." And during closing, defense counsel reinforced that the only issue was Castro's intent:

> [W]illfulness is really what this case is all about, and I want to be clear, and clarify one thing I said earlier, is one of the elements here is that the returns be fraudulent. I view that as really subsumed or interlinked with willfulness. And so, I want to be clear, we don't concede necessarily that any of the stipulations satisfy that there was a fraudulent item on the return, but I just want that to be clear. That really is the same, same issue, ultimately, here.

Because Castro agreed to the stipulations in writing, did not dissent from his attorney's affirming the stipulations at trial, and the stipulations were part of a legitimate trial tactic or strategy, Castro waived his confrontation rights. *See Stephens*, 609 F.2d at 232–33.

### D.

Next, Castro challenges the application of two sentencing enhancements: a four-level enhancement under U.S.S.G. § 3B1.1(a) for being an organizer or leader in criminal activity; and a two-level enhancement under U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice.

"We review the district court's interpretation and application of the Guidelines *de novo*, and its factual findings for clear error." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011). "[W]e will conclude that a

Case: 24-11000 Document: 341 Page: 15 Date Filed: 07/17/2026



finding of fact is clearly erroneous only if a review of all the evidence leaves us 'with the definite and firm conviction that a mistake has been committed.'" *Id.* (citations omitted).

**1.**

Castro first contends the district court erred by applying a leadership enhancement. Under § 3B1.1(a), a defendant is subject to a four-level enhancement "[i]f [he] was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

Castro maintains the enhancement was improper because the record is devoid of facts showing that five or more criminally responsible individuals, *i.e.*, participants, were involved in his scheme. *See* U.S.S.G. § 3B1.1(a), cmt. n.1 ("A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."). He also asserts the Government cannot now argue his scheme was "otherwise extensive" because (1) it did not raise that argument until the sentencing hearing, and (2) the district court did not impose the enhancement on that ground. The Government responds that the enhancement is proper under either theory and that the district court considered its otherwise-extensive argument at sentencing.

Irrespective of the parties' arguments, we need not decide whether Castro's scheme involved five or more criminally responsible individuals. As we have explained, "we may affirm an enhancement on any ground supported by the record," *United States v. Salinas*, 918 F.3d 463, 465 (5th Cir. 2019), and the record shows Castro's scheme was otherwise extensive.

"In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered." U.S.S.G. § 3B1.1(a), cmt. n.3. "This includes taking into account unknowing participants who contributed to the success of the

criminal enterprise." *United States v. Tuma*, 738 F.3d 681, 694 (5th Cir. 2013); *see also* U.S.S.G. § 3B1.1(a), cmt. n.3 ("[A] fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.").

The record shows Castro's scheme involved several people—family members, multiple attorneys, and a CPA—who contributed to the success of his enterprise, resulting in $15,168,913 in estimated tax loss to the Government. His employees, whether knowing or unknowing, handled client intake calls, conducted phone interviews, entered data using Castro & Co.'s tax software, and assisted in the preparation of returns. "[W]ithout [these individuals'] participation[, Castro's] activities could not have happened or continued." *Tuma*, 738 F.3d at 694. At the least, the district court did not clearly err in applying the four-level leadership enhancement under § 3B1.1(a).

**2.**

Next, Castro contends the district court erred in applying an obstruction-of-justice enhancement because it failed to make specific factual findings necessary to support the enhancement's application. The parties dispute the correct standard of review. The Government contends that plain-error review applies because, although Castro objected to the enhancement in district court, he did so on different grounds than he raises here. *See, e.g.*, *United States v. Williams*, 343 F.3d 423, 434 (5th Cir. 2003). Specifically, the Government maintains Castro's objection in district court was that (1) he did not commit perjury, and (2) his lawsuits were an improper basis for the enhancement—not, as he argues on appeal, that the district court's factual findings were inadequate. We disagree with the Government's depiction of the record.

To preserve an argument for appellate review, a defendant must raise his objection "in a manner that could have placed the district court on notice of the error he now asserts." *United States v. Dominguez-Alvarado*, 695 F.3d 324, 328 (5th Cir. 2012). Despite the Government's contention to the contrary, Castro raised his objection to the sufficiency of the enhancement's factual basis in district court. In addition to disputing the factual narrative in the PSR—*i.e.*, contending that he did not commit perjury or engage in vexatious litigation—Castro also asserted: "The PSR does not *allege* perjury"; "the PSR *points to no* misconduct during trial"; "the conduct described in those provisions *does not support* the application of this enhancement"; "[t]here is no *allegation* that the defendant improperly testified or provided materially false information"; and "[n]o false statements are *identified* whatsoever." (emphasis added).

Thus, we review this enhancement challenge as we did the other: the district court's interpretation and application of the Guidelines *de novo*; its factual findings for clear error. *Zuniga*, 720 F.3d at 590.

Section 3C1.1 of the Guidelines provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

The probation officer applied the enhancement in the PSR because Castro "attempted to threaten or intimidate the investigators in this offense" through filing "frivolous lawsuits" against IRS agents and "provided materially false information to a judge." The probation officer likened his conduct to the examples provided in Application Notes 4(A) and (F).

Application Note 4(A) states the enhancement applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." *Id.* § 3C1.1, cmt. n.4(A). Application Note 4(F) likewise applies the enhancement when a defendant "provid[es] materially false information to a judge or magistrate judge." *Id.* § 3C1.1, cmt. n.4(F).

Castro takes exception with the enhancement under either theory. He contends the PSR, adopted by the district court as its factual findings, lacks the factual predicates for a finding of perjury. He also maintains his lawsuits were not "frivolous" and do not warrant the enhancement's application. As we explain below, because the court did not clearly err in finding that Castro's past litigation amounted to threatening, intimidating, or otherwise unlawfully influencing a witness in his investigation, we need not resolve whether perjury was a sufficient basis to support the enhancement.

The PSR stated that Castro "filed multiple frivolous lawsuits against the United States, IRS personnel, including the IRS agent in his personal capacity, and [then-]former President Trump in an attempt to end the investigation." It noted one such lawsuit where Castro sued an IRS agent personally and stated: "My offer to settle is this: tell me who ordered you to initiate the unlawful and retaliatory investigation against me and I'll drop the lawsuit. One and only chance to settle." Moreover, an IRS agent testified that, once Castro discovered he was being investigated, he sent the agent "a barrage of emails," one of which stated: "[A]lthough I understand this is not valid service of process, I wanted to make you immediately aware that a federal civil action has been filed in the United States District Court . . . . I truly wish this could have been avoided. Have a nice weekend." And further testimony provided that Castro "often use[d] the threat of lawsuits against anyone who challenged him," which made "multiple witnesses hesitant to . . . testify[.]" Given this record evidence, the district court did not clearly

err in applying the two-level enhancement under § 3C1.1. *See Rodriguez*, 630 F.3d at 380; *see also* U.S.S.G. § 3C1.1, cmt. n.4(A).

* * *

In sum, Castro's arguments are without merit. We lack jurisdiction to consider his trial-transcript challenge, and his *Brady*-based motion for a new trial fails on the merits. Similarly, he cannot show that his Confrontation Clause rights were violated or that the district court erred in applying sentencing enhancements under §§ 3B1.1(a) or 3C1.1.

Based on the foregoing, in appeal No. 24-11000, we DISMISS, for lack of jurisdiction, Castro's challenge to the denial of his motion to correct the trial transcripts and AFFIRM in all other respects. We DISMISS appeal No. 26-10428 as moot.