U.S. COURT OF APPEALS
RECEIVED
Aug 13, 2026
FIFTH CIRCUIT

**No. 24-11000**
consolidated with No. 26-10428

In The
# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOHN ANTHONY CASTRO,
*Defendant-Appellant.*

APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH
USDC NO. 4:24-CR-1-1
Honorable Terry R. Means, U.S. District Judge

## APPELLANT'S RENEWED PETITION FOR PANEL REHEARING AND REQUEST FOR CLARIFICATION

*From the August 11, 2026 Substituted Opinion*

John Anthony Castro
*Appellant, Pro Se*
FPC Pollock Camp
BOP Register No. 93890-510
P.O. Box 2099
Pollock, LA 71467

## CERTIFICATE OF INTERESTED PERSONS

The undersigned Defendant-Appellant, proceeding pro se, certifies under Fifth Circuit Rule 28.2.1 that the following persons and entities have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible recusal or disqualification.

1. John Anthony Castro, Defendant-Appellant, pro se.
2. United States of America, Plaintiff-Appellee.
3. Hon. Terry R. Means, United States District Judge.
4. Jason B. Freeman and Franklyn R. Mickelsen, former trial counsel for Defendant-Appellant.
5. Lauren C. Murphree, Gail A. Hayworth, Stephen S. Gilstrap, Philip J. Meitl, Jay Weimer, and Nancy E. Larson, counsel or former counsel for Plaintiff-Appellee.
6. United States Attorney's Office for the Northern District of Texas.
7. United States District Court for the Northern District of Texas, Fort Worth Division.

This is a criminal case. No publicly traded corporation has an interest in its outcome.

/s/ John Anthony Castro
John Anthony Castro
Defendant-Appellant, Pro Se

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS........................................................i

TABLE OF CONTENTS.....................................................................................ii

TABLE OF AUTHORITIES..............................................................................iii

APPELLANT'S RENEWED PETITION FOR PANEL REHEARING AND REQUEST FOR CLARIFICATION....................................................................1

POINTS OF LAW AND FACT MISAPPREHENDED............................................2

REASONS FOR REHEARING............................................................................3

I. The substituted opinion supplies rather than reviews the indispensable criminal-participant finding...........................................................................3

A. Adoption of the PSR did not make its collective conclusion reliable.....5

B. Fullerton confirms the missing specificity rather than excusing it......6

C. The script, audits, professional titles, and equivocal advocacy do not prove employee mens rea.......................................................................7

D. Clear-error plausibility cannot create the finding under review..........9

II. The Brady holding applies the categorical shortcut forbidden by Turner, Wearry, and Glossip........................................................................................10

III. The opinion should correct its unsupported ECF 36 transmission and signature premises and preserve the excluded appeals...........................13

IV. The obstruction holding announced de novo review but deferred on the dispositive legal question.........................................................................15

CONCLUSION.................................................................................................16

CERTIFICATE OF COMPLIANCE.....................................................................19

CERTIFICATE OF SERVICE..............................................................................20

ELECTRONIC-FILING CERTIFICATIONS.........................................................20

ATTACHMENT: UNMARKED COPY OF THE AUGUST 11, 2026 AMENDED PANEL OPINION...................................................................................21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*BE&K Construction Co. v. NLRB*
536 U.S. 516 (2002)....................16

*Brookhart v. Janis*
384 U.S. 1 (1966)....................14

*Chapman v. California*
386 U.S. 18 (1967)....................15

*Glossip v. Oklahoma*
604 U.S. 226 (2025)....................2, 10-11

*Icicle Seafoods, Inc. v. Worthington*
475 U.S. 709 (1986)....................9

*Janvey v. GMAG, L.L.C.*
Nos. 22-10235 & 22-10429 (5th Cir. Aug. 26, 2024)....................1

*Kyles v. Whitley*
514 U.S. 419 (1995)....................2, 11

*LaCaze v. Warden*
645 F.3d 728 (5th Cir. 2011)....................11

*Molina-Martinez v. United States*
578 U.S. 189 (2016)....................10

*Turner v. United States*
582 U.S. 313 (2017)....................2, 10

## TABLE OF AUTHORITIES (continued)

Page(s)

### CASES

*United States v. Barfield*
941 F.3d 757 (5th Cir. 2019)....5

*United States v. Brown*
571 F.3d 492 (5th Cir. 2009)....9

*United States v. Brumfield*
89 F.4th 506 (5th Cir. 2023)....11

*United States v. Carreon*
11 F.3d 1225 (5th Cir. 1994)....5

*United States v. Ceballos*
789 F.3d 607 (5th Cir. 2015)....14

*United States v. Cuff*
79 F.4th 470 (5th Cir. 2023)....9

*United States v. Elwood*
999 F.2d 814 (5th Cir. 1993)....5

*United States v. Fullerton*
Nos. 24-50800 & 24-50829 (5th Cir. July 21, 2026)....6

*United States v. Gross*
26 F.3d 552 (5th Cir. 1994)....3

*United States v. Hamilton*
37 F.4th 246 (5th Cir. 2022)....3

*United States v. Maloof*
205 F.3d 819 (5th Cir. 2000)....6

*United States v. Mergerson*
4 F.3d 337 (5th Cir. 1993)....4

## TABLE OF AUTHORITIES (continued)

Page(s)

### CASES

*United States v. Miller*
607 F.3d 144 (5th Cir. 2010)....................3, 15
*United States v. Ortega*
93 F.4th 278 (5th Cir. 2024)....................3, 15-16
*United States v. Salinas*
918 F.3d 463 (5th Cir. 2019)....................9
*United States v. Sipe*
388 F.3d 471 (5th Cir. 2004)....................11
*United States v. Stephens*
609 F.2d 230 (5th Cir. 1980)....................14
*United States v. Torres*
601 F.3d 303 (5th Cir. 2010)....................3, 15
*United States v. Tuma*
738 F.3d 681 (5th Cir. 2013)....................7
*Wearry v. Cain*
577 U.S. 385 (2016)....................2, 10-11

### STATUTES, RULES, AND GUIDELINES

26 U.S.C. § 7206(2)....................7
Fed. R. App. P. 32(a)(5)-(6)....................19
Fed. R. App. P. 32(f)....................19
Fed. R. App. P. 40(d)(1)....................1
Fed. R. App. P. 40(d)(3)(A)....................19
Fed. R. Crim. P. 32(i)(1)(C)....................9
Fed. R. Crim. P. 32(i)(3)(B)....................9
5th Cir. R. 28.2.1....................i
U.S.S.G. § 3B1.1(a)....................passim
U.S.S.G. § 3C1.1....................2-3, 15-17

# APPELLANT'S RENEWED PETITION FOR PANEL REHEARING AND REQUEST FOR CLARIFICATION

**TO THE HONORABLE PANEL:**

On August 11, 2026, the panel granted rehearing, withdrew its July 10 opinion, and substituted an amended opinion that again affirmed Appellant's convictions and sentence. Federal Rule of Appellate Procedure 40(d)(1) permits a petition within fourteen days after an amended decision. This Court has likewise entertained a second rehearing petition after withdrawing an original opinion and issuing a substitute. *Janvey v. GMAG, L.L.C.*, Nos. 22-10235 & 22-10429, slip op. at 2 (5th Cir. Aug. 26, 2024). This petition therefore is not an unauthorized request to reconsider a prior denial.

This petition does not reargue every issue. It identifies and analyzes four discrete errors in the operative opinion: (1) the new conclusion that it is merely "plausible that at least one" unidentified employee was culpable; (2) the retained Brady rule treating distinct motive evidence as cumulative "by definition"; (3) the unsupported factual statement that the final ECF 36 stipulations were emailed to Appellant and signed by counsel, notwithstanding the opinion's express exclusion of the appeals presenting provenance and authorization; and

(4) the use of clear-error review to decide whether civil litigation legally constituted unlawful witness influence. Each point concerns a newly added rationale, a categorical legal error, or a material factual premise, not a request to reweigh ordinary evidence.

## POINTS OF LAW AND FACT MISAPPREHENDED

1. Whether U.S.S.G. Section 3B1.1(a) may be sustained by an appellate conclusion that it is "plausible that at least one" of several employees was criminally culpable, where the adopted materials supplied only a collective legal conclusion, no reliable facts established an actual employee's knowing participation in a charged offense, and clear-error review cannot create the disputed finding it presupposes.

2. Whether allegedly suppressed evidence supplying a concrete financial motive, an alternative source-of-falsity inference, and possible case-specific bias may be deemed immaterial "by definition" merely because the witness was previously questioned about the underlying inconsistency, contrary to *Turner v. United States*, *Wearry v. Cain*, *Glossip v. Oklahoma*, *Kyles v. Whitley*, and this Court's motive-and-bias cases.

3. Whether the opinion should be corrected or clarified because the cited record did not establish that ECF 36 was attached to the email

Appellant received or that Jason Freeman signed or authorized that document, while Appeals Nos. 26-10488 and 26-10510 - expressly excluded from this appeal - present those precise questions.

4. Whether the legal classification of civil suits, notice emails, and a settlement proposal as "threatening, intimidating, or otherwise unlawfully influencing" a witness under Section 3C1.1 is reviewed de novo under *United States v. Ortega*, *United States v. Miller*, and *United States v. Torres*, rather than only for clear error.

## REASONS FOR REHEARING

### I. The substituted opinion supplies rather than reviews the indispensable criminal-participant finding.

The substituted opinion correctly recognizes that, under either Section 3B1.1(a) alternative, Appellant must have organized or led at least one other criminally responsible participant. Op. 15; *United States v. Gross*, 26 F.3d 552, 554-55 (5th Cir. 1994); *United States v. Hamilton*, 37 F.4th 246, 262-63 & n.13 (5th Cir. 2022). It then adds a new rationale: after identifying several family-member employees, an interview script, audit outcomes, and professional staff, the opinion concludes that "it is plausible that at least one" employee was criminally culpable. Op. 17.

The defect is not the absence of a formal proper name. A name is not talismanic. The defect is that a finding about an actual participant and that person's knowing offense conduct cannot be replaced by probability distributed across a group. The opinion never determines that Ismael, Alfonso, David, Dominic, Kathryn Hernandez, Kasondra Humphreys, or any defined employee knowingly helped bring about an identified charged return. "At least one of them" describes a universe of possibilities, not a finding that the Government proved any actual person criminally responsible by a preponderance of reliable evidence.

*United States v. Mergerson* confirms the distinction. An unidentified participant need not always be proved by name, but the evidence must establish that the actual person was involved in the precise transaction underlying the conviction. 4 F.3d 337, 348 n.11 (5th Cir. 1993). Here the evidence is dispersed among different employees, tasks, audits, and later events. The panel cannot combine one person's interview work, another person's later tax treatment, and the firm's aggregate audit history into one hypothetical participant.

### A. Adoption of the PSR did not make its collective conclusion reliable.

Appellant acknowledges that the district court adopted the PSR subject to the second addendum and overruled the objection. But adoption answers who made the ruling; it does not supply facts absent from the adopted material. A PSR may be relied upon only when its factual recitation bears sufficient indicia of reliability, and "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993); accord *United States v. Barfield*, 941 F.3d 757, 762-63 (5th Cir. 2019). An implicit finding suffices only when the adopted findings are so clear that the reviewing court need not second-guess the sentencing basis. *United States v. Carreon*, 11 F.3d 1225, 1231 (5th Cir. 1994).

Paragraph 44 described employees acting at Appellant's direction using company materials and tax positions. ROA.2827. The addendum then asserted collectively that unidentified "individuals are criminally responsible for their part in the commission of the offense," but supplied no source, employee-specific act, knowingly false entry, charged return, or fact showing when any person acquired criminal knowledge.

ROA.2881-82. That is the ultimate conclusion in dispute, not a reliable factual recitation proving it.

*United States v. Maloof* is especially instructive. There, employee compliance with the defendant's directions, and even a finding that employees "knew what was going on," did not establish that they intentionally or willfully participated in an offense. 205 F.3d 819, 830-31 (5th Cir. 2000). This Court vacated and required the district court to articulate the legal and evidentiary bases for the enhancement. Id. The adopted materials here establish workflow and control, but no more participant-specific criminal intent than Maloof permitted.

**B. Fullerton confirms the missing specificity rather than excusing it.**

*United States v. Fullerton* did not infer that one person somewhere in an employee group was probably culpable. The participant was Tori Gaines; the district court expressly found her to be a participant; and the evidence showed that she spent weeks entering information she knew was false into business software to generate fake W-2s, W-3s, Forms 940 and 941, and employment reports used in the charged PPP fraud. Nos. 24-50800 & 24-50829, slip op. at 13-14 (5th Cir. July 21, 2026). Fullerton's statement that the threshold is "not

high" did not eliminate the need for an actual person, knowing participation, and a role in bringing about the charged offense. It illustrates precisely what is missing here.

Tuma likewise does not authorize a group-level inference. Tuma already had a criminally responsible subordinate: Cody Tuma was co-indicted, pleaded guilty to an unlawful-discharge offense, testified against his father, and followed illegal operational instructions. *United States v. Tuma*, 738 F.3d 681, 683-84, 693-94 (5th Cir. 2013). The unknowing drivers and contractors mattered only to the separate extensiveness inquiry. Tuma does not permit unknowing outsiders - or a possibility that someone in a workforce was culpable - to replace the required second participant.

**C. The script, audits, professional titles, and equivocal advocacy do not prove employee mens rea.**

The script ended, "We'll decide later if it fully qualifies." Op. 17. That language may show forceful fact gathering and Appellant's control; it does not direct an employee to invent facts or knowingly enter a false amount. Later civil audit adjustments likewise do not establish which employee worked on a charged return, what that person knew during preparation, or whether the person knowingly furthered a

Section 7206(2) offense. Professional credentials cannot substitute for evidence of criminal intent.

The direct trial evidence cut the other way. Kasondra Humphreys testified that Appellant did not direct employees to enter information they believed incorrect, that no employee filed something knowing it contained an error, and that no one intentionally filed incorrect information. ROA.1815:21-25, 1820:25-1821:2, 1823:12. Joshua Milam testified that Appellant did not pressure anyone to falsely transform an activity into a business. ROA.2504:24-2505:6, 2510:19-22. Disbelief could remove that contrary evidence, but it would not itself establish which employee knowingly committed what criminal act.

The Government's own formulations exposed the gap. Its written response stated that Appellant "either was the only individual responsible for all of the false information or others assisted him," ROA.2896, and the prosecutor said unnamed brothers-in-law "probably could have been charged." ROA.2674. "Either," "or," and "probably" describe alternatives, not proof. The district court's statement that Appellant was plainly an organizer found his authority over the business; it did not find another person's criminal knowledge.

### D. Clear-error plausibility cannot create the finding under review.

Clear-error review asks whether a factual finding actually made below is plausible. It does not permit an appellate court to supply the missing resolution of a specifically disputed mens-rea fact. "As an appellate court, we do not find facts." *United States v. Brown*, 571 F.3d 492, 500 (5th Cir. 2009); see *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *United States v. Cuff*, 79 F.4th 470, 477-78 (5th Cir. 2023). Nor does the alternative-ground rule authorize first-instance selection among disputed factual inferences. *United States v. Salinas*, 918 F.3d 463, 465-66 (5th Cir. 2019).

The preserved Rule 32 objection reinforces the problem. The PSR did not develop the "otherwise extensive" alternative; the Government first invoked it at sentencing, and counsel immediately objected that no case had been made under that theory. ROA.2674:20-21, 2676:12-16. At minimum, a fact-intensive alternative ground required meaningful notice and participant-specific findings under Rule 32(i)(1)(C) and (i)(3)(B), not an appellate collective-culpability inference.

The error materially increased the sentence. The four-level adjustment raised the total offense level from 32 to 36 and the advisory

range from 121-151 months to 188-235 months. The district court selected 188 months - the bottom of the enhanced range and thirty-seven months above the unenhanced maximum - and made no same-sentence finding. *Molina-Martinez v. United States*, 578 U.S. 189, 198-200 (2016).

## II. The Brady holding applies the categorical shortcut forbidden by Turner, Wearry, and Glossip.

The opinion recognizes two different propositions: Rivera's marital-status representation exposed an inconsistency, while the child-support lien allegedly supplied her financial reason for that representation. Op. 11. Yet the materiality analysis immediately collapses the distinction, reasoning that the lien merely added another basis to impeach an already-impeached witness and was cumulative "by definition." Reciting a contextual standard does not make that one-factor disposition contextual.

Turner expressly cautioned that impeachment evidence is not immaterial merely because the witness "has already been impeached with other evidence." *Turner v. United States*, 582 U.S. 313, 324 (2017). Wearry found additional motive, coaching, and benefit evidence important even though the principal witness had already been

impeached by "many inconsistent stories." *Wearry v. Cain*, 577 U.S. 385, 392-94 (2016) (per curiam). Glossip, while applying Napue's distinct standard, relied on Wearry to reject the premise that further impeachment cannot matter once a witness has been severely impeached; that assumption "has no place in a materiality analysis." *Glossip v. Oklahoma*, 604 U.S. 226, 247 (2025). Kyles requires assessment of the cumulative effect in the context of the whole case. 514 U.S. 419, 434-37 (1995).

This Court draws the same distinction. Sipe held that undisclosed evidence is not merely cumulative when it changes the tenor of testimony, places cooperation in context, or exposes the source and scope of a motive. *United States v. Sipe*, 388 F.3d 471, 489-92 (5th Cir. 2004). LaCaze rejected the argument that a distinct source of bias was immaterial because the factfinder already knew of another source. *LaCaze v. Warden*, 645 F.3d 728, 735-38 (5th Cir. 2011). Brumfield requires comparison of the degree and kind of the disclosed and undisclosed impeachment. *United States v. Brumfield*, 89 F.4th 506, 515-16 (5th Cir. 2023).

The known evidence showed that Rivera was married while a return used a single status. Assuming suppression and favorability, as

the opinion did, the lien supplied a concrete financial reason for the representation and an alternative source-of-falsity inference: Rivera herself had reason to provide or maintain the disputed status and later distance herself from it. Evidence of the inconsistency and evidence identifying who had a financial interest in creating it do not perform the same function. Rivera testified concerning Counts 6-8, so materiality cannot be diluted by referring generally to unrelated taxpayers or the thirty-three-count case.

This ground does not depend on proving a formal immunity agreement or that prosecutors affirmatively used the lien as leverage. The lien's direct motive and source-of-falsity value exist independently. And because the panel assumed suppression and favorability for its ruling, the legal materiality holding cannot be defended by reverting to the absence of a lien document or affidavit. Brady materiality is reviewed de novo; only the separate denial of a hearing receives abuse-of-discretion review. A categorical legal error cannot be insulated by describing the overall Rule 33 disposition as discretionary.

Once the categorical error is corrected, the appropriate remedy is a limited remand to determine the lien or refund-offset mechanism, Rivera's knowledge, prosecution-team knowledge and disclosure, and

any relevant communications or understandings. That is targeted factfinding, not discovery to invent a claim.

## III. The opinion should correct its unsupported ECF 36 transmission and signature premises and preserve the excluded appeals.

The opinion states categorically that counsel emailed "the stipulations" to Appellant, Appellant replied "I agree to them," and counsel signed them. Op. 13. The record distinguishes two transmissions. Mickelsen emailed Appellant only that he must agree to "the proposed stipulations"; Appellant stated that message contained no attachments and replied from his phone, "I agree to them." ROA.1316, 1318-20, 1364. Mickelsen later forwarded that reply to the prosecutor in a separate message displaying two attachments - "Agreed Stipulations of Evidence.docx" and "Exhibit A Castro Proposed Stips.docx" - without copying Appellant or Freeman. ROA.1314-22.

The record therefore did not establish that Appellant received the final ECF 36 document before replying, saw its incorporation of Government proposed findings, or knowingly approved its use as substantive proof affecting 24 of the 33 counts. Nor did the appearance of Freeman's typed name establish authorization where Appellant disputed whether and asserted that Freeman neither signed nor

authorized it. The panel itself relied on affirmative written assent, while Ceballos assigns the Government the burden and requires every reasonable presumption against waiver. *United States v. Ceballos*, 789 F.3d 607, 614-16 (5th Cir. 2015). Stephens found waiver with "full knowledge of the implications" of identifiable stipulations and recognized Brookhart's limit on counsel stipulating to facts establishing guilt without the defendant's consent. *United States v. Stephens*, 609 F.2d 230, 233-34 & n.2 (5th Cir. 1980); *Brookhart v. Janis*, 384 U.S. 1, 7-8 (1966).

The later trial record did not erase the ambiguity. The defense declined the Government's proposal to proceed through additional abbreviated testimony, causing the remaining witnesses to be called, and Freeman clarified that the defense did not concede that the stipulations established a false or fraudulent item. ROA.1722:14-25, 2598:25-2599:3. Those events cannot logically be reconciled with an unequivocal strategy to accept ECF 36 as conclusive proof of the underlying falsity elements.

At minimum, the panel should replace its categorical sentence with a neutral description of the two-message record and clarify that the opinion does not adjudicate ECF 36's exact-document transmission,

provenance, execution, signature authorization, authenticity, or proper use. Those issues are presented in Appeals Nos. 26-10488 and 26-10510, which the opinion expressly states are not before this panel. Op. 5 n.1. If the waiver premise is reconsidered, any Confrontation Clause error requires affected-count harmless-error review beyond a reasonable doubt, not generalized reference to the Government's case. *Chapman v. California*, 386 U.S. 18, 24 (1967).

## IV. The obstruction holding announced de novo review but deferred on the dispositive legal question.

The opinion correctly states that historical facts are reviewed for clear error and application of Section 3C1.1 is reviewed de novo. Op. 17. It nevertheless affirms because the district court "did not clearly err" in finding that Appellant's litigation "amounted to" threatening, intimidating, or unlawfully influencing a witness. Op. 19-20. Whether accepted conduct legally fits Application Note 4(A) is a question of law reviewed de novo. *United States v. Ortega*, 93 F.4th 278, 281-82 & n.4 (5th Cir. 2024); *United States v. Miller*, 607 F.3d 144, 148 (5th Cir. 2010); *United States v. Torres*, 601 F.3d 303, 305 (5th Cir. 2010).

The cited facts did not identify a request that any witness lie, alter testimony, withhold evidence, or refuse cooperation. The notice email

reported that a civil action had been filed; the settlement proposal sought information about who allegedly initiated the investigation in exchange for dismissal. Agent Ma's generalized answers named no hesitant witness, quoted no witness, identified no communication received by a witness, and established no causal link. No allegedly hesitant witness testified. The opinion also identified no sham-litigation finding, sanction, false pleading, or unlawful demand. Protected petitioning cannot be converted into obstruction without identifying the unprotected feature - such as sham litigation, fraud, an unlawful threat, or a corrupt effort to alter testimony. See *BE&K Construction Co. v. NLRB*, 536 U.S. 516, 525-37 (2002). Under Ortega, the panel had to determine independently whether the accepted acts were comparable to the Guideline's examples of egregiously wrongful conduct posing an inherently high risk of obstructing justice. Deference to an adverse label did not perform that analysis.

## CONCLUSION

The panel should grant rehearing. It should vacate the Section 3B1.1(a) enhancement and remand for resentencing without it, or at minimum for reliable participant-specific findings after proper Rule 32 procedures. It should withdraw the categorical Brady analysis and

remand for a contextual materiality determination and limited evidentiary hearing. It should correct or reserve the unsupported ECF 36 transmission and signature statements so the opinion does not prejudge Appeals Nos. 26-10488 and 26-10510. And it should vacate the Section 3C1.1 enhancement or reconsider the legal fit of the accepted conduct under de novo review.

Respectfully submitted,

/s/ John Anthony Castro
John Anthony Castro
Defendant-Appellant, Pro Se
BOP Register No. 93890-510
FPC Pollock Camp
P.O. Box 2099
Pollock, LA 71467
Dated: August 25, 2026

## CERTIFICATE OF COMPLIANCE

This renewed petition complies with Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,073 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). It complies with the typeface and type-style requirements of Rules 32(a)(5) and 32(a)(6) because it was prepared in a proportionally spaced 14-point Century Schoolbook serif typeface.

/s/ John Anthony Castro
John Anthony Castro

## CERTIFICATE OF SERVICE

I certify that on August 25, 2026, I submitted this Renewed Petition for Panel Rehearing, with an unmarked copy of the August 11, 2026 amended opinion attached, through the Fifth Circuit's authorized Pro Se Mailbox at Pro_se@ca5.uscourts.gov.

I also served a true and correct copy by email on counsel for Plaintiff-Appellee:

Lauren C. Murphree
Assistant United States Attorney
lauren.murphree@usdoj.gov

/s/ John Anthony Castro
John Anthony Castro

## ELECTRONIC-FILING CERTIFICATIONS

I certify that required privacy redactions have been made; that the electronic submission is an exact copy of the signed paper original retained by Appellant; and that the PDF has been scanned for viruses and is free of viruses.

/s/ John Anthony Castro
John Anthony Castro

# ATTACHMENT

## UNMARKED COPY OF THE AUGUST 11, 2026 AMENDED PANEL OPINION

## FILED AUGUST 11, 2026

Case: 24-11000 Document: 375 Page: 1 Date Filed: 08/11/2026

# United States Court of Appeals for the Fifth Circuit

---

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2026

Lyle W. Cayce
Clerk

No. 24-11000
CONSOLIDATED WITH
No. 26-10428

---

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JOHN ANTHONY CASTRO,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 4:24-CR-1-1, 4:24-CR-1-1

---

Before DUNCAN, OLDHAM, and WILSON, *Circuit Judges*.

PER CURIAM:*

Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc, *see* FED. R. APP. P. 35; 5TH CIR. R. 35, the petition for rehearing en banc is DENIED.

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

The petition for panel rehearing is GRANTED. Our prior panel opinion, 2026 WL 1999345 (5th Cir. July 10, 2026), is WITHDRAWN, and the following opinion is SUBSTITUTED therefor:

Following a bench trial, John Anthony Castro was convicted of 33 counts of aiding and assisting in the preparation and presentation of a false and fraudulent tax return, in violation of 26 U.S.C. § 7206(2). After applying sentence enhancements, the district court sentenced Castro to 188 months' imprisonment, followed by one year of supervised release. He now appeals both his conviction and the application of two sentencing enhancements. In a separate appeal also before us, he challenges the denial of his motion for bail pending appeal.

We dismiss the first appeal in part for lack of jurisdiction and affirm in all other respects. As for the second, we dismiss it as moot.

## I.

In 2014, Castro founded Castro and Company LLC (Castro & Co.), offering consulting, tax planning, and tax-preparation services. Castro & Co. marketed itself as an international-tax law firm, and Castro often referred to himself as a "federal practitioner" and an "international tax attorney" based on his registration with the Internal Revenue Service (IRS) as an enrolled agent. Though Castro was never licensed to practice law by any state bar, he was a law-school graduate and had earned an L.L.M. with a focus in taxation.

Castro employed several individuals, including family members, attorneys, and a certified public accountant (CPA) as part of his business. Though each employee had access to the firm's tax software, Castro was the only individual permitted to file tax returns. Between 2014 and 2016, Castro developed a scheme to defraud the United States by creating and submitting false tax returns on behalf of unsuspecting taxpayers. As part of his marketing

Case: 24-11000 Document: 375-1 Page: 3 Date Filed: 08/11/2026



strategy, he advertised that he could obtain significantly higher tax refunds than other companies and offered to split the refund as his fee for services.

Castro primarily utilized two strategies to increase taxpayers' returns. One involved falsifying Schedule C business expenses and deductions sufficient to generate net losses. The other required falsifying Schedule A expenses and deductions to decrease a client's taxable income.

When a prospective client contacted Castro & Co., an employee would instruct them to complete a short client questionnaire, which would then be submitted electronically to Castro. A Castro & Co. employee would arrange and conduct a phone interview with the client, following a script prepared by Castro, to elicit information that could lead to deductions. Clients were instructed to upload relevant supporting documents to a virtual portal managed by Castro and Co., and an employee would thereafter perform data input into Castro & Co.'s tax software. Once those steps were completed, Castro performed a final review.

Before filing a return, Castro would email a tax proposal to the client, identifying: the anticipated refund if the client were to file with Castro; the anticipated refund if the client were to file with a different tax professional; and the amount Castro would be paid out of the anticipated refund (usually about half). He discussed the refund amount and calculation generally but omitted details of the fraudulent returns. Finally, he would ask whether the client wanted him to file the return. If the client accepted his proposal, Castro would file without giving the client the opportunity to review the return. Once Castro received the refund check and deposited it into Castro & Co.'s operating account, he would send the client the promised portion.

Castro generally refused to meet with clients in person and often rebuffed clients' attempts to understand their filings. Due to his lack of

responsiveness, many reported Castro to the IRS, resulting in over 200 audits of returns he filed.

In 2018, an undercover IRS agent began investigating Castro & Co. After learning of the investigation in 2020, Castro sent various emails to investigators attempting to explain his methods, eventually threatening to file suit. Over the next year and a half, Castro filed multiple civil actions against an individual IRS agent, the United States, and then-former President Donald Trump, contending the investigation was politically motivated and retaliatory. All these suits were eventually dismissed.

On January 3, 2024, Castro was indicted on 33 counts of aiding and assisting in the preparation and presentation of a false and fraudulent return, in violation of 26 U.S.C. § 7206(2). Following a five-day bench trial, he was convicted on all counts. In preparation for sentencing, a probation officer compiled a presentence investigation report (PSR). The PSR grouped his 33 counts pursuant to U.S.S.G. § 3D1.2(b), which requires grouping counts that have a common victim and objective, and § 3D1.2(d), which requires grouping "[w]hen the offense level is determined largely on the basis of . . . aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

Castro's base offense level of 26 under §§ 2T1.4(a)(1) and 2T4.1(K) was enhanced by 10, as follows: two levels because he was in the business of preparing or assisting in the preparation of tax returns; two levels because the offense involved sophisticated means; four levels because he was an organizer or leader in criminal activity that involved five or more participants or was otherwise extensive; and two levels because he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice.

Castro objected that (1) the two-level enhancement for obstruction of justice was factually unsupported and inadequately alleged; (2) the four-level

leadership enhancement did not apply because his employees were not "participants" within the meaning of the guidelines; (3) the two-level enhancement for sophisticated means was improper because his operation was not sufficiently sophisticated; (4) he should have received an acceptance-of-responsibility reduction; and (5) his counts were improperly grouped. The district court overruled his objections, adopted the PSR's statements of fact as its findings of fact, and sentenced him at the bottom of the guidelines range to 188 months' imprisonment.

On November 12, 2024, Castro filed a notice of intent to proceed *pro se*, a motion for a new trial, and a timely notice of appeal, generating appeal No. 24-11000. A month later, he moved in district court for an evidentiary hearing on his new-trial motion. Both motions were denied. He then filed various other motions in district court, all of which were either denied or dismissed for lack of jurisdiction.

On December 19, 2025, Castro filed an Emergency Application for Prompt Disposition and Release Pending Appeal in district court, one of a series of similar motions he filed in both district court and this court. On January 22, 2026, the district court denied his motion. Castro timely filed a notice of appeal of that order, which we construed as a motion for bail pending appeal, generating appeal No. 26-10428. On June 5, 2026, we consolidated the appeals, and on June 15, 2026, we denied his pending motion for bail.[1]

---

[1] Because we denied Castro's requested relief in appeal No. 26-10428—bail pending appeal—we dismiss that appeal as moot. Accordingly, our analysis below is limited to the arguments raised in appeal No. 24-11000. Castro's other actions pending before our court, appeal Nos. 26-10488 and 26-10510, are not part of this appeal.

## II.

Castro lodges several arguments on appeal. He contends the district court erred by denying his motions for a new trial and to correct the trial transcripts; failing to ensure he effected a valid waiver of his Confrontation Clause rights; and applying sentencing enhancements under U.S.S.G. §§ 3B1.1(a) and 3C1.1.

### A.

Before considering Castro's arguments, we begin with a threshold question raised by the Government: Do we have jurisdiction to consider the denial of Castro's motions to correct the trial transcripts and for new trial when both were filed and decided after he noticed this appeal?

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). If a district court acts in contravention of this "one-court-at-a-time" rule, its actions are "null and void." *United States v. Willis*, 76 F.4th 467, 473 (5th Cir. 2023) (citation omitted).

#### 1.

The Government contends that the one-court-at-a-time rule prevents us from considering Castro's trial-transcript challenge because, upon Castro's noticing his appeal, the district court lacked jurisdiction to rule on any subsequent motions put before it. The Government is correct that we cannot consider Castro's challenge—but not because of the one-court-at-a-time rule. That rule divests the district court of control only "over those aspects of the case *involved in the appeal*." *Griggs*, 459 U.S. at 58 (emphasis added). Castro's motion to correct the trial transcripts was not an issue

Case: 24-11000 Document: 375-1 Page: 34 Date Filed: 08/21/2026



noticed in his first appeal (No. 24-11000), so the district court retained jurisdiction to consider it. Nonetheless, we lack jurisdiction to review that ruling "[b]ecause the order . . . was a post-judgment order and not a prior order, [such that] it cannot be challenged without a separate notice of appeal." *See, e.g.*, *Armour v. Knowles*, 512 F.3d 147, 156 (5th Cir. 2007). Succinctly, the ruling postdates Castro's first notice of appeal, and "[o]ne cannot usually evince an intent to appeal an order that does not yet exist." *Id.* at 156 n.20. And his subsequent notice of appeal in No. 26-10428 makes no mention of this issue, so that appeal does not save him.

**2.**

The Government also invokes the one-court-at-a-time rule to argue that the district court lacked jurisdiction to rule on Castro's post-notice motion for a new trial. As a result, it reasons, the district court's ruling is void and unreviewable. "[T]here are exceptions to the general one-court-at-a-time rule." *Willis*, 76 F.4th at 471 (citation omitted). One such exception is embodied in Federal Rule of Appellate Procedure 4(b)(3), which "list[s] several motions that, if timely made, toll the time to appeal till after entry of an order denying the motion." *United States v. Hoffman*, 70 F.4th 805, 810 (5th Cir. 2023) (alteration in original and citation omitted). Specifically, the Rule provides:

> If a defendant timely makes [an enumerated motion] under the Federal Rules of Criminal Procedure, the notice of appeal from a judgment of conviction must be filed within 14 days after the entry of the order disposing of the last such remaining motion, or within 14 days after the entry of the judgment of conviction, whichever period ends later.

FED. R. APP. P. 4(b)(3)(A). Thus, if a party files a notice of appeal, but then files a timely motion listed in Rule 4(b)(3), the notice is not effective—

and therefore does not strip the district court of jurisdiction—until the resolution of the motion. *See id*.

Among those qualifying motions is one for a new trial under Federal Rule of Criminal Procedure 33—"but if based on newly discovered evidence, only if the motion is made no later than 14 days after the entry of the judgment[.]" *See* Fed. R. App. P. 4(b)(3)(A)(ii). And under Rule 33, a motion for new trial must be "filed within 3 years after the verdict or finding of guilty" if based on newly discovered evidence, or, for any other reason, "within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1)–(2).

The Government contends Castro's motion does not fall within Rule 4(b)(3) because the rule applies only to a *timely* motion under Rule 33, and Castro's motion was untimely. It reasons that because the district court concluded his motion was not based on newly discovered evidence, it is subject to the fourteen-day limit rather than the three-year limit. And because Castro filed his motion for new trial 172 days after the district court's verdict, it was not timely.

The Government's argument fails. Rule 33's time limits are non-jurisdictional claim-processing rules that may be forfeited if not timely raised. *Eberhart v. United States*, 546 U.S. 12, 19 (2005). The Government did not raise the timeliness of Castro's motion in district court; it instead argued the merits, and the district court denied the motion on the merits. Were Rule 4(b)(3) jurisdictional, we would have an independent obligation to determine whether Castro's motion was timely. After all, "[j]urisdictional arguments" are an "obvious exception" to forfeiture rules. *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021). But it, too, is a non-jurisdictional claim-

processing rule.[2] *See Bowles v. Russell*, 551 U.S. 205, 212 (2007) (holding rule-based time limits in criminal cases "may be waived because the procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion" (cleaned up)); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 25 (2017) ("If a time prescription governing the transfer of adjudicatory authority from one Article III court to another appears in a statute, the limitation is jurisdictional . . . ; otherwise, the time specification fits within the claim-processing category[.]").

Accordingly, the Government has forfeited any contention that Castro's motion for a new trial was untimely, and under Rule 4(b)(3), his notice of appeal in No. 24-11000 did not become effective until December 19, 2024—the date of the denial of his motion for a new trial.[3] For the same reason, the district court retained jurisdiction to rule on the new-trial motion.

## B.

As we likewise have jurisdiction over Castro's new-trial challenge, we turn to the merits. He contends the district court erred in concluding the

---

[2] In contrast, the timely filing of a notice of appeal in a *civil* case is jurisdictional. *See Bowles v. Russell*, 551 U.S. 205, 213 (2007) ("Because Congress specifically limited the amount of time by which district courts can extend the notice-of-appeal period in [28 U.S.C.] § 2107(c), that limitation is more than a simple 'claim-processing rule.'").

[3] The cases the Government cites do not control. *See United States v. Ugalde*, 861 F.2d 802 (5th Cir. 1988); *United States v. Demopoulos*, 506 F.2d 1171, 1180–81 (7th Cir. 1974). In *Ugalde*, the district court concluded the motion for a new trial was not based on newly discovered evidence, was therefore untimely, and declined to reach the merits of the motion on that basis. 861 F.2d at 804. Here, in contrast, the district court reached the merits without considering the timeliness question. As for *Demopoulos*, that opinion does not contain the quotation the Government attributes to it.

Government did not suppress *Brady*[4] material warranting a new trial and by denying his motion for a new trial without holding an evidentiary hearing.

Motions for a new trial based on alleged *Brady* violations are reviewed *de novo*, "while acknowledging that we must proceed with deference to the factual findings underlying the district court's decision." *United States v. Perry*, 35 F.4th 293, 345 (5th Cir. 2022) (citation omitted). The district court's decision not to hold an evidentiary hearing on a motion for new trial is reviewed for abuse of discretion. *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016).

**1.**

Castro maintains the Government suppressed three pieces of information, each constituting a *Brady* violation: former client (and trial witness) Linda Rivera's marital status; the existence of a lien on Rivera's husband's IRS tax account for unpaid child support; and a verbal immunity agreement between Rivera and the Government.

"In this context, the Court applies the three-prong *Brady* test to determine whether a new trial is appropriate." *Perry*, 35 F.4th at 345. "To establish a *Brady* violation, a defendant must make three showings: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The final prong concerns whether the concealed evidence is material, requiring us to ask whether "the favorable evidence could reasonably be taken to put the whole

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

case in such a different light as to undermine confidence in the verdict." *Id.* (citation omitted).

Castro maintains he could have used the allegedly suppressed evidence to impeach Rivera. Specifically, he contends that the misrepresentation on Rivera's taxes that she was single shows she is dishonest. And the undisclosed tax lien on her husband's IRS account shows her motivation for lying—namely, that the IRS could have taken half her tax refund to pay her husband's unpaid child support. He also contends Rivera's verbal immunity agreement would have provided even stronger grounds for undermining her credibility.

"Impeachment evidence 'falls within the *Brady* [disclosure] rule' because '[s]uch evidence . . . may make the difference between conviction and acquittal.'" *Banks v. Thaler*, 583 F.3d 295, 311 (5th Cir. 2009) (alterations in original and citation omitted). When the evidence "would have provided [defendant's] *only* avenue of impeachment, . . . we have been more likely to find that the withheld evidence constitutes *Brady* material." *Sipe*, 388 F.3d at 489 (emphasis in original). But "evidence which impeaches an already impeached witness is by definition cumulative" and therefore immaterial. *Id.*

Under this framework, Castro's arguments falter. First, even if suppressed and favorable to Castro, Rivera's husband's tax lien is cumulative and therefore immaterial impeachment evidence. At trial, defense counsel impeached Rivera with evidence that she had reported being single on her tax return despite being married. Thus, evidence of her husband's tax lien would have "merely furnishe[d] an additional basis on which to impeach a witness whose credibility ha[d] already been shown to be questionable[.]" *United States v. Brumfield*, 89 F.4th 506, 515 (5th Cir. 2023) (citation omitted). Counsel's line of questioning also shows that Rivera's marital status was not suppressed. Castro knew she was married at trial; indeed, Rivera's intake

form—which she completed when she sought Castro's services—stated she was married. Finally, Castro's assertion that Rivera was offered immunity to testify is wholly conclusory. Accordingly, he fails to show the district court abused its discretion in denying his motion for a new trial.

**2.**

Castro's contention that his motion warranted an evidentiary hearing likewise fails. "The law of this circuit is well established that a motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing." *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977). "Where evidentiary hearings are ordered, it is because of certain unique situations typically involving allegations of jury tampering, prosecutorial misconduct, or third party confession." *Id.* Even so, those circumstances do not "compel such a hearing" because "the acumen gained by the trial judge in presiding over the course of the trial makes Rule 33 motions directed to the same judge 'particularly suitable for ruling without a hearing.'" *United States v. MMR Corp.*, 954 F.2d 1040, 1046 (5th Cir. 1992) (citation omitted).

As stated, the *Brady* evidence Castro furnishes was either known to him at the time of trial, wholly conclusory, or duplicative impeachment evidence. The district court therefore did not abuse its discretion in denying his motion without holding an evidentiary hearing.

**C.**

Castro argues the district court violated the Sixth Amendment when it admitted stipulations "tantamount to a guilty plea" into evidence without ensuring he knowingly waived his Confrontation Clause rights. "Alleged Confrontation Clause violations are reviewed *de novo* and [are] subject to harmless error analysis." *United States v. Garcia*, 887 F.3d 205, 209 (5th Cir. 2018).

Case: 24-11000 Document: 375 Page: 13 Date Filed: 08/17/2026



The Confrontation Clause of the Sixth Amendment ensures the right of a criminal defendant to confront witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). Nonetheless, counsel may waive his client's confrontation rights by stipulating to the admission of evidence "so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir. 1980). Waiver of the right "is not contingent on evidence that the defendant affirmatively agreed to counsel's stipulation; [he] just must not dissent from that decision." *United States v. Ceballos*, 789 F.3d 607, 616 (5th Cir. 2015). The burden lies with the Government to prove a valid waiver, and we "should indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* at 614 (citation omitted).

Castro maintains the Government cannot carry its burden, but that position is belied by the record. Before trial, the Government proposed stipulations covering specific testimony from witnesses the Government did not intend to call at trial, as well as exhibits corresponding with each witness. Castro's counsel emailed the stipulations to him; Castro replied, "I agree to them"; his counsel signed them; and the Government signed and filed them.

At trial, before Linda Rivera testified, the Government made the court aware of the stipulations, some of which covered Rivera's testimony. The Government noted that, given the stipulations, it would put on a truncated version of her testimony. The court asked defense counsel if he agreed, and he responded: "Yes, Your Honor." After Rivera's testimony, the Government expressed that it could present compressed versions of the three remaining victims' testimony because of the stipulations, but defense counsel disagreed. Accordingly, the Government called the remaining witnesses and elicited testimony as if there were no stipulations for them. At no point did

Castro's counsel move to strike or object to the stipulations as to the other, non-testifying witnesses.

Then, before closing arguments, the district court stated it had reviewed the stipulations, and its "impression [was] that the [G]overnment believe[d] that it ha[d] proven, on the counts that are stipulated to, . . . all of the elements of the crime through those stipulations . . . [i]ncluding willfulness." After the Government agreed, the court asked, "[b]ut the defense, I'm inferring, admits to the elements, except for willfulness?" Defense counsel responded, "I think that is accurate," and "the stipulations themselves do not satisfy willfulness or that it was . . . intentional." But counsel once again did not object to the facts included in the stipulations. Rather, he argued only that certain legal conclusions could not be drawn from those stipulated facts.

Moreover, the record reflects that the stipulations were part of the legitimate trial strategy of narrowing the issues to whether Castro's conduct was willful. As the Government notes, Castro's proposed findings of fact begin with: "[T]his case necessitates no fact finding apart from the ultimate issue of guilt or innocence." And during closing, defense counsel reinforced that the only issue was Castro's intent:

> [W]illfulness is really what this case is all about, and I want to be clear, and clarify one thing I said earlier, is one of the elements here is that the returns be fraudulent. I view that as really subsumed or interlinked with willfulness. And so, I want to be clear, we don't concede necessarily that any of the stipulations satisfy that there was a fraudulent item on the return, but I just want that to be clear. That really is the same, same issue, ultimately, here.

Because Castro agreed to the stipulations in writing, did not dissent from his attorney's affirming the stipulations at trial, and the stipulations were part of

a legitimate trial tactic or strategy, Castro waived his confrontation rights. *See Stephens*, 609 F.2d at 232–33.

**D.**

Next, Castro challenges the application of two sentencing enhancements: a four-level enhancement under U.S.S.G. § 3B1.1(a) for being an organizer or leader in criminal activity; and a two-level enhancement under U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice.

"We review the district court's interpretation and application of the Guidelines *de novo*, and its factual findings for clear error." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011). "[W]e will conclude that a finding of fact is clearly erroneous only if a review of all the evidence leaves us 'with the definite and firm conviction that a mistake has been committed.'" *Id.* (citations omitted).

**1.**

Castro first contends the district court erred by applying a leadership enhancement. Under § 3B1.1(a), a defendant is subject to a four-level enhancement "[i]f [he] was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1(a), cmt. n.1. Under either theory of the enhancement, the defendant must have been "an organizer or leader of at least one other" participant. *United States v. Gross*, 26 F.3d 552, 555 (5th Cir. 1994) (citing U.S.S.G. § 3B1.1(a), cmt. n.2).

Castro maintains the enhancement was improper because the record is devoid of facts showing that five or more participants were involved in his scheme. He also asserts the Government cannot now argue his scheme was "otherwise extensive" because (1) it did not raise that argument until the sentencing hearing, and (2) the district court did not impose the enhancement on that ground. The Government responds that the enhancement is proper under either theory and that the district court considered its otherwise-extensive argument at sentencing.

Irrespective of the parties' arguments, we need not decide whether Castro's scheme involved five or more criminally responsible individuals. As we have explained, "we may affirm an enhancement on any ground supported by the record," *United States v. Salinas*, 918 F.3d 463, 465 (5th Cir. 2019), and the record shows Castro's scheme was otherwise extensive.

"In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered." U.S.S.G. § 3B1.1(a), cmt. n.3. "This includes taking into account unknowing participants who contributed to the success of the criminal enterprise." *United States v. Tuma*, 738 F.3d 681, 694 (5th Cir. 2013); *see also* U.S.S.G. § 3B1.1(a), cmt. n.3 ("[A] fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.").

The record shows Castro's scheme involved several people—family members, multiple attorneys, and a CPA—who contributed to the success of his enterprise, resulting in $15,168,913 in estimated tax loss to the Government. His employees handled client intake calls, conducted phone interviews, entered data using Castro & Co.'s tax software, and assisted in the preparation of returns. "[W]ithout [these individuals'] participation[,

Castro's] activities could not have happened or continued." *Tuma*, 738 F.3d at 694.

Moreover, regarding whether Castro organized or led another criminally responsible individual, "[t]he bar to be a 'participant' is not high." *United States v. Fullerton*, — F.4th —, 2026 WL 2097531, at *6 (5th Cir. July 21, 2026). "They only must 'participate[] knowingly in some part of the criminal enterprise' . . . 'by play[ing] some role in bringing about the specific offense charged.'" *Id.* (alterations in original and citations omitted).

At trial, the Government presented a portion of the tax-interview script Castro prepared for his family-member employees—Ismael, Alfonso, David, and Dominic—to use during prospective-client calls: "I'm gonna be pissed if this section [regarding side businesses] is blank. Cross-examine the client. Don't give up. Keep digging. Find a freaking business. Something, anything. We'll decide later if it fully qualifies." And the PSR provides that over 200 returns filed by Castro and his staff, including multiple attorneys and a CPA, resulted in audits, all of which Castro & Co. lost. When confronted with Castro's contention at sentencing that his employees were not "participants," the district court stated: "I wonder sometimes if you and I are seeing the same case. . . . [I] couldn't disagree with you more. . . . [I]f this defendant is not an organizer or leader, then I've never seen one." Given the record, it is plausible that at least one of Castro's employees was criminally culpable in his scheme. *See United States v. Lopez*, 70 F.4th 325, 331 (5th Cir. 2023) (affirming enhancement when it is "plausible in light of the record as a whole" (citation omitted)). We therefore cannot say the district court clearly erred in applying the enhancement.

**2.**

Next, Castro contends the district court erred in applying an obstruction-of-justice enhancement because it failed to make specific factual

findings necessary to support the enhancement's application. The parties dispute the correct standard of review. The Government contends that plain-error review applies because, although Castro objected to the enhancement in district court, he did so on different grounds than he raises here. *See, e.g.*, *United States v. Williams*, 343 F.3d 423, 434 (5th Cir. 2003). Specifically, the Government maintains Castro's objection in district court was that (1) he did not commit perjury, and (2) his lawsuits were an improper basis for the enhancement—not, as he argues on appeal, that the district court's factual findings were inadequate. We disagree with the Government's depiction of the record.

To preserve an argument for appellate review, a defendant must raise his objection "in a manner that could have placed the district court on notice of the error he now asserts." *United States v. Dominguez-Alvarado*, 695 F.3d 324, 328 (5th Cir. 2012). Despite the Government's contention to the contrary, Castro raised his objection to the sufficiency of the enhancement's factual basis in district court. In addition to disputing the factual narrative in the PSR—*i.e.*, contending that he did not commit perjury or engage in vexatious litigation—Castro also asserted: "The PSR does not *allege* perjury"; "the PSR *points to no* misconduct during trial"; "the conduct described in those provisions *does not support* the application of this enhancement"; "[t]here is no *allegation* that the defendant improperly testified or provided materially false information"; and "[n]o false statements are *identified* whatsoever." (emphasis added).

Thus, we review this enhancement challenge as we did the other: the district court's interpretation and application of the Guidelines *de novo*; its factual findings for clear error. *Zuniga*, 720 F.3d at 590.

Section 3C1.1 of the Guidelines provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

The probation officer applied the enhancement in the PSR because Castro "attempted to threaten or intimidate the investigators in this offense" through filing "frivolous lawsuits" against IRS agents and "provided materially false information to a judge." The probation officer likened his conduct to the examples provided in Application Notes 4(A) and (F).

Application Note 4(A) states the enhancement applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." *Id.* § 3C1.1, cmt. n.4(A). Application Note 4(F) likewise applies the enhancement when a defendant "provid[es] materially false information to a judge or magistrate judge." *Id.* § 3C1.1, cmt. n.4(F).

Castro takes exception with the enhancement under either theory. He contends the PSR, adopted by the district court as its factual findings, lacks the factual predicates for a finding of perjury. He also maintains his lawsuits were not "frivolous" and do not warrant the enhancement's application. As we explain below, because the court did not clearly err in finding that Castro's past litigation amounted to threatening, intimidating, or otherwise unlawfully influencing a witness in his investigation, we need not resolve whether perjury was a sufficient basis to support the enhancement.

The PSR stated that Castro "filed multiple frivolous lawsuits against the United States, IRS personnel, including the IRS agent in his personal capacity, and [then-]former President Trump in an attempt to end the

investigation." It noted one such lawsuit where Castro sued an IRS agent personally and stated: "My offer to settle is this: tell me who ordered you to initiate the unlawful and retaliatory investigation against me and I'll drop the lawsuit. One and only chance to settle." Moreover, an IRS agent testified that, once Castro discovered he was being investigated, he sent the agent "a barrage of emails," one of which stated: "[A]lthough I understand this is not valid service of process, I wanted to make you immediately aware that a federal civil action has been filed in the United States District Court . . . . I truly wish this could have been avoided. Have a nice weekend." And further testimony provided that Castro "often use[d] the threat of lawsuits against anyone who challenged him," which made "multiple witnesses hesitant to . . . testify[.]" Given this record evidence, the district court did not clearly err in applying the two-level enhancement under § 3C1.1. *See Rodriguez*, 630 F.3d at 380; *see also* U.S.S.G. § 3C1.1, cmt. n.4(A).

* * *

In sum, Castro's arguments are without merit. We lack jurisdiction to consider his trial-transcript challenge, and his *Brady*-based motion for a new trial fails on the merits. Similarly, he cannot show that his Confrontation Clause rights were violated or that the district court erred in applying sentencing enhancements under §§ 3B1.1(a) or 3C1.1.

Based on the foregoing, in appeal No. 24-11000, we DISMISS, for lack of jurisdiction, Castro's challenge to the denial of his motion to correct the trial transcripts and AFFIRM in all other respects. We DISMISS appeal No. 26-10428 as moot.